## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JERRY BRAGG,

      Plaintiff,

v.                                      CIV 07-0343 JB/WDS

SANDRA CHAVEZ, New Mexico Medicaid Quality
Assurance Bureau Chief, EVERET APODACA, Assistant
to Sandra Chavez, BILL RICHARDSON, Governor of New
Mexico, PAMELA HYDE, New Mexico Department of
Human Services Secretary, KEVIN RIDER, Home Medical
Equipment Specialists Owner, and HOME MEDICAL
EQUIPMENT SPECIALISTS, LLC,

      Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendants' Motion to Dismiss

Plaintiffs' Complaint, filed May 29, 2007 (Doc. 11)("State Motion to Dismiss"); (ii) the Motion to

Dismiss for Failure to State a Claim, filed May 31, 2007 (Doc. 14)("HMES' Motion to Dismiss");

(iii) the Plaintiff's Motion to Dismiss Defendant's Motion to Dismiss My Complaint, filed June 8,

2007 (Doc. 21)("Bragg's Response"); (iv) the Motion to Dismiss Defendants Motion to Dismis [sic]

for Failure to State a Claim, filed June 8, 2007 (Doc. 16)("Bragg's HMES Response"); (v) the

Application for Trial by Jury and for Treble Punitive Damage, filed June 8, 2007 (Doc. 17)("Jury

Request"); (vi) the Request for Relief, filed June 8, 2007 (Doc. 23)("Request for Damages"); (vii)

the Motion for Discovery by Means of New Mexico's Open Records Act, filed June 8, 2007 (Doc.

20)("Motion for Discovery"); (viii) the Request for Special Accommodations, filed April 11, 2007

(Doc. 2)("Request for Accommodations"); (ix) the Application to Sue by Jury Lawyers Listed

Below: Treble Punitive Damages, filed July 25, 2007 (Doc. 31)("Application to Sue Lawyers"); and

(x) Plaintiffs' Motion to Dismiss Defendants' Reply Memorandum in Support of Motion to Dismiss (Doc. #11), filed July 25, 2007 (Doc. 33)("Bragg's Surreply").  The Court held a hearing on these motions on July 30, 2007.  The primary issues are: (i) whether the Court should dismiss Plaintiff Jerry Bragg's Application for Writ of Mandamus, filed April 11, 2007 (Doc. 1)("Bragg's Application"), because it lacks subject-matter jurisdiction over the claims Bragg asserts and/or the authority to grant the relief Bragg requests; (ii) whether the Court should dismiss Bragg's Application because it fails to state a claim for which relief can be granted against any of the Defendants that Bragg has named in this action; (iii) whether the Court should dismiss Bragg's Application against Defendants Sandra Chavez, Everet Apodaca, Bill Richardson, and Pamela Hyde because the Eleventh Amendment bars Bragg's claims against these defendants; (iv) whether the Court should dismiss Bragg's Application against Richardson because Richardson is entitled to legislative immunity; (v) whether the Court should compel Hyde to produce to Bragg a copy of all documents in the possession of the New Mexico Department of Human Services ("DHS") that pertain to Bragg; (vi) whether the Court should allow Bragg to amend his Application to include the Defendants' counsel -- Paul Ritzma, Gary King, Alexandra Corwin Aguilar, and Ronald Taylor -- as Defendants; and (vii) whether the Court should award Bragg punitive damages against each of the Defendants.  Because the Court concludes that Bragg has not stated a federal claim for which relief may be granted, the Court will dismiss all the federal claims in Bragg's Application against all Defendants with prejudice.  Bragg may file an amended complaint alleging an ADA claim against Home Medical Equipment Specialists, LLC ("HMES") and/or Kevin Rider, and re-alleging any state claims against the State Defendants, within ten days of the entry of this memorandum opinion and order.  In light of the Court's disposition on the Defendants' motions to dismiss, the Court will not

address -- at this time -- Bragg's motions for discovery, damages, and special accommodations.

## FACTUAL BACKGROUND

Bragg's Application raises factual questions that implicate the Court's jurisdiction over this matter. Rule 8(a)(1) of the Federal Rules of Civil Procedure requires that "a pleading which sets forth a claim for relief . . . shall contain [] a short and plain statement of the grounds upon which the court's jurisdiction depends." Fed. R. Civ. P. 8(a)(1). Bragg's Application does not, however, contain any sections specifically related to jurisdiction or explain upon what jurisdictional basis he relies. Nevertheless, because Bragg is proceeding pro se, the Court has carefully reviewed the Application to determine the statutory basis of his claims and to determine if, construed liberally, his pleadings articulate cognizable federal claims.

**1.      Bragg's Application.**

Bragg's Application describes two incidents that Bragg asserts support his request for judicial relief. In deciding on the parties' various motions, the Court has, consistent with rule 12(b)(6) of the Federal Rules of Civil Procedure, carefully considered each of these incidents, accepting as true the facts as Bragg has alleged them. The Court has also drawn all reasonable inferences in Bragg's favor.

**a.      Repair of Bragg's Wheelchair.**

Bragg submits that he is a wheelchair-bound individual with multiple health conditions. See Bragg's Application at 2. Bragg asserts that his wheelchair is in need of repair; specifically, he notes that: (i) the cords can be seen on the left-drive tire; (ii) there is noticeable wear on the other five tires; (iii) the battery occasionally runs low prematurely; (iv) the headrest is not properly fitted; (v) the chair is not equipped with a seatbelt; and (vi) the chair is missing a battery cover. See id. at

2-3.  Bragg received the wheelchair on October 2, 2003, and the price of the chair was $17,250.00.

See id. at 3.  Bragg contends that the chair has rolled over 10,000 miles, but, because the odometer

has never worked properly, as of April 2, 2007, the odometer reading indicated 1,380 miles logged.

See id. at 4.

Bragg indicates that he is a category 004 recipient of Medicaid benefits from the State of

New Mexico and that he "receive[s] 100% health care coverage" through the Medicaid program.

Id., Summary of My Needs at this Time ¶ 4, at 5 (" Summary of Needs").  Medicaid is a healthcare

benefits program that receives funding from both the state and federal governments.  See

8.200.400.9 NMAC.  The  Medical Assistance Division of the DHS administers the Medicaid

program in New Mexico.  See id.  Category 004 includes those recipients under the age of sixty-five

who are disabled.  See 8.201.400.10 NMAC.

On February 28, 2007, Apodaca, in his capacity as a case manager in the New Mexico

Medicaid Quality Assurance Bureau ("MQAB"), made arrangements for Roadrunner Home Medical

Equipment ("Roadrunner") to perform repairs on Bragg's wheelchair.  See Bragg's Application,

Summary of Evidence ¶ 4, at 6 ("Summary of Evidence").  Approximately three weeks later, Bragg

was informed that Roadrunner could not perform the repairs because they did not service power

wheelchairs.  See id.

On March 20, 2007, a representative from Defendant HMES, whom Bragg has identified

only as "Kevin,"[1] visited Bragg's apartment to inspect the wheelchair.  See id. ¶ 5, at 6.  During this

---

[1]Although Kevin's surname is not identified in any of the parties' pleadings, the United
States Marshals Service reported that, on May 4, 2007, it effected personal service of Bragg's
Application on Kevin Rider at 611 Osuna Road NE, Albuquerque, New Mexico 87113.  See Process
Receipt and Return, filed May 10, 2007 (Doc. 9).

visit, Kevin did not provide Bragg with his surname, telephone number, or the address of HMES'

place of business. See Bragg's Application at 3. On April 2, 2007, Apodaca telephoned Bragg to

advise him that Kevin would pickup Bragg's chair at 9:30 a.m. on April 7, 2007 and take it to

HMES' place of business to be repaired. See id. at 2-3.

During the April 2, 2007 telephone call, Bragg requested that he or his caretaker be permitted

to go to HMES' place of business during the time the chair was being repaired. See id. at 3. Bragg

asserts that he suffers from Post Traumatic Stress Disorder ("PTSD") resulting from previous bad

experiences with wheelchair repairs, including one repair that took three months to complete. See

id. at 2-3. Bragg states that other vendors had previously repaired his chair in his apartment. See

Summary of Evidence ¶ 5, at 6. Apodaca informed Bragg that, because of his health condition, it

would not be possible for him to be present at HMES' place of business while the chair was

repaired. See Bragg's Application at 3. Apodaca also advised Bragg that, if he did not permit

HMES to repair the wheelchair, the chair would have to be sent to El Paso, Texas to be repaired.

See id. Bragg refused to allow HMES to repair his wheelchair outside of his home.

### b.    Prior Authorizations for Medical Care.

On February 7, 2007, Bragg's physician wrote a prescription to have his wheelchair repaired.

See Summary of Needs ¶ 2, at 4. Bragg states that, while getting into bed on March 29, 2007, he

lost his balance and possibly broke a toe on his left foot. See id. Bragg suggests that, at the time

of his injury to his toe, he was frustrated and upset because his chair had not yet been repaired and

because his battery was almost depleted. See id.

The next day, March 30, 2007, Bragg's podiatrist wrote him a prescription for an antibiotic

ointment and a pain ointment for his toe. See id. ¶ 2 at 5. Bragg indicates that it was his

understanding that he needed state authorization before he could fill the prescriptions.  See id. ¶ 2 at 5-6.   On April 5, 2007, Bragg received a call from his pharmacist informing him that the state would not pay for the pain ointment and that, because the antibiotic ointment was on the formulary list, it did not require prior authorization to fill the prescription.  See id. ¶ 2 at 6.

## PROCEDURAL BACKGROUND

Bragg filed his Application on April 11, 2007.[2]   In his application, Bragg names the following Defendants: (i) Chavez, Chief of the MQAB; (ii) Apodaca, as Chavez' assistant; (iii) Richardson, Governor of New Mexico; (iv) Hyde, Secretary of the DHS; and (v) Kevin.  Bragg states that "[a]t this time[,] I am preparing litigation against the [S]tate of New Mexico and all parties involved in the physical and mental harm inflicted on me as concerns my wheelchair dating back to 1999[;] however[,] at this time[,] I need repairs to my wheelchair even if it means going out and begging the public for help."  Bragg's Application at 3.  On the other hand, Bragg indicates that he does "not wish to sue Home Medical Specialists, LLC[, but] only want this company to repair my wheelchair as it is needed and to make all repairs in my apartment as it is possible to do so."

---

[2]Bragg has styled his action as an "Application for Writ of Mandamus."  Bragg's Application at 1.  The writ of mandamus has been abolished in federal district courts, and the relief formerly sought with the writ must now be sought by an ordinary suit filed under the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 81(b).  Because Bragg is proceeding pro se, however, and because the Court's rulings do not turn on how the action is styled, the Court has treated his Application as a standard Complaint, see Fed. R. Civ. P. 7(a), filed under rule 8, and invoking the Court's jurisdiction under 28 U.S.C. § 1331.  See Smith v. U.S. Dist. Ct. Officers, 203 F.3d 440, 441 (7th Cir. 2000)(holding that, because "nothing turn[ed] on whether [the plaintiff's] suit is described as a suit for mandamus or a suit to enforce a federal common law right, the district judge should have reclassified the suit rather than (as he did) dismissing it"); Cauthon v. Finney, No. 95-3301, 1996 U.S. App. LEXIS 6084, at *4 (10th Cir. Mar. 29, 1996)(citing rule 81(b) and approving of a district court's characterization of a pro se prisoner's petition for a writ of mandamus as a petition for writ of habeas corpus).  Nevertheless, to remain consistent with Bragg's language, and for ease of reference to the pleadings, the Court will refer to Bragg's Complaint as "Bragg's Application."

Summary of Needs ¶ 1 at 5.  Bragg's Application requests the Court to: (i) have all wheelchair repairs performed in Bragg's home; (ii) eliminate prior authorization requirements for prescriptions that Bragg's physician prescribes; (iii) order the State of New Mexico to stop retaliating against him; and (iv) order the State of New Mexico to provide him with full and timely access to healthcare as needed.  See Bragg's Application at 5.

On the same day, Bragg also filed his Request for Accommodations.  Bragg states that, because of his condition, he needs "a wheelchair accessable [sic] van to pick me up to bring me to the court."  Request for Accommodations at 1.  Bragg explains that the DHS refuses to transport him and that, because of the busy roads he needs to traverse to reach the bus stop, riding the bus to the courthouse is difficult and dangerous.  See id.

Subsequent to the filing of Bragg's Application, the case was originally assigned to the Honorable C. LeRoy Hansen, Senior United States District Judge.  On April 18, 2007, however, the Clerk of the Court reassigned the case from Judge Hansen to Judge Browning.  See Minute Order, filed April 18, 2007 (Doc. 3).  The Clerk of the Court's Minute Order reassigning the case directed the parties to submit all subsequent pleadings with captions that contained the case number and the initials of the newly assigned judge.  See id. at 1.

On May 29, 2007, Chavez, Apodaca, Richardson, and Hyde (the "State Defendants") filed a Motion to Dismiss pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure.  The State Defendants assert that the Court should dismiss Bragg's Application because it fails to state a claim for any violation of state or federal law.  See Defendants' Memorandum in Support of Motion to Dismiss Plaintiff's Complaint, filed May 29, 2007 (Doc. 12)("State Memorandum").  In their Motion to Dismiss, the State Defendants' counsel also informs the Court that, pursuant to the

Court's local rule 7.4, she contacted Bragg with respect to the motion before filing the motion with the Court.  See State Motion to Dismiss at 1; D.N.M. LR-Civ 7.4(a) (requiring movant, in cases in which a party appears pro se, to request concurrence of each party at least three days before filing a motion).  The State Defendants' counsel advises that, during this contact, Bragg threatened to sue her personally if she filed the State Defendants' motion.  See State Motion to Dismiss at 1.

HMES filed a separate motion to dismiss for failure to state a claim on May 31, 2007. Although the caption of Bragg's Application names "Home Medical Equipment Specialists Owner Kevin _____?" as a defendant, see Bragg's Application at 1, HMES' motion to dismiss does not reference Kevin, and purports to respond to Bragg's Application solely on HMES' behalf, see HMES' Motion to Dismiss at 1.  In its papers, HMES emphasizes that Bragg acknowledged that he did not wish to sue HMES.  See Brief in Support of Motion to Dismiss at 1, filed May 31, 2007 (Doc. 15).  HMES asserts that the Court lacks jurisdiction to proceed against HMES because it was not properly designated as a party in its LLC capacity, and maintains that Bragg's Application fails to allege any basis for mandamus action against HMES.  See id.

Bragg responded to the Defendants' motions on June 8, 2007.  First, Bragg filed his Plaintiff's Motion to Dismiss Defendant's Motion to Dismiss My Complaint alleging that dismissal of his Application would violate his First, Fourth, and Fourteenth Amendment rights.  See Bragg's Response at 1.  In his memorandum in support of his motion in response to the Defendants' motions, Bragg asserts that it is his belief "that medicaid law was violated by Defendants including HME[S]," Plaintiff's Memorandom [sic] in Support of Motion to Dismiss Defendant's Motion to Dismiss Plaintiff's Complaint at 2, filed June 8, 2007 (Doc. 22)("Bragg's Memorandum"), and alleges that the "[D]efendants acted under color of state law and deprived me of a federal or constitutional

right," id. at 3. Bragg also contested the Defendants' reference to rule 12(b)(6)'s reliance on the pleadings and requested the Court consider any evidence that he brings forward in resolving these motions. See id.

Bragg simultaneously filed a motion to dismiss, specifically targeted at HMES' motion to dismiss his Application. See Bragg's HMES Response. In his response to HMES' motion, Bragg notes that Kevin was served with a summons on May 4, 2007, and that HMES did not file its motion until May 31, 2007, after the permitted twenty day window to respond to the summons expired.[3] See id. at 1. Bragg also maintains that HMES' attorney did not mail him a certified copy of his entry of appearance. See Brief in Support of Motion to Dismiss at 1, filed June 8, 2007 (Doc. 19)("Bragg's HMES Brief"); Entry of Appearance, filed May 31, 2007 (Doc. 13). Bragg acknowledges that he did not initially intend to sue HMES, but states that he has "changed his mind," and that he will sue HMES for punitive damages associated with violations of the First and Fourteenth Amendments, and with violations of the Americans with Disabilities Act ("ADA"). Bragg's HMES Brief at 2. Bragg asserts that his PTSD condition was a basis for mandamus action against HMES, and argues that HMES' "attempt to have my right to a hearing dismissed with prejudice is unfair and would cause me great harm as I would not be able to get my wheelchair repaired which would cause me to become bedbound and put into a nursing home against my will." Id. at 1-2.

In addition to his motions in response to the Defendants' motions to dismiss, Bragg submitted four other filings on June 8, 2007 in support of his case. First, Bragg submitted a request

---

[3]At this point in the proceedings, to the extent that Bragg's Application raises claims against Kevin in his individual capacity, no responsive pleading has been filed expressly on Kevin's behalf.

for a jury trial and treble punitive damages.  <u>See</u> Jury Request at 1.  Second, he submitted a request

for punitive damages in the amount of $225,000.00 per Defendant.  <u>See</u> Request for Damages at 1.

Bragg's Request for Damages asserts that the "Defendants have continued to intentionally and

maliciously inflict emotional distress upon me causing me irreparable injury," but does not explain

the bases for his calculations of damages.  <u>Id.</u>  Third, Bragg filed a motion requesting that the Court

compel Hyde to provide him with "a true copy of evry [sic] document that she has on file that

pertains to me[,] Jerry Bragg."  Motion for Discovery at 1.  Finally, Bragg submitted eight pages of

documents that he asserts are evidence in support of his claims.  <u>See</u> Entry of Evidence, filed June

8, 2007 (Doc. 18).

On June 20, 2007, HMES filed a reply to Bragg's motions to dismiss.  <u>See</u> Reply to

Plaintiff's Motions to Dismiss, filed June 20, 2007 (Doc. 25)("HMES' Reply").  In its reply, HMES

reasserts its contention that Bragg has not provided any legal basis for his mandamus action against

it.  <u>See</u> <u>id.</u> ¶ 1, at 1; Brief in Support of HME's Reply at 1, filed June 20, 2007 (Doc. 26).  HMES

also contends that, to the extent that Bragg filed his motions against HMES because he was unhappy

with HMES' attorney, those filings were improper.  <u>See</u> HMES' Reply ¶ 2, at 1.  At the same time

that HMES filed its reply, it also filed a notice of completion of briefing indicating that "all briefing

as it pertains to the Motion of HME[S] to dismiss [Bragg's] Complaint against HME[S] is hereby

complete."  Notice of Completion of Briefing, filed June 20, 2007 (Doc. 24).

The State Defendants filed a separate reply on June 25, 2007.  <u>See</u> Defendants' Reply

Memorandum in Support of Motion to Dismiss (Doc #11), filed June 25, 2007 (Doc. 27).  In their

reply, the State Defendants argue that nothing in Bragg's Application or his responsive pleadings

states a claim for which relief can be granted.  <u>See</u> <u>id.</u> at 2. For the first time, however, the State

Defendants also raise jurisdictional arguments.  The State Defendants first argue that, to the extent that Bragg's allegations could be construed to comprise a cause of action, the allegations sound in personal injury or emotional distress, and therefore arise solely under state law.  See id.  The State Defendants also argue that, even if Bragg's allegations articulate claims that are cognizable in federal court, the Court still lacks jurisdiction over the matter because the Eleventh Amendment bars those claims.  See id. at 3-4.  Finally, the State Defendants argue that, to the extent that Bragg's Application articulates a cognizable claim against Richardson, the suit is barred because the Governor is entitled to legislative immunity.  See id. at 6.  On June 26, 2007, the State Defendants filed a notice of completion of briefing in association with their motion to dismiss.  See Notice of Completion of Briefing (#11), filed June 26, 2007 (Doc. 28).

Bragg filed a reply to the Defendants' motions on June 29, 2007.  See Plaintiff's Reply to Defendants Motion to Dismas [sic], filed June 29, 2007 (Doc. 29)("Bragg's Reply").  Bragg contests the Defendants' assertion that he has not articulated a legal basis to support his mandamus action.  See id. at 1.  Bragg also criticizes HMES for submitting filings with Judge Hansen's initials in the case number and states that "HME[S] demands that I follow rules but HME[S] does not have to [follow the rules] because they hired a lawyer to break the rules for them."  Id. at 2.  In his reply, Bragg accuses the Defendants of filing the motions to dismiss to prevent the Court from seeing evidence related to the condition of his wheelchair.  See id. at 3.

Bragg submitted a number of additional legal and evidentiary filings on July 25, 2007.  First, Bragg submitted an application requesting that he be permitted to sue the various Defendants' counsel.  See Application to Sue Lawyers at 1.  Bragg states that each of the Defendants' lawyers -- Mr. Ritzma, Mr. King, Ms. Aguilar, and Mr. Taylor -- "have engaged in willful malice by

demanding that my motion for writ of mandamus be dismissed because I do not know how to write like a lawyer."  With specific reference to Mr. Ritzma, counsel for DHS, and Mr. King, the Attorney General of New Mexico, Bragg asserts that they are abusing the power of their offices to attack his constitutional rights.  See id. at 2.  In his application to sue the Defendants' counsel, Bragg also asserts that the Court has jurisdiction over his cause of his action, "because it involves federal Medicaid money."  Id. at 3.

Bragg's other legal filing on July 25, 2007 consisted of a surreply to the Defendants' reply to his motion to dismiss their motions to dismiss.  See Bragg's Surreply.  In his Surreply, Bragg asserted that Richardson, Hyde, and the New Mexico Legislature were "attacking Medicaid and Medicare recipients therefore requiring federal intervention and thereby establishing federal jurisdiction."  Id. at 4-5.  Finally, in addition to his legal filings, Bragg submitted seven other exhibits which he asserts are evidence in support of his claims.  See Entry of Evidence, filed July 25, 2007 (Doc. 32); Entry of Evidence, filed July 25, 2007 (Doc. 34).

The Court held a hearing on these motions on July 30, 2007.  A few minutes before the hearing was scheduled to commence, Bragg spoke to the Court's Courtroom Deputy by telephone and informed her that he would not be attending the hearing.  Bragg indicated that he had traveled to the courthouse the previous week to submit his July 25, 2007 filings and had decided at that time that, because of his condition, the journey was too arduous for him to repeat.  Bragg declined the Court's offer to appear at the hearing telephonically and advised the Courtroom Deputy that everything he needed to argue was contained in his moving papers.

## STANDARDS FOR DECIDING A MOTION TO DISMISS

In considering a motion to dismiss a complaint for failure to state a claim under rule 12(b)(6),

a court must accept as true all factual allegations in the complaint and must draw all reasonable inferences in the plaintiff's favor.  <u>See</u> <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1109 (10th Cir. 1991). Where it appears beyond doubt that a plaintiff cannot prove any set of facts that would entitle him to relief, a court may dismiss the cause of action.  <u>See</u> <u>Jojola v. Chavez</u>, 55 F.3d 488, 490 (10th Cir. 1995).  The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his claim.  <u>See</u> <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974). Nevertheless, while a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964-65 (2007)(internal citation and quotations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  <u>Id.</u> at 1965 (internal citation omitted).

As a general rule, "a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss." <u>Alvarado v. KOB-TV, L.L.C.</u>, No. 06-2001, 2007 U.S. App. LEXIS 16720, at *9 (10th Cir. July 13, 2007).  Indeed, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b)(6).  The decision to consider supplemental materials outside of the pleadings is within the district court's discretion.  <u>See</u> <u>Prager v. LaFaver</u>, 180 F.3d 1185, 1189 (10th Cir. 1999).

Finally, in the context of a rule 12(b)(6) motion to dismiss where a plaintiff appears pro se, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent

-13-

standard than those drafted by attorneys." <u>Johnson v. Johnson</u>, 466 F.3d 1213, 1214 (10th Cir. 2006).  The United States Court of Appeals for the Tenth Circuit has explained that "dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." <u>Oxendine v. Kaplan</u>, 241 F.3d 1272, 1275 (10th Cir. 2001)(quoting <u>Perkins v. Kan. Dep't of Corr.</u>, 165 F.3d 803, 806 (10th Cir. 1999)).  While a pro se litigants' pleadings are held to less stringent standards, they must nevertheless comply with the same procedural rules as other litigants. <u>See</u> <u>Barnes v. United States</u>, 173 Fed. Appx. 695, 697 (10th Cir. 2006)(citing <u>Ogden v. San Juan County</u>, 32 F.3d 452, 455 (10th Cir. 1994); <u>Green v. Dorrell</u>, 969 F.2d 915, 917 (10th Cir. 1992)). It is not the district court's function to assume the role of advocate for the pro se litigant. <u>See</u> <u>Bergman v. LaCouture</u>, 218 Fed. Appx. 749, 750 (10th Cir. 2007).

## STANDARD FOR DECIDING SUMMARY JUDGMENT MOTIONS

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)(citing Fed. R. Civ. P. 56(e)).  An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party.  <u>Id.</u> at 249-50 (citations omitted).  Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment.  <u>See</u> <u>Trevizo v. Adams</u>, 455 F.3d

1155, 1159 (10th Cir. 2006).

The party seeking summary judgment has an "initial burden to show that there is an absence of evidence to support the nonmoving party's case." Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000)(quoting Thomas v. IBM, 48 F.3d 478, 484 (10th Cir. 1995))(internal quotations omitted).  Upon meeting that burden, the non-moving party must "identify specific facts that show the existence of a genuine issue of material fact." Munoz v. St. Mary-Corwin Hosp., 221 F.3d at 1164 (citations and internal quotations omitted).  "The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." Id. (citations and internal quotations omitted).

The mere existence of a scintilla of evidence in support of the plaintiff's position is not sufficient; there must be evidence on which the fact finder could reasonably find for the plaintiff. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  The non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. at 324 (internal quotations omitted).  "In a response to a motion for summary judgment, a party cannot rest on ignorance of the facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Biester v. Midwest Health Servs., Inc., 77 F.3d 1264, 1266 (10th Cir. 1996).

When evaluating a motion for summary judgment, the court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary

judgment.  See Sigmon v. CommunityCare HMO, Inc., 234 F.3d 1121, 1124-25 (10th Cir. 2000).

Moreover, the court may consider only admissible evidence when ruling on a motion for summary

judgment.  See World of Sleep, Inc. v. La-Z-Boy Chair, Co., 756 F.2d 1467, 1474 (10th Cir.

1985)(citing Fed. R. Civ. P. 56(e)).

## LAW REGARDING SUBJECT-MATTER JURISDICTION

It is a fundamental precept of American law that the federal courts are "courts of limited

jurisdiction."  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005).  Federal

courts "possess only that power authorized by [the] Constitution and statute."  Kokkonen v.

Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Among the powers that Congress has

bestowed upon the courts is the power to hear controversies arising under federal law -- federal

question jurisdiction -- and controversies arising between citizens of different states -- diversity

jurisdiction.  See 28 U.S.C. §§ 1331 and 1332.

Pursuant to rule 12(h)(3) of the Federal Rules of Civil Procedure, "[w]henever it appears by

suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court

shall dismiss the action."  Fed. R. Civ. P. 12(h)(3).  Objections to a federal court's subject-matter

jurisdiction "may be raised by a party, or by a court on its own initiative, at any stage in the

litigation, even after trial and the entry of judgment."  Arbaugh v. Y & H Corp., 546 U.S. 500, 506

(2006).  See Kontrick v. Ryan, 540 U.S. 443, 455 (2004)("A litigant generally may raise a court's

lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest

appellate instance."); Mansfield, Coldwater & Lake Mich. Ry. Co. v. Swan, 111 U.S. 379, 382

(1884)(holding that the nature and limits of federal judicial power require the court to raise the issue

of subject-matter jurisdiction sua sponte).

-16-

Whenever the court lacks jurisdiction of the subject matter involved in an action, the court must dismiss the action. See Tuck v. United Services Auto. Ass'n, 859 F.2d 842, 844 (10th Cir. 1988). The party seeking the exercise of jurisdiction bears the burden of establishing jurisdiction and "must allege in his pleading the facts essential to show jurisdiction." United States ex rel. General Rock & Sand Corp. v. Chuska Dev. Corp., 55 F.3d 1491, 1495 (10th Cir. 1995)(citation and internal quotations omitted). In determining whether a party has adequately presented facts sufficient to establish jurisdiction, the court should look to the complaint's face, see Whitelock v. Leatherman, 460 F.2d 507, 514 (10th Cir. 1972), accepting the well-pleaded factual allegations as true, see United States v. Rodriguez-Aguirre, 264 F.3d 1195, 1203 (10th Cir. 2001), but ignoring conclusory allegations of jurisdiction, see Groundhog v. Keeler, 442 F.2d 674, 677 (10th Cir. 1971).

Finally, although federal question jurisdiction is typically established "by plaintiffs pleading a cause of action created by federal law . . . [the Supreme] Court [of the United States has] recognized for nearly 100 years that in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues." Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005)(citing Hopkins v. Walker, 244 U.S. 486, 490-91 (1917)). To fit within this latter category, the Supreme Court has explained that a case must meet two requirements. First, "federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. at 313. Second, "the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of [28 U.S.C.] § 1331." Id. at 313-14. In sum, "the

-17-

question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. at 314.

### LAW REGARDING SUPPLEMENTAL JURISDICTION

Although a statutory basis is necessary for federal courts to exercise jurisdiction over a controversy, "it is well established -- in certain classes of cases -- that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. at 552. The Supreme Court has long subscribed to the concept of supplemental jurisdiction recognized in two common-law doctrines -- pendent and ancillary jurisdiction. Federal courts may exercise pendent jurisdiction over state-law claims when "state and federal claims . . . derive from a common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). Ancillary jurisdiction gives federal courts the flexibility to hear a cause of action even after the introduction of third parties whose insertion into the litigation is not supported by any independent grounds for federal jurisdiction, when those parties share a common interest in the outcome of the litigation and are logical participants in it. See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 375 n.18 (1978).

In 1988, Chief Justice William H. Rehnquist created the Federal Courts Study Committee to analyze the federal court system and to recommend reforms. See 16 Moore's Federal Practice, § 106.04[5] (Matthew Bender 3d ed.). In response to the Committee's findings regarding "pendent" and "ancillary" jurisdiction, Congress codified the application of the two doctrines when it passed the Judicial Improvements Act of 1990:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  In enacting 28 U.S.C. § 1367, Congress conferred upon federal district courts "supplemental forms of jurisdiction . . . [that] enable them to take full advantage of the rules on claim and party joinder to deal economically -- in single rather than multiple litigation -- with matters arising from the same transaction or occurrence."  Report of the Federal Courts Study Committee, Part II.2.B.2.b. (April 2, 1990), reprinted in 22 Conn. L. Rev. 733, 787 (1990).

Nevertheless, the Tenth Circuit has followed the Supreme Court's lead in classifying supplemental jurisdiction not as a litigant's right, but as a matter of judicial discretion.  See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004)(citing City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)).  In circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction.  The traditional analysis, based on the Supreme Court's opinion in United Mine Workers v. Gibbs, compelled courts to consider "judicial economy, convenience and fairness to litigants" when deciding whether to exercise supplemental jurisdiction. 383 U.S. at 726.  Similarly, Congress' supplemental jurisdiction statute enumerates four factors that the court should consider:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  In applying these factors, district courts should seek to exercise supplemental jurisdiction in an effort to "vindicate values of economy, convenience, fairness, and comity." Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1164.

Numerous courts have acknowledged that 28 U.S.C. § 1367(c) necessarily changed the district courts' supplemental jurisdiction discretion analysis, and that, unless one of the conditions of 28 U.S.C. § 1367(c) exists, courts are not free to decline jurisdiction.  See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir. 1998)("Section 1367 has indeed altered Gibbs' discretionary analysis."); McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir. 1994)("The statute plainly allows the district court to reject jurisdiction over supplemental claims only in the four instances described therein."); Executive Software N. Am., Inc. v. U.S. Dist. Court, 24 F.3d 1545, 1557 (9th Cir. 1994)("By codifying preexisting applications of Gibbs in subsections (c)(1)-(3), however, it is clear that Congress intended the exercise of discretion to be triggered by the court's identification of a factual predicate that corresponds to one of the section 1367(c) categories."); Palmer v. Hosp. Auth., 22 F.3d 1559, 1569 (11th Cir. 1994)("[S]upplemental jurisdiction must be exercised in the absence of any of the four factors of section 1367(c).").  District courts in the Tenth Circuit have reached the same conclusion.  See Mirzai v. Gen. Servs. Dep't, No. CIV 06-0219 JB/LAM, 2007 U.S. Dist. LEXIS 33729, at *63 (D.N.M. Mar. 30, 2007)(Browning, J.)(reasoning that the Court was free to decline jurisdiction over the plaintiff's state-law claims once it had dismissed all the federal claims in his complaint); Gudenkauf v. Stauffer Commc'ns, Inc., 896 F. Supp. 1082, 1084 (D. Kan. 1995)("[A]ny exercise of discretion declining jurisdiction over pendent claims or parties cannot occur until 'triggered' by the existence of one of the four conditions

enumerated.").

## LAW REGARDING 42 U.S.C. § 1983 ACTIONS

In enacting 42 U.S.C. § 1983, Congress has created a federal cause of action for individuals who have been deprived of federally protected rights "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. Numerous federal courts have noted that a plaintiff may not bring a cause of action against state officials directly under the Constitution, because 42 U.S.C. § 1983 is the exclusive federal remedy against persons acting under color of state law. See Burns-Toole v. Byrne, 11 F.3d 1270, 1273 n.3 (5th Cir. 1994); Azul-Pacifico, Inc. v. City of Los Angeles, 973 F.2d 704, 705 (9th Cir. 1992); May v. Hackett, 863 F.2d 883, 883 (6th Cir. 1988). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts demonstrating two elements: (i) the plaintiff was deprived of a right that federal law protects; and (ii) the defendant who deprived him of his right did so under color of state law. See Meade v. Grubbs, 841 F.2d 1512, 1526 (10th Cir. 1988)(quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)). "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of [42 U.S.C.] § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)(quoting Blum v. Yaretsky, 457 U.S. 991, 1002 (1982)).

The Tenth Circuit has explained that "the state action inquiry, although a legal determination to be made by the court, requires the 'sifting [of] facts and weighing [of] circumstances.'" Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1271 (10th Cir. 1989)(quoting Burton v. Wilmington Parking Auth., 365 U.S. 715, 722 (1961)).

> To occur under color of state law, the deprivation of a federal right "must be caused
> by the exercise of some right or privilege created by the State or by a rule of conduct

imposed by the state or by a person for whom the State is responsible" and "the party charged with the deprivation must be a person who may fairly be said to be a state actor . . . because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State."

How v. City of Baxter Springs, 217 Fed. Appx. 787, 792 (10th Cir. 2007)(quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)).  The Tenth Circuit has acknowledged that, "[w]hile the dichotomy between private conduct and state action 'is well established and easily stated, the question whether particular conduct is 'private,' on the one hand, or 'state action,' on the other, frequently admits of no easy answer.'"  How v. City of Baxter Springs, 217 Fed. Appx. at 791-92 (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 349-50 (1974)).

## LAW REGARDING ELEVENTH AMENDMENT IMMUNITY

The Eleventh Amendment prohibits federal courts from exercising jurisdiction over any suit in law or equity against a state.  See U.S. Const. amend XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.").  The Supreme Court of the United States has interpreted the Eleventh Amendment to provide immunity against suits brought without the State's consent by both citizens of another state and citizens of the state being sued.  See Tennessee v. Lane, 541 U.S. 509, 517 (2004).  In sum, "[t]he Eleventh Amendment confirms the sovereign status of the States by shielding them from suits by individuals absent their consent."  Frew v. Hawkins, 540 U.S. 431, 437 (2004)(citing Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996)).

When a claim is asserted against an individual state official in her official capacity, the official "may also assert Eleventh Amendment immunity as an 'arm' of the state . . . [and] is

generally entitled to assert the same immunities as the governmental entity for which he or she works." Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002)(citing Hafer v. Melo, 502 U.S. 21, 25 (1991)).  "To ensure the enforcement of federal law, however, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." Frew v. Hawkins, 540 U.S. at 437.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 n.10 (1989)(noting that "official-capacity actions for prospective relief are not treated as actions against the State")(quoting Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985)); Ex Parte Young, 209 U.S. 123, 155-56 (1908).  To fall within this exception, the "state officials [sued] must have a particular duty to 'enforce' the statute in question and a demonstrated willingness to exercise that duty." Prairie Band Potawatomi Nation v. Wagnon, 476 F.3d 818, 828 (10th Cir. 2007)(quoting Ex Parte Young, 209 U.S. at 157).  On the other hand, "suits seeking damages from state officials in their individual capacities are not barred by the Eleventh Amendment." Cornforth v. Univ. of Okla. Bd. of Regents, 263 F.3d 1129, 1132 (10th Cir. 2001).

## LAW REGARDING LEGISLATIVE IMMUNITY

The Supreme Court has recognized that "[a]bsolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998)(quoting Tenney v. Brandhove, 341 U.S. 367, 376 (1951)).  Legislative immunity applies to actions seeking damages and declaratory or injunctive relief.  See Sup. Ct. of Va. v. Consumers Union of U.S., 446 U.S. 719, 732 (1980).  Although originally afforded to members of Congress, the Supreme Court has extended the doctrine's protections to state officials acting in a legislative capacity.  See Kamplain v. Curry County Bd. of Comm'rs, 159 F.3d 1248, 1250 (10th Cir. 1998). The Supreme Court and the Tenth Circuit have both cautioned, however, that the scope of legislative

immunity is narrowly construed "and the government official seeking immunity bears the burden of showing that an exemption from personal liability is justified." Id. at 1251(citing Forrester v. White, 484 U.S. 219, 224 (1988)).

"[O]fficials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." Bogan v. Scott-Harris, 523 U.S. at 55. To determine whether legislative immunity applies to an official's actions, the court looks to the function the official was performing and not his title. See Forrester v. White, 484 U.S. at 227 ("[I]mmunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches.")(emphasis in original). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." Bogan v. Scott-Harris, 523 U.S. at 54. The Tenth Circuit has explained that, "at its core, the legislative function involves determining, formulating, and making policy." Kamplain v. Curry County Bd. of Comm'rs, 159 F.3d at 1251.

## LAW REGARDING THE AMERICANS WITH DISABILITIES ACT

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Federal courts have described the ADA as "a general prohibition against discrimination by public entities, regardless of activity." New Directions Treatment Servs. v. City of Reading, No. 05-4353, 2007 U.S. App. LEXIS 14025, at *12 (3d Cir. June 15, 2007). See PGA Tour, Inc. v. Martin, 532 U.S. 661, 674 (2001)("Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals."). "To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them

-24-

employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." PGA Tour, Inc. v. Martin, 532 U.S. at 675 (internal footnotes omitted).  To prove a violation of the ADA, a plaintiff must establish: "[I] that he is a 'qualified individual' with a disability; [ii] that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and [iii] that such exclusion or discrimination was due to his disability."  Hargrave v. Vermont, 340 F.3d 27, 34-35 (2d Cir. 2003).

Private entities that operate a "public accommodation" may also be liable under the ADA for discrimination against disabled individuals "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a).  For the purposes of applying the Act to providers of public accommodations, "discrimination" includes

> failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

42 U.S.C. § 12182(b)(2)(A)(ii).  Accordingly, the statute implicates three inquiries: (i) "whether the requested modification is 'reasonable;'" (ii) "whether it is 'necessary' for the disabled individual;" and (iii) "whether it would 'fundamentally alter the nature of' the [service being provided]."  PGA Tour, Inc. v. Martin, 532 U.S. at 683 n.38 (quoting 42 U.S.C. § 12182(b)(2)(A)(ii)).

## ANALYSIS

While Bragg's Application does not expressly discuss the Court's jurisdiction, and does not

mention any federal statutes, it alleges that the Defendants' violated his civil rights.[4]  In addition, in his briefing, Bragg discusses violations of his constitutional rights, Medicaid law, and the ADA. Accordingly, the Court has jurisdiction over his Application, but finds that the federal claims currently contained in his Application are not cognizable.

## I.    THE COURT WILL NOT DENY HMES' MOTIONS BECAUSE IT HAS NOT ADHERED TO ALL PROCEDURAL REQUIREMENTS.

Bragg notes a number of procedural irregularities in HMES' filings.  He points out that HMES' responsive pleading after being served his summons was seven days late, that HMES' attorney did not mail him a copy of his entry of appearance, and that HMES' pleadings are labeled with a case number containing the incorrect judge's initials.  See Bragg's Reply at 2.  The Court has also notes that, while Bragg's Application lists "Home Medical Equipment Specialists Owner Kevin _____?" as a Defendant, and does not name HMES as a Defendant, HMES' pleadings have all purported to be on the entity's behalf, and no formal pleading has been filed expressly on behalf of Kevin.

While HMES' Motion to Dismiss argues that Bragg's Application should "be dismissed as to HME[S] for failure to designate and serve HME[S] in its appropriate legal capacity," HMES' Motion to Dismiss at 1, the Court believes that Bragg's Application and his subsequent briefing make it clear that he was not attempting to sue HMES, as an entity, at the time he filed his Application.  Indeed, Bragg expressly stated that he did "not wish to sue Home Medical Specialists,

---

[4]For purposes of this opinion, the Court has taken Bragg's allegations in his Application as true and ruled under rule 12(b)(6).  In making its ruling, the Court has not considered the materials submitted beyond the pleadings and thus has not converted the Defendants' motions into motions for summary judgment.  Nevertheless, to be as fair as possible to Bragg, the Court has reviewed all the materials he has submitted in addition to his pleadings, and does not believe that considering those materials would change its analysis in any way.

LLC." Summary of Needs ¶ 1, at 4. As the Plaintiff, Bragg is entitled to name as Defendants all the parties, and only the parties, he desires; that Bragg chose to sue Kevin and not HMES is within his prerogative. If HMES was aware of grounds upon which the Court should have dismissed Bragg's claims against Kevin, it should have advanced those grounds. HMES is not entitled to interpret Bragg's suit to be against itself, however, merely because it, or Kevin, prefer it to be so, or because it is to its strategic advantage to have the lawsuit styled in that manner.

The Court acknowledges that HMES is represented by counsel and still has not complied with all of its procedural requirements. The Court does not believe, however, that HMES' irregularities afforded it any strategic advantage or affected the Court's analysis in any way. Moreover, the Court recognizes that it has been liberal in construing Bragg's Application and his subsequent pleadings. The Court does not believe that it would be fair for it to construe Bragg's claims as liberally as it has and simultaneously disregard HMES' moving papers because of procedural technicalities. Moreover, the Court has not applied its local rules regarding responses, replies, and surreplies to any of the parties and has considered all of the arguments that each of the parties have made. Consistent with the Court's preference for deciding the parties' motions on the merits rather than on procedural technicalities, the Court will consider HMES' filings.

## II.   THE COURT HAS JURISDICTION OVER BRAGG'S APPLICATION.

Because subject-matter jurisdiction involves the Court's power to hear a case, see Arbaugh v. Y & H Corp., 546 U.S. at 514, the Court must first address whether it has jurisdiction over the matter. As the party seeking the exercise of jurisdiction, Bragg bears the burden of establishing jurisdiction and "must allege in his pleading the facts essential to show jurisdiction." United States ex rel. General Rock & Sand Corp. v. Chuska Dev. Corp., 55 F.3d at 1495 (citation and internal

quotations omitted).  Bragg's Application does not specifically contain any sections related to jurisdiction or explain on what jurisdictional basis he relies.  Bragg's Application does not expressly invoke any statutory basis for jurisdiction.  Because Bragg is a New Mexico citizen, and many of the other defendants are New Mexico citizens, there in not complete diversity, and Bragg's Application does not implicate the Court's diversity jurisdiction.  Consequently, the Court must find its jurisdiction, if at all, in federal-question jurisdiction.

 "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987)(citing Gully v. First Nat'l Bank, 299 U.S. 109, 112-13 (1936)).  Bragg's Application does not reference any specific federal laws that any of the Defendants in this case violated by refusing to repair his wheelchair or requiring prior authorization before filling his prescriptions.  Bragg's only specific reference to statutory law in his Application is to the New Mexico White Cane Law, N.M. Stat. Ann. §§ 28-7-1 to -7.  The White Cane Law, however, is not an independent basis for the Court to assert federal-question jurisdiction over Bragg's claims. Likewise, to the extent that Bragg's Application can be construed to raise claims for personal injury and/or emotional distress, those claims sound in tort and arise solely under state law.

 Bragg's Application does suggest, however, that the Defendants' actions violated his "civil rights."  Bragg's Application at 3. In enacting 42 U.S.C. § 1983, Congress has created a federal cause of action for individuals who have been deprived of federally protected rights "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.  Moreover, in his responsive pleadings, Bragg also maintains that

his Application implicates the First, Fourth, and Fourteenth Amendments, <u>see</u> Bragg's Response at 1, that the Defendants violated "Medicaid law," Bragg's Memorandum at 2, and asserts that HMES has violated his rights under the Americans with Disabilities Act, <u>see</u> Bragg's HMES Brief at 2. Bragg contends that the Court has jurisdiction over his case, "because it involves federal Medicaid money."[5]  Application to Sue Lawyers at 3.  He also asserts that the "New Mexico government is attacking Medicaid and Medicare recipients therefore requiring federal intervention and thereby establishing federal jurisdiction."  Bragg's Surreply at 4-5.  Bragg's briefing gives the Court confidence that he is attempting to bring a claim under 42 U.S.C. § 1983 for violation of his federally protected rights or otherwise under federal law.  Construing Bragg's Application liberally, the Court will treat Bragg's Application as attempting to raise a 42 U.S.C. § 1983 cause of action. Accordingly the Court finds that it has jurisdiction over Bragg's case.

## III.    THE ELEVENTH AMENDMENT BARS BRAGG'S CLAIMS FOR MONEY DAMAGES AGAINST THE STATE DEFENDANTS IN THEIR OFFICIAL <u>CAPACITIES</u>.

Bragg does not state whether he is suing the State Defendants in their official capacity or in their individual capacity.  The caption of his Application, however, and the caption which he has included on all his subsequent pleadings lists each of the State Defendants by their official titles. <u>See</u> Bragg's Application at 1 ("The State of New Mexico Medicaid Quality Assurance Bureau Chief Sandra Chavez and her Assistant Everet Apadoca, New Mexico Governor Bill Richardson and

---

[5]The Court has, on at least one occasion, suggested without deciding that "'substantial federal funding provisions' may give rise to federal question jurisdiction." <u>Bar J Sand & Gravel, Inc. v. W. Mobile N.M., Inc.</u>, No. CIV 05-800 JB/WPL, 2005 U.S. Dist. LEXIS 39142, at *34 (D.N.M. Sept. 29, 2005)(Browning, J.)(quoting <u>Louisiana v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)</u>, 375 F. Supp. 2d 170, 172-73 (E.D.N.Y. 2005)).  Because Bragg has made specific references to federal law that he asserts the Defendants have violated, the Court need not decide that issue to resolve this motion.

Department of Human Services Secretary Pamela Hyde"). Accordingly, the Court construes Bragg's Application to raise a cause of action against the State Defendants in their official capacities.

To the extent that Bragg seeks damages against the State Defendants in their official capacities, the Eleventh Amendment bars his claims. On the other hand, to the extent that Bragg's Application raises a cause of action against the State Defendants in their individual capacities, those claims are not necessarily barred. See Cornforth v. Univ. of Okla. Bd. of Regents, 263 F.3d at 1132 ("[S]uits seeking damages from state officials in their individual capacities are not barred by the Eleventh Amendment."). More important, Bragg's Application requests relief in addition to money damages. Specifically, Bragg's Application requests the Court to: (i) have all wheelchair repairs performed in Bragg's home; (ii) eliminate prior authorization requirements for prescriptions that Bragg's physician prescribes; (iii) order the State of New Mexico to stop retaliating against him; and (iv) order the State of New Mexico to provide him with full and timely access to healthcare as needed. See Bragg's Application at 5.

The Eleventh Amendment permits suits for prospective injunctive relief against state officials in violation of federal law. See Frew v. Hawkins, 540 U.S. at 437. To incur liability under this exception, the state official sued must have a particular duty to enforce the law in question. See Prairie Band Potawatomi Nation v. Wagnon, 476 F.3d at 828. The Court believes that each of the State Defendants have a duty to protect Bragg's constitutional rights within the context of New Mexico's administration of its Medicaid program. Chavez and Apodaca are state employees directly involved in the administration of the Medicaid program. Hyde is the chief officer of the State Department whose statutory duties include administering the Medicaid program. See N.M. Stat. Ann. § 27-2-12; 8.200.400.9 NMAC. Richardson is New Mexico's chief executive official

-30-

responsible for the proper enforcement of the laws.  See N.M. Const. art. V, § 4.  To the extent, therefore, that Bragg's Application can be construed to request prospective injunctive relief against the State Defendants in their official capacities, the Eleventh Amendment does not bar his action.

To the extent that Bragg is suing the State Defendants in their official capacities for money damages, the Eleventh Amendment bars these claims and the Court will dismiss them.  To the extent that Bragg is suing the State Defendants in their official capacities for prospective injunctive relief, however, those actions are not treated as actions against the State, and the Eleventh Amendment does not bar those claims.  To the extent that Bragg is suing the State Defendants in their individual capacities, the Eleventh Amendment does not bar his claims.

## IV.    RICHARDSON IS ENTITLED TO LEGISLATIVE IMMUNITY WITH RESPECT TO CLAIMS BASED ON HIS ROLE IN FORMULATING POLICY.

Although Bragg's Application names Richardson as a Defendant in this case, he does not reference Richardson in his Application.  In his briefing, however, Bragg makes a number of allegations that reference Richardson's support for Medicaid programs and express Bragg's dissatisfaction with Richardson's positions on Medicaid policy.

Bragg states that, in 2004, "Richardson proposed to cut Medicaid benefits to poor children and the elderly."  Bragg's Surreply at 2.  Bragg asserts that, in March 2006, Richardson signed the Money Follows the Person in New Mexico Act, N.M. Stat. Ann. §§ 27-15-1 to -5 ("MFPA"), but that he refuses to implement the law.  See Bragg's Surreply at 3.  Bragg also contends that he has called Richardson's office "many times" to complain about the condition of his chair, and suggests that Richardson is therefore aware of this dispute.  Id. at 7.  Bragg explains that Richardson could have ordered his wheelchair be repaired in a manner that would not harm him, but rather chooses to bully and harass him.  See id.

-31-

The Supreme Court has acknowledged that executive branch officials are entitled to legislative immunity when they perform legislative functions such as making discretionary policy decisions that implicate budgetary priorities and the provision of public services. See Bogan v. Scott Harris, 523 U.S. at 55-56 (holding mayor was immune from a plaintiff's claim that municipal officials violated her civil rights when the mayor introduced a budget and signed into law an ordinance that eliminated the plaintiff's position as administrator of the city's Department of Health and Human Services). Moreover, a number of United States Courts of Appeals have specifically applied the doctrine of legislative immunity to state governors. See Baraka v. McGreevey, 481 F.3d 187, 200-02 (3d Cir. 2007)(holding Governor of New Jersey was entitled to legislative immunity when he recommended that the state legislature repeal the position of State Poet Laureate and signed the repeal into law); Torres-Rivera v. Calderon-Serra, 412 F.3d 205, 213 (1st Cir. 2005)("[A] governor who signs into law or vetoes legislation passed by the legislature is also entitled to absolute immunity for that act."); Women's Emergency Network v. Bush, 323 F.3d 937, 950 (11th Cir. 2003)("Under the doctrine of absolute legislative immunity, a governor cannot be sued for signing a bill into law."). But see England v. Rockefeller, 739 F.2d 140, 142-43 (4th Cir. 1984)(holding that Governor of West Virginia's constitutionally mandated participation in the state's budget process was not entitled to legislative immunity because it did not equate to "an exercise of the state's entire legislative power to appropriate monies").

In Lewis v. N.M. Dep't of Health, 275 F. Supp. 2d 1319 (D.N.M. 2003)(Vazquez, J.), the Honorable Martha Vazquez, United States District Judge,[6] considered whether former New Mexico

_____

[6]Judge Vazquez is now Chief Judge of the United States District Court for the District of New Mexico.

Governor Gary Johnson was entitled to legislative immunity in a case in which the plaintiffs alleged violations of Medicaid law and the ADA, and where the plaintiffs asserted that "they were entitled to less restrictive home and community-based services with 'reasonable promptness' instead of the institutional care they were receiving."  Id. at 1323.   In finding that Johnson was entitled to legislative immunity, Judge Vazquez  noted that the "[p]laintiffs' allegations regarding Defendant Governor Johnson's actions, either directly or indirectly, concern what they perceive to be inadequate funding and support" for the services they desired.  Id. at 1326.  Judge Vazquez explained that "funding for any state program is a budgetary and policy decision for the state to make," and asserted that "Johnson's actions in preparing a budget are an integral part of the legislative process." Id. at 1327 (internal quotations omitted).  Moreover, Judge Vazquez concluded that Johnson's pronouncement of policy objectives and advice to state officials that the growth of particular programs be limited was also "legislative in nature."  Id. at 1327-28.

Bragg's pleadings suggest that he is suing Richardson for Richardson's lack of political support for Medicaid programs, and for his proposals and recommendations that certain Medicaid services be reduced or eliminated.  While Bragg has indicated that he has called Richardson's office to advise him of the dispute regarding his wheelchair, Bragg has not asserted that Richardson was personally involved in the dispute involving his wheelchair or that Richardson is intimately involved in the day-to-day operations of the MQAB or the DHS.  Cf. Lewis v. N.M. Dep't of Health, 275 F. Supp. 2d at 1325 (acknowledging that Johnson was not involved in the day-to-day operations of the departments that administered the services implicated in the plaintiffs' lawsuit).  On the record before the Court, Bragg's allegations against Richardson appear to refer primarily to his political support for and budgetary policies regarding the administration of Medicaid services in New

Mexico, actions for which he is entitled to legislative immunity. To the extent that Bragg's Application can be construed to raise claims against Richardson based on his role in formulating policy regarding Medicaid law, the Court believes that Richardson is entitled to legislative immunity with respect to those claims.

## V.   BRAGG'S COMPLAINT DOES NOT STATE A FEDERAL CAUSE OF ACTION AGAINST ANY OF THE DEFENDANTS.

While the Court concludes that it has subject-matter jurisdiction, the Court does not believe that Bragg's Application states any federal claim against the Defendants. For the purposes of deciding a motion to dismiss, the Court must accept Bragg's allegations as true. The Court has carefully reviewed Bragg's Application to determine the statutory basis of his claims and believes that, liberally construed, his pleadings do not articulate claims that are cognizable in federal court.

### A.   42 U.S.C. § 1983.

To state a cognizable cause of action under 42 U.S.C. § 1983, Bragg must allege that the Defendants deprived him of a right that the Constitution protects and that they did so under the color of state law. Accepting all the allegations in Bragg's Application as true, the Court does not believe that Bragg's Application, liberally construed, alleges facts sufficient to sustain a cause of action for deprivation of his constitutional rights.

### 1.   Deprivation of a Federally Protected Right.

As a preliminary matter, the Court notes that Bragg does not reference Chavez, Richardson, or Hyde in his Application. While Bragg notes in his briefing that he has called Richardson's and Hyde's offices "many times" to advise them of the dispute regarding his wheelchair, Bragg's Surreply at 7, he does not allege that either Chavez, Richardson, or Hyde were personally involved in the dispute involving his wheelchair or in the distribution of his benefits. Under "[42 U.S.C.] §

-34-

1983, government officials are not vicariously liable for the misconduct of their subordinates." Serna v. Colo. Dep't of Corr., 455 F.3d 1146, 1151 (10th Cir. 2006). "In order for liability to arise under [42 U.S.C.] § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established." Trujillo v. Williams, 465 F.3d 1210, 1227 (10th Cir. 2006). See Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996)("[P]ersonal participation is an essential allegation in a [42 U.S.C.] § 1983 claim."). To the extent that Bragg is suing Chavez, Richardson, or Hyde because of their supervisory authority, he must establish an affirmative link between the Defendants' conduct and the alleged constitutional violations of their subordinates by alleging the Defendants' direct participation, their exercise of control or direction, or their failure to supervise. Serna v. Colo. Dep't of Corr., 455 F.3d at 1152.

Neither Bragg nor the State Defendants have provided the Court much information regarding whether Chavez, Richardson, or Hyde would have had knowledge concerning a particular Medicaid beneficiary's individual claims. The parties have not provided information regarding the supervisory relationships between any of the State Defendants, or the extent of responsibility each of the State Defendants has with respect to promulgating and executing policy and administrating benefits associated with New Mexico's Medicaid program. Bragg's allegations in his briefing are limited to his assertion that Hyde made a statement indicating that "she would only provide basic wheel chairs," Bragg's Surreply at 2, and that Hyde, along with Richardson, refuses to implement the MFPA. In sum, Bragg has not alleged facts sufficient for the Court to determine what role Chavez, Richardson, or Hyde may have played in violating his constitutional rights. Because Bragg must allege a defendant's personal involvement to sustain a claim under 42 U.S.C. § 1983, to the extent that Bragg's Application can be construed to raise a cause of action under 42 U.S.C. § 1983

against Chavez, Richardson, or Hyde, the Court will dismiss those claims.

Bragg makes factual allegations, however, that reference Apodaca, HMES, and Kevin. Bragg first contends that dismissing his lawsuit would violate his First Amendment "right to file a lawsuit and freedom of speech before the court."  Bragg's Response at 1.  See Bill Johnson's Rests., Inc. v. NLRB, 461 U.S. 731, 741 (1983)("[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances.").  The problem with Bragg's argument related to the First Amendment, however, is that dismissing Bragg's federal case would not deprive him of access to the courts; it merely prevents him from litigating certain claims or from bringing his case in federal court.  Although federal courts are courts of limited jurisdiction, to the  extent that Bragg has suffered an injury that may be redressed at law or equity, he may continue  to bring that action in state court.  Moreover, Bragg's assertion that dismissing the case would violate his First Amendment right to bring a lawsuit only explains what will happen if the Court grants the Defendants' motions; it does not describe how the Defendants' actions that constitute the factual basis of his claims establish a deprivation of his rights under the First Amendment.  Bragg has not referenced any action that Apodaca, HMES, or Kevin took against him that prevented him from filing a lawsuit or presenting his argument to the Court.  Indeed, Bragg has filed a lawsuit, and the Court has carefully considered each of the arguments in his filings.  The Court does not believe that the allegations in Bragg's Application, accepted as true, articulate a violation of Bragg's rights under the First Amendment.

Bragg also maintains that the Defendants violated his "Fourth Amendment rights to be secure in [his] person and effects."  Bragg's Response at 1.  Bragg asserts that HMES' insistence that it repair his wheelchair at its place of business, rather than in his apartment, would severely traumatize

him.  See id.  At the hearing on these motions, the State Defendants' counsel conceded that Bragg's chair likely needed repairs, but explained that, because of the highly specialized nature of Bragg's wheelchair, which she described as "a hospital bed on wheels," those repairs could not occur in Bragg's apartment.  See Transcript of Hearing at 8:9-15; 10:4-5 (Aguilar)(taken July 30, 2007)("Transcript").[7]  The State Defendants represent that Apodaca had made arrangements for the chair to be picked up and indicated that it would have been returned to Bragg "within hours."  Id. at 8:21-25 (Aguilar).

While the Court is sensitive to Bragg's condition, and understands that he would prefer to have the wheelchair repaired in his home, it does not believe that repairing the wheelchair at HMES' place of business constitutes a violation of Bragg's rights under the Fourth Amendment.  The Fourth Amendment guarantees "the right of the people to be secure in their persons, house, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend IV (emphasis added). Bragg has not alleged that any of the Defendants unlawfully seized his wheelchair or any other belongings, or that any of his possessions have been removed from his home without permission. Bragg does not allege that his home or his belonging have been subject to search.  HMES did not have any intention of permanently keeping the chair, and did not assert any ownership or possessory rights over the chair.  Bragg, himself, was never seized, searched, or confined.  In short, construing his Application liberally, Bragg has not presented allegations that, if true, would constitute a violation of the Fourth Amendment.

Bragg cites the Fourteenth Amendment and references his "right to go to areas open to the

---

[7]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

public or privilege to make [his] own decisions as to what is best for [his] physical and mental needs, [i.e.,] privilege of autonomy."  Bragg's Response at 1.  He maintains that his Application implicates "[t]he privilege to look after [his] property . . . [the] privilege of due process, and equal protection of the laws."  Id.  Assuming that the Fourteenth Amendment protects all of the rights and privileges Bragg identifies, he still has not alleged facts that establish a violation of those protections. Although Bragg has alleged that he was prohibited from going to HMES' place of business, he has not indicated any "areas open to the public" that the Defendants prohibited him from entering. Bragg has alleged that Apodaca advised him that, if he did not permit HMES to repair the wheelchair, the chair would have to be sent to El Paso to be repaired.  He has not alleged, however, that any of the Defendants removed the chair from his home against his will, that he was forced to permit Medicaid providers to repair his chair, or that other private vendors unaffiliated with Medicaid could not repair his chair.  Bragg's allegations are limited to his assertion that HMES was unwilling to repair the chair in his home or let him observe repairs at HMES' place of business. They do not state that any Defendant denied him the privilege to make the ultimate decision regarding how to care for his property.

Bragg has not referenced similarly situated individuals who were treated differently from him.  He has not identified procedural recourse that was denied to him or a "fundamental liberty interest" of which he was deprived that would suggest a violation of substantive due process. Chavez v. Martinez, 538 U.S. 760, 775 (2003)(noting that the Supreme Court has been reluctant to expand the doctrine of substantive due process, and explaining that "[o]nly fundamental rights and liberties which are 'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty' qualify for such protection")(quoting Washington v. Glucksberg, 521 U.S. 702,

721 (1997)).  The Court notes that "[t]he 'ultimate standard' for assessing an alleged violation of substantive due process is 'whether the challenged government action shocks the conscience of federal judges.'"  Ward v. Anderson, No. 06-8014, 2007 U.S. App. LEXIS 17531, at *23 (10th Cir. July 24, 2007)(quoting Moore v. Guthrie, 438 F.3d 1036, 1040 (10th Cir. 2006)).  To succeed on a substantive due process claim, a "plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking."  Camuglia v. City of Albuquerque, 448 F.3d 1214, 1223 (10th Cir. 2006)(quoting Uhlrig v. Harder, 64 F.3d 567, 574 (10th Cir. 1995)).  More specifically, "a [42 U.S.C.] § 1983 violation based on substantive due process 'must be predicated on a state action manifesting one of two traditional forms of wrongful intent -- that is, either (1) an intent to harm; or (2) an intent to place a person unreasonably at risk of harm."  Ward v. Anderson, 2007 U.S. App. LEXIS 17531, at *26 (quoting Uhlrig v. Harder, 64 F.3d at 573).

The Court does not believe that HMES' insistence that it repair Bragg's wheelchair at its place of business rather than at Bragg's home shocks the conscience, or that such action was motivated by an intent to harm Bragg or to place him at an unreasonable risk of harm.  Nor does the Court believe that state laws requiring prior authorization before state funds are expended for Medicaid beneficiaries' expenses shock the conscience.  To the contrary, such laws are likely well grounded in policies intended to prevent abusive exploitation of the Medicaid system.  None of Bragg's allegations describe conduct that is utterly outrageous or unjustifiable because of the magnitude of potential or actual harm associated with the conduct.  In sum, taking all the allegations in Bragg's Application as true, Bragg has not alleged that any of the Defendants deprived him of a right that the Fourteenth Amendment protects.

-39-

2.      **Under Color of State Law.**

Bragg alleges in his briefing that the "defendants acted under color of state law." Bragg's Memorandum at 3. To occur under color of state law, the deprivation of Bragg's rights "must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible," and "the party charged with the deprivation must be a person who may fairly be said to be a state actor . . . because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." How v. City of Baxter Springs, 217 Fed. Appx. at 792.

The Court believes that the State Defendants, all employees and officers of the State of New Mexico, were acting under color of state law for the purposes of Bragg's allegations. On the other hand, Bragg has not explained how HMES and Kevin are state actors. He has not indicated whether there a contractual relationship between HMES and the State, or whether HMES was a vendor providing a one-time service. He has not provided any information describing the degree of control the State exercised over HMES' activities or whether HMES had any discretion in determining the methods it employed in providing services to Medicaid beneficiaries. Nevertheless, because the Court has already concluded that Bragg has not alleged a violation of a constitutional right, it need not decide whether HMES and Kevin acted under color of state law. The Court concludes that, even when Bragg's claims are construed liberally, they do not state a claim that is actionable under 42 U.S.C. § 1983.

B.      **MEDICAID LAW.**

In briefing filed subsequent to his Application, Bragg alleges that the Defendants have

violated Medicaid law.  See Bragg's Memorandum at 2.  Bragg does not, however, reference the federal Medicaid Act, 42 U.S.C. §§ 1396-1396v, or point to any state or federal statute or regulation that the Defendants have violated.  While the State Defendants have referenced regulations requiring prior authorization before Medicaid benefits may be dispensed, see State Memorandum at 5 (citing 8.325.5.13(A) NMAC; 8.324.4.14 NMAC),  Bragg has not requested the Court compel the State Defendants to comply with those regulations, but rather to order the State Defendants to cease complying with those regulations.

While Bragg has not identified a particular statute or regulation that the Defendants violated, he contends that New Mexico's "mandate for prior authorization for services does violate my rights."  Bragg's Memorandum at 2.  He explains that, on August 30, 2003, Judge Vazquez stated that New Mexico violates federal law by not acting with "reasonable promptness."  Id.  While the Court has not been able to find an opinion that Judge Vazquez authored dated August 30, 2003, Judge Vazquez' opinion in Lewis v. N.M. Dep't of Health was issued on August 5, 2003.  In Lewis v. N.M. Dep't of Health, Judge Vazquez held that Medicaid law required New Mexico to provide certain medical services with reasonable promptness and created a federal right enforceable under 42 U.S.C. § 1983.  See 275 F. Supp. 2d at 1333.  Moreover, at an earlier stage in the same case, the Tenth Circuit held that, "[u]nder [42 U.S.C.] § 1396a(a)(8), the state 'must' facilitate applications for medical assistance and 'shall' furnish such assistance 'with reasonable promptness to all eligible individuals.'"  Lewis v. N.M. Dep't of Health, 261 F.3d 970, 977 (10th Cir. 2001)(quoting 42 U.S.C. § 1396a(a)(8)).  The Tenth Circuit also noted that federal regulations required that states adopt time limits to ensure that the determination whether an individual was eligible for medicaid services was reasonably prompt.  See id. (citing 42 C.F.R. § 435.911).

The problem with Bragg's Application and his subsequent pleadings, however, is that they do not identify any medical benefits or services for which he was eligible that were not delivered to him in a reasonably prompt fashion.  Indeed, he does not expressly allege that services were not delivered promptly; rather he is dissatisfied with the method in which the services were to be delivered and the requirement that he receive prior authorization before the services were delivered. Bragg alleges that his physician wrote a prescription to have his wheelchair repaired on February 7, 2007, that Apodaca first made arrangements to have his chair repaired on February 28, 2007, and that, after it was determined that Roadrunner could not service his chair, Kevin intended to pickup his chair for repair on April 7, 2007.  He states that, after he injured his foot on March 29, 2007, his podiatrist wrote him a prescription for antibiotic and pain ointments the next day, and that his pharmacists informed him that the state would not pay for the pain ointment on April 5, 2007.  Bragg does not offer any factual allegations, however, regarding why the Court should consider these time periods unreasonable, whether the Defendants were responsible for any delays during these time periods, or refer to any statutory or regulatory provisions that would require the Court find these time periods legally unreasonable.  While Bragg is not required, at this stage in the proceedings, to allege facts with detailed precision, he must assert more than a mere legal conclusion that the Defendants have violated the law.  See Bell Atl. Corp. v. Twombly, 127 S. Ct. at 1964-65.  His "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. at 1965 (internal citation omitted).   Bragg's reference to another case in which a District Court acknowledged statutory law provides a cause of action for failure to provide reasonably prompt benefits and services is not sufficient to state a cause of action for violation of Medicaid law in every

case.

The Court has briefly researched Medicaid law, and specifically, the federal requirements that state plans for medical assistance must meet, see 42 U.S.C. § 1396a, and did not discover any other relevant provisions upon which Bragg may premise this action.  The Court has no duty to do Bragg's work for him, even if he is proceeding pro se, and must be careful not to cross the line and, under the guise of construing his pleadings liberally, become his advocate.  See Bergman v. LaCouture, 218 Fed. Appx. at 750; Kassabji v. Baca, No. CIV 06-710 JB/ACT, 2007 U.S. Dist. LEXIS 8921, at *8 (D.N.M. Jan. 8, 2007)(Browning, J.)("The trial court is under no obligation to become an advocate for or to assist and guide the pro se layman through the trial thicket.")(quoting United States v. Pinkey, 548 F.2d 305, 311 (10th Cir. 1977))(internal quotation omitted); Duncan v. Citibank (S.D.) N.A., No. CIV 06-0246 JB/KBM, 2006 U.S. Dist. LEXIS 95357, at *14 (D.N.M. June 30, 2006)(Browning, J.)(acknowledging that "it is not 'the proper function of the district court to assume the role of advocate for the pro se litigant'")(quoting Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)).  The Court concludes that, based on Bragg's Application and the record before it, and construing Bragg's submissions liberally, he has not stated a cognizable federal claim for a violation of Medicaid law.

### C.    ADA.

Bragg acknowledges that he did not initially intend to sue HMES, but states that he has "changed his mind," and that he will sue HMES for punitive damages associated with violations of the First and Fourteenth Amendments and the ADA.  Bragg's HMES Brief at 2.  Bragg states, consistent with the ADA, he requests "reasonable accommodations."  Id. at 3.  The Court acknowledges that Bragg did not reference the ADA in his Application.  Nor has he clarified

whether he is asserting an ADA claim against all the Defendants or solely against HMES. Because he is proceeding, pro se, however, the Court has reviewed his Complaint to determine whether it contains a claim that might be cognizable under the ADA against any of the defendants. The Court has also considered whether it should allow Bragg to amend his Application to attempt to state such a claim.

While Bragg has not expressly referenced a provision of the ADA that any of the Defendants have violated or cited a protection that is applicable to his case, federal courts have described the ADA as "a general prohibition against discrimination by public entities, regardless of activity." New Directions Treatment Servs. v. City of Reading, 2007 U.S. App. LEXIS 14025, at *12. To prove a public entity violated the ADA, a plaintiff must establish: "[I] that he is a 'qualified individual' with a disability; [ii] that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and [iii] that such exclusion or discrimination was due to his disability." Hargrave v. Vermont, 340 F.3d at 34-35.

For the purpose of deciding this motion, the Court will assume without deciding, that, because Bragg is a category 004 recipient of New Mexico Medicaid benefits, he is a "qualified individual" with a disability under the ADA. The problem with Bragg's claims, however, is that he has not alleged that any of the State Defendants discriminated against him or that any discrimination was because of his disability. Bragg was not denied participation in the Medicaid program or denied specific benefits under the program. He was not denied benefits that were provided to individuals who were not disabled. While Bragg may not have agreed with the manner in which the Medicaid program was administered, he has not demonstrated how that disagreement is actionable under the ADA. He has not alleged that the administration of New Mexico's Medicaid program was

discriminatory based on his disability, and therefore cannot sustain a claim under the ADA against the State Defendants.

To the extent that Bragg is attempting to hold HMES liable under the ADA for its operation of a public accommodation, he has not expressly alleged that HMES' operation constitutes a public accommodation. The Court notes, however, that, among the entities that Congress has categorized as public accommodations under the ADA, is "a health care provider, hospital, or other service establishment." 42 U.S.C. § 12181(7)(F). Moreover, Bragg included in his Application a print-out from HMES' website that describes HMES as a "home respiratory and home medical equipment company." Bragg's Application at 10, Website of HME Specialists LLC, available at http://www.hmespecialists.net/aboutus.htm. The printout included in Bragg's Application indicates that HMES' mission is "[t]o provide the highest quality of respiratory therapy and home medical equipment services in New Mexico." Id.

Assuming without deciding that HMES could be considered a provider of public accommodations under 42 U.S.C. § 12181(7)(F), Bragg must still satisfy three inquiries to sustain a cause of action under the ADA against HMES: (i) "whether the requested modification is 'reasonable;'" (ii) "whether it is 'necessary' for the disabled individual;" and (iii) "whether it would 'fundamentally alter the nature of' the [service being provided]." PGA Tour, Inc. v. Martin, 532 U.S. at 683 n.38 (quoting 42 U.S.C. § 12182(b)(2)(A)(ii)). The Court believes that Bragg has alleged facts that, if true, could sustain a cause of action under the ADA against HMES.

Bragg alleges that other vendors had previously repaired his wheelchair in his apartment.[8]

---

[8]At the hearing on these motions, the counsel for the State Defendants acknowledged that Bragg has previously had a wheelchair repaired in his home, but explained that the chair that was repaired in his home was a different, less specialized chair than the chair Bragg currently uses. See

He states that he suffers from PTSD resulting from a previous repair during which his chair was removed.  HMES describes itself as a "home medical equipment company," and Bragg included this description in his initial Application.  Based on this information, the Court can not say definitely that Bragg's request for accommodation is not reasonable or necessary, or that it would fundamentally change the nature of the service HMES provides.  While the Court understands that Bragg must follow the same procedural rules as other litigants, and is concerned that it should not construe Bragg's pleadings so liberally that it becomes his advocate, the Court is also not convinced that, with respect to an ADA claim against HMES, "it is obvious that [Bragg] cannot prevail on the facts he has alleged" or that "it would be futile to give him an opportunity to amend."  Oxendine v. Kaplan, 241 F.3d at 1275.

Although the Court believes that, based on the record before it, Bragg's allegations could possibly sustain a claim under the ADA against HMES, Bragg's Application does not contain such a claim.  Indeed, Bragg indicated that he did not wish to sue HMES.  He has subsequently indicated, however, that he has changed his mind and would now like to sue HMES under the ADA.  To the extent that Bragg may be able to state a claim under the ADA against HMES for which relief may be granted, Bragg may file an amended complaint within ten days of the entry of this memorandum opinion and order articulating the grounds for such a cause of action.

In sum, the Court concludes that, even when Bragg's claims are construed liberally, they do not state a claim that is actionable under 42 U.S.C. § 1983 or Medicaid law.  The Court concludes that his claims do not state a claim that is actionable against the State Defendants under the ADA.  To the extent that Bragg may be able to state a claim under the ADA against HMES for which relief

---

Transcript at 9:17-22 (Aguilar).

may be granted, Bragg may file an amended complaint within ten days of the entry of this

memorandum opinion and order articulating the grounds for such a cause of action.

## VI.   BRAGG MAY NOT AMEND HIS APPLICATION TO ADD THE DEFENDANTS' ATTORNEYS AS DEFENDANTS IN THIS ACTION.

Bragg alleges that each of the Defendants' lawyers have engaged in a pattern of "willful

malice by demanding that [his] motion for writ of mandamus be dismissed."  Application to Sue

Lawyers at 1.  Bragg has not, however, cited any authority that would entitle him to sue opposing

counsel, and the Court is not aware of any such authority.  Although the Court has not found any

Tenth Circuit authority directly on point, other federal courts that have addressed this issue have

concluded that, "[a]s a general rule, a party may not sue opposing counsel under any theory of

recovery for 'acts or omissions undertaken as part of the discharge of their duties as attorneys to

opposing parties in the same lawsuit.'"  Miller v. Stonehenge/Fasa-Texas, JDC, L.P., 993 F. Supp.

461, 464 (N.D. Tex. 1998)(quoting Taco Bell Corp. v. Cracken, 939 F. Supp. 528, 532 (N.D. Tex.

1996)).  The New Mexico Supreme Court has reached a similar conclusion:

> The role of the attorney therein is to represent and advocate a client's cause of action
> as vigorously as the rules of law and professional ethics will permit.  For that reason
> an attorney's exclusive and paramount duty must be to the client alone and this duty
> cannot run to the client's adversary.  Not only would the adversary's interests
> interfere with the client's interests, but the attorney's ongoing and justifiable concern
> with being sued for negligence would detrimentally interfere with the attorney-client
> relationship.  Thus, an attorney in discharging professional duties on behalf of his
> client cannot be held liable for negligence toward an adverse party.  As a matter of
> public policy in order to maintain and enforce the fidelity and duty of the attorney
> toward the client, we cannot jeopardize the integrity of the adversarial system by
> imposing a professional duty on an attorney toward an adverse party.

Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A., 106 N.M. 757, 761, 750 P.2d 118, 122

(1988)(internal citations omitted).  The Court believes that this rule is well-grounded in public

policy and "protects the public's interest in loyal, faithful, and aggressive representation by the legal

profession." Miller v. Stonehenge/Fasa-Texas, JDC, L.P., 993 F. Supp. at 464. Within the bounds of the law, attorneys must be able to advocate on behalf of their clients and have a right to interpose any valid claims and defenses that the law, the rules of procedure, and the rules of professional responsibility allow. Attorneys acting within those confines must be able to act in their client's best interest without fear of personal liability. Moreover, opposing parties are not helpless when attorneys act in an improper fashion. When attorneys venture outside the permissible boundaries, rule 11 provides the appropriate remedial mechanism for sanctions that include penalties up to and including dismissal of a client's action. See Fed. R. Civ. P. 11.

In sum, the Court agrees with the other federal courts that have denied a party's attempt to sue opposing counsel for actions taken in the course of representing their client in the same lawsuit. Public policy and the availability of an alternative remedy in the Federal Rules of Civil Procedure counsel against allowing such a lawsuit. The Court will deny Bragg's Application to sue the Defendants' counsel.

## VII.   THE COURT WILL NOT DECIDE, AT THIS TIME, WHETHER TO EXERCISE SUPPLEMENTAL JURISDICTION OVER BRAGG'S STATE CLAIMS.

The Court takes no position -- at this time -- whether Bragg has suffered an injury for which he might be able to recover in another forum. While the parties dispute the applicability of the White Cane Law to the factual allegations Bragg raised in his Application, the Court need not decide that issue. At this time, regardless of its applicability, all the Court needs to decide is that Bragg has not alleged a violation of federal law or a deprivation of constitutional rights that will permit the Court to grant him relief against the Defendants. Because the Court is not obligated to exercise jurisdiction over Bragg's state-law claims if it dismisses all his federal claims, and because it believes that, now that it has dismissed all of the federal claims over which it has original

jurisdiction, exercising jurisdiction over any state-law claims would not "vindicate values of economy, convenience, fairness, and comity," Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1164, the Court may exercise its discretion and decline jurisdiction over any state-law claims Bragg's Application may raise.   Should Bragg amend his Application, however, consistent with the Court's rulings in this opinion, to articulate properly a federal cause of action under the ADA against the HMES, the Court will at that time make its decision to exercise jurisdiction over the state-law claims.

The Court finds that Bragg has not stated, at this time, a federal claim for which relief can be granted.   The Court will not at this time address Bragg's motions for discovery, damages, and special accommodations, because they may be moot if there is no federal case.

**IT IS ORDERED** that (i) the State Defendants' Motion to Dismiss Plaintiffs' Complaint is granted in part and denied in part; (ii) HMES' Motion to Dismiss for Failure to State a Claim is granted in part and denied in part; (iii) Bragg's Plaintiff's Motion to Dismiss Defendant's Motion to Dismiss My Complaint is denied; (iv) Bragg's Motion to Dismiss Defendants Motion to Dismis [sic] for Failure to State a Claim is denied; (v) Bragg's Application to Sue by Jury Lawyers Listed Below: Treble Punitive Damages is denied; and (vi) Bragg's Plaintiffs' Motion to Dismiss Defendants' Reply Memorandum in Support of Motion to Dismiss (Doc. #11) is denied.   The Court will not, at this time, decide: (i) Bragg's Application for Trial by Jury and for Treble Punitive Damage; (ii) Bragg's Request for Relief; (iii) Bragg's Motion for Discovery by Means of New Mexico's Open Records Act; and (iv) Bragg's Request for Special Accommodations.   The federal claims contained in Bragg's Application for Writ of Mandamus are dismissed with prejudice.   Bragg may file an amended complaint alleging an ADA claim against HMES and/or Kevin, and re-allege

-49-

any state claims against the State Defendants, within ten days of the date of entry of this order.


_____
UNITED STATES DISTRICT JUDGE


*Parties and counsel:*

Jerry Bragg
Albuquerque, New Mexico

> *Plaintiff Pro Se*

Alexandra Corwin Aguilar
Montgomery & Andrews, PA
Santa Fe, New Mexico

> *Attorney for Defendants Sandra Chavez, Everet*
>   *Apodaca, Bill Richardson, and Pamela Hyde*

Ronald T. Taylor
Albuquerque, New Mexico

> *Attorney for Defendants Home Medical Equipment*
>   *Specialists, LLC and Kevin Rider*

Paul R. Ritzma
  Special Assistant Attorney General
Santa Fe, New Mexico

> *Attorney for New Mexico Human Service Department*