IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JERRY BRAGG,

     Plaintiff,

v.                                         CIV 07-0343 JB/WDS

SANDRA CHAVEZ, New Mexico Medicaid Quality
Assurance Bureau Chief, EVERET APODACA, Assistant
to Sandra Chavez, BILL RICHARDSON, Governor of New
Mexico, PAMELA HYDE, New Mexico Department of
Human Services Secretary, KEVIN RIDER, Home Medical
Equipment Specialists Owner, and HOME MEDICAL
EQUIPMENT SPECIALISTS, LLC,

     Defendants.

## MEMORANDUM OPINION AND NOTICE OF INTENT TO CONTINUE AS JUDGE ON THE CASE

**THIS MATTER** comes before the Court on the Plaintiff's Notice of Intent to Sue United States District Judge James O. Browning and Alexandra Corwin Aguilar, Attorney for State Defendants and Ronald T. Taylor, Attorney For HMES and Paul Ritzma, Attorney for State Defendants, filed October 30, 2007 (Doc. 60)("Intent to Sue"). The primary issue is whether District Judge James O. Browning must recuse himself in light of Plaintiff Jerry Bragg's Intent to Sue. Because the Court believes that judicial immunity will provide a complete defense to the action against the Judge, and because and ethics guidance provided by the Committee on Codes of Conduct, as well as case law, indicates that recusal is not necessary in this situation, the Judge will not recuse himself from this suit.

## PROCEDURAL BACKGROUND

During the October 24, 2007 hearing, the Court ordered Bragg to produce his list of witnesses, their addresses, phone numbers and a summary of their anticipated testimony to the

Defendants, three days from the date of that hearing.  <u>See</u> Transcript of Hearing (taken Oct. 24, 2007)("Tr.") at 72:1-3 (Court).[1]  The Court also set several other standard discovery deadlines for all parties, and made several decisions including the appropriate number of interrogatories and the permissible length of time for the depositions.  <u>See</u> Tr. at 72:1-74:11 (Court, Taylor, Bragg & Corwin Aguilar).  Throughout the hearing Bragg indicated that he did not want to have to engage in discovery.

When the Court asked Bragg about the scheduling of discovery, Bragg stated: "I want to set a hearing on it and take it to trial as quickly as possible." Tr. at 58:22-23 (Bragg).  Bragg was also opposed to having his witnesses engage in depositions, stating: "[W]hy should a witness be put through anything like that?  What's the benefit to the defendants?  I just want something quick and simple." Tr. at 74:12-15 (Bragg).  Bragg also stated that his "witnesses didn't want to go through that [depositions] either [. . .] let's cut this short and do it simple, bring my witnesses to court.  So if you set a hearing date that my witnesses need to attend I'll make sure they know that date and that they are going to be here." Tr. at 71:10-14 (Bragg).  After the Court attempted to explain to Bragg what information he needed to provide to the Defendants, Bragg responded by asking if discovery was, "basically having a trial and coming back into the courtroom and doing it again?" Tr. at 76:25-77:1. (Bragg).

At the October 24, 2007 hearing, the Court acknowledged that it had previously decided to wait to rule on several of Bragg's motions about hearings, discovery, and jury trial, because it  first wanted to get through all of the motions to dismiss to see if the case would proceed and, if so, with

---

[1]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

what parties and claims.  <u>See</u> Tr. at 70:21-25 (Court).  The Court then set a hearing, for October 30, 2007 to specifically hear Bragg's motions.  <u>See</u> Tr. at 76:8-9 (Bragg & Court).  The date of the hearing was set pursuant to Bragg's preference.  <u>See id.</u>  At no time during the October 24, 2007 hearing did the Court refuse to rule on these motions.

Three times during the October 24, 2007 hearing, the Court indicated to Bragg that attendance by phone was an option for him: "When would be a good time to come back to the Court? You can do that by phone [because] I know you have a hard time getting down here."  Tr. at 80:17-19 (Court).  A second time the Court stated to Bragg: "We can argue those four motions and you can do it by phone if you prefer to do it that way." Tr. at 81:20-21 (Court).  Again, a third time the Court indicated to Bragg that he had the option to appear by phone stating: "Again, if you need to appear by phone, if that's more convenient, feel free to do that." Tr. at 83:22-23 (Court).

The October 30, 2007 hearing was set for 3:00 p.m.  Bragg did not appear in person or by telephone at the hearing.  <u>See</u> Tr. at 1:24-2:3 (taken Oct. 30, 2007)(Court). On October 30, 2007 at 1:21p.m., however, Bragg filed his Notice of Intent. <u>See</u> Notice of Intent.  Because it was hand stamped and not electronically filed, and because Bragg is proceeding pro se, the Court assumes that he, or a helper, must have been in the building at the time the document was filed.  The Notice states:

> Notice of Intent to Sue United States District Judge James O. Browning and Alexandra Corwin Aguilar, Attorney for State Defendants and Ronald T. Taylor, Attorney for HMES and Paul R. Ritzma, Attorney for State Defendants.
>
> Reasons in Part:
>
> #1. Deliberate conspiracy to violate my constitutional rights for equal protection under the law.
>
> #2. Judge Browning to allow Defendant's coun[s]el to try case before he hears case

and to try case outside of court after that Defendant's coun[s]el was to present motion to dismiss my case after so-called pre-trial discovery and that I would not be allowed to proceed with trial by jury[.]  This is [b]iased in favor of Defendants and their coun[s]el therefor[e] I am prevented from a fair hearing.

#3. After several months Judge Browning at the Request of Defendant's coun[s]el still refused to rule on several motions which included a request for reasonable accommodations with Judge Browning stating '[t]here is no need for me to come to court as I could attend court hearings by phone[.]' However Defendants are bringing forth accusations that cast a defamatory impact on my character.   I am Constitutionally entitled to attend court hearings to face my accusers.  Violations of ADA.

Intent to Sue ¶¶ 1-3, at 1.

## RELEVANT LAW REGARDING RECUSAL

"Normally, a party alleging judicial bias should move for recusal, and must do so in a timely fashion." United States v. Nickl, 427 F.3d 1286, 1297 (10th Cir. 2005)(internal citations omitted).

Under 28 U.S.C. § 455,

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding [. . .].

Determining whether a judge's "impartiality might reasonably be questioned" under § 455(a) is an objective test, based on the judge's "outward manifestations and reasonable inferences drawn therefrom," rather than on the judge's actual state of mind. Nichols v. Alley, 71 F.3d 347, 351 (10th Cir. 1995). The test is "whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." Id. (internal quotations omitted). A "nonexhaustive list of various matters not ordinarily sufficient to require § 455(a) recusal" includes:

-4-

> (1) Rumor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters; (2) the mere fact that a judge has previously expressed an opinion on a point of law or has expressed a dedication to upholding the law or a determination to impose severe punishment within the limits of the law upon those found guilty of a particular offense; (3) prior rulings in the proceeding, or another proceeding, solely because they were adverse; (4) mere familiarity with the defendant(s), or the type of charge, or kind of defense presented; (5) baseless personal attacks on or suits against the judge by a party; (6) reporters' personal opinions or characterizations appearing in the media, media notoriety, and reports in the media purporting to be factual, such as quotes attributed to the judge or others, but which are in fact false or materially inaccurate or misleading; and (7) threats or other attempts to intimidate the judge.

Id. (internal quotations omitted). Judges are not required to recuse when they have merely a casual relationship with a victim, attorney, witness, or litigant appearing before the court; occupying the bench does not require withdrawal from society. See, e.g., Sexson v. Servaas, 830 F. Supp. 475, 482 (S. D. Ind. 1993)("Merely knowing other persons, including the politically powerful, and being associated with them can take place in many ways, and that alone creates neither an impropriety nor an appearance of partiality. Indeed, aside from relegating judges to an existence akin to that of a monk, they are unavoidable."); United States v. Kehlbeck, 766 F. Supp. 707, 711 (S. D. Ind. 1990) (citing cases for the proposition that, "[r]arely does a judge's mere acquaintance with a party or witness justify recusal"). A judge may therefore sit on a case despite a casual friendship with one of the parties. See Sewer Alert Comm. v. Pierce City, 791 F.2d 796, 798 (9th Cir. 1986). Recusal is required, of course, where that level of personal relationship is of an extent that a reasonable person would question the judge's impartiality. See § 455(a). If the issue of whether § 455(a) requires recusal is a close one, the judge must recuse. See Nichols v. Alley, 71 F.3d at 352.

The United States Court of Appeals for the Tenth Circuit has also emphasized, however, that a judge has "as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." Id. at 351. Thus, the recusal "statute must not be so broadly

-5-

construed that it becomes [. . .] presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." <u>Id.</u> (internal quotations omitted). The recusal statute "is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice." <u>United States v. Cooley</u>, 1 F.3d 985, 993 (10th Cir. 1993). The Supreme Court has thus held that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." <u>Liteky v. United States</u>, 510 U.S. 540, 541 (1994). A prior ruling will suffice to show bias only where it derived from an extrajudicial source, or where the judge's remarks reveal "such a high degree of favoritism or antagonism as to make fair judgment impossible." <u>Id.</u> at 555.  Accordingly, "merely adverse rulings [. . .] do not in themselves support a bias charge. They are grounds for appeal, not recusal." <u>United States v. Nickl</u>, 427 F.3d at 1298 (citing <u>Liteky v. United States</u>, 510 U.S. at 555).

The Compendium of Selected Ethics Opinions states: "Judge need not recuse from a case involving a party that filed suit against the judge, where judicial immunity will be a complete defense to the action against the judge."  Committee on Codes of Conduct, Compendium of Selected Ethics Opinions § 3.6-7 (2007), http://jnet.ao.dcn/Guide/Volume_2/Chapter_5/Part_One/Canon_3/ Sec_36.html.  The Compendium of Selected Ethics provides guidance to judges on ethical questions. The policy that supports this ethics guidance is strong. It  prevents any party, who does not like a ruling issued by a judge, from suing the judge and being able to have their case reheard by a different judge.  Permitting such actions does not promote judicial efficiency or fairness to all parties involved in the litigation.

Advisory Opinion Number 103 by the Committee on Codes of Conduct deals with recusal considerations arising from harassing claims against judges. In its opinion, the Committee refers to

Canon 3C(1) of the Code of Conduct for United States Judges, which governs many of the issues

related to harassing litigation against judges.  Canon 3C(1) states in relevant part:

> (1)   A judge shall disqualify himself or herself in a proceeding in which the
> judge's impartiality might reasonably be questioned, including but not
> limited to instances in which:
>
>> (a)   the judge has a personal bias or prejudice concerning a
>> party, or personal knowledge of disputed evidentiary facts
>> concerning a proceeding; . . .
>>
>> (c)   the judge knows that [he or she] . . . has a financial interest
>> in the subject matter in controversy . . . or any other interest
>> that could be affected substantially by the outcome of the
>> proceeding;
>>
>> (d) the judge . . . :
>>
>>> (i)      is a party to the proceeding . . .
>>>
>>> (iii)   is known . . . to have an interest that could be substantially
>>> affected by the outcome of the proceeding; or
>>>
>>> (iv)    is . . . likely to be a material witness in the proceeding

Committee on Codes of Conduct, Advisory Opinion No. 103, (2002)

http://jnet.ao.dcn/Guide/Volume_2/Chapter_4/Adv_Opinion_103.html.   "When recusal is not

mandated by one of the categories enumerated in Canon3C(1)," a judge should consider, "the nature

of the complaint, the applicable law, the possibility of factual issues involving the credibility of the

named judge [. . .], and any other circumstances that might provide a reasonable ground for

questioning the impartiality of the assigned judge." Id. The advisory opinion comments on whether

a judge need recuse him or herself from a pending claim when a litigant brings a separate suit

against the judge:

> A litigant with a case pending before a judge may respond to an adverse ruling by
> initiating a complaint against the judge[. . .].  A judge is not automatically

> disqualified from participating in other, unrelated cases involving the same litigant, whether they are filed before or after the complaint in which the judge is a defendant. Judicial immunity usually will be a complete defense against a new complaint of this nature, and the court in which the complaint is filed likely will dismiss it as frivolous. In such circumstances, the mere fact that a litigant has filed a new frivolous complaint against a judge based on the judge's official actions will not disqualify the judge from continuing to preside over the earlier unrelated matter, brought by the same litigant.

Id. The advisory opinion goes on to say that "[a] complaint filed against a judge that is subject to prompt dismissal on judicial immunity grounds will not ordinarily give rise to a reasonable basis to question the judge's impartiality in unrelated cases filed against others by the same litigant." Id. The opinion explains that "such a nonmeritorious complaint, standing alone, will not lead reasonable minds to conclude that the judge is biased against the litigant or that the judge's impartiality can reasonably be questioned, and thus will not require the judge to recuse." Id.

## RELEVANT LAW REGARDING JUDICIAL IMMUNITY

"Judges are absolutely immune from civil liability for judicial acts, unless committed in the clear absence of all jurisdiction." Whitesel v. Sengenberger, 222 F.3d 861, 867 (10th Cir. 2000)(citing Henriksen v. Bentley, 644 F.2d 852, 855 (10th Cir. 1981)). Even if a judge acts in error, with malicious intent or in excess of authority, that judge "'does not act in the clear absence of all jurisdiction.'" Id. (quoting Stump v. Sparkman, 435 U.S. 349, 356-57 (1978)). "Moreover, a judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." Id. (internal citation and quotations omitted). Absolute judicial immunity is immunity from suit altogether. See Mireles v. Waco, 502 U.S. 9, 11 (1991)(citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).

In deciding whether absolute judicial immunity applies, courts are to look at the "'functions [the immunity] protects and serves, not [at] the person to whom it attaches.'" Id. (quoting Valdez

-8-

v. City and County of Denver, 878 F.2d 1285, 1287 (10th Cir. 1989)).  Judges are not entitled to

absolute judicial immunity for non-judicial acts, i.e., acts taken that are not in the judge's judicial

capacity. See id. (citing Forrester v. White, 484 U.S. 219, 227-229  (1988), and Stump v. Sparkman,

435 U.S. at 360). "[W]hether an act by a judge is a 'judicial' one relates to the nature of the act itself,

i.e., whether it is a function normally performed by a judge, and to the expectations of the parties,

i.e., whether they dealt with the judge in his judicial capacity." Id. at 12 (citations omitted). Judges

are, however, entitled to legislative immunity when acting in a legislative capacity. See Supreme

Court v. Consumers Union of United States, 446 U.S. 719, 734 (1980).  "The rationale of the

doctrine of judicial immunity - 'the risk that judges will be harassed and their independence

compromised by the threat of having to defend themselves against suits by disgruntled litigants' --

also is equally applicable to [a party's] charge  that in performing their judicial duties the judges of

[a] court were engaging in a conspiracy against [a party]." Green v. Seymour, 59 F.3d 1073, 1078

(10th Cir. 1995)(quoting Pulliam v. Allen, 466 U.S. 522, 537-38 (1984)).

       Judges acting in regards to state disciplinary issues sometimes act in a judicial capacity and

sometimes act in a legislative capacity. A judge acts in a judicial capacity when hearing appeals

from disciplinary proceedings. See Supreme Court v. Consumers Union of United States, 446 U.S.

at 734. Because "[d]isciplinary rules are rules of general application and are statutory in character,"

because "[t]hey act not on parties litigant but on all those who practice law in [a state]," and because

"[t]hey do not arise out of a controversy which must be adjudicated, but instead out of a need to

regulate conduct for the protection of all citizens," a court acts in a legislative capacity when it

enacts disciplinary rules. Id. at 731 (internal citations and quotations omitted).

## ANALYSIS

While Bragg has not asked the Judge to recuse himself, the Court believes that it is appropriate to consider that issue before proceeding to other motions.  Accordingly, the Court has reviewed the ethical rules to see whether it should continue to preside over the matter in light of Bragg's Intent to Sue.  After carefully reviewing the facts and the circumstances, and what guidance it can find in the ethical rules of conduct and case law, the Court will not recuse at this time.

In Bragg's Intent to Sue, he alleges three reasons, in part, for bringing suit against the Judge and the defense attorneys.  His first reason states: "Deliberate conspiracy to violate my constitutional rights for equal protection under the law." Intent to Sue ¶ 1, at 1.  Bragg does not set forth any factual basis for this allegation.  Bragg does not specifically allege this first  reason against the Judge, so it may not involve the Court.  In any case, the Court has not, in any way, conspired to violate Bragg's constitutional rights for equal protection, nor does the Court understand Bragg's basis for this claim.  This claim against the Judge lacks any factual basis, and the Court does not believe recusal is necessary on this allegation.  The Court believes that judicial immunity would preclude a claim of conspiracy because the Tenth Circuit has held that the rationale of the doctrine of judicial immunity is applicable to "[a party's] charge that in performing their judicial duties the judges of [a] court were engaging in conspiracy against [a party]." Green v. Seymour, 59 F.3d 1073, 1078 (10th Cir. 1995).

Bragg's second reason for suing the Judge states:

Judge Browning to allow Defendant's coun[s]el to try case before he hears case and to try case outside of court after that Defendant's coun[s]el was to present motion to dismiss my case after so-called pre-trial discovery and that I would not be allowed to proceed with trial by jury[.]  This is [b]iased in favor of Defendants and their coun[s]el therefore I am prevented from a fair hearing.

Intent to Sue ¶ 2, at 1.  While the Court is unclear exactly what Bragg is alleging in paragraph two of  his Intent to Sue, the Court believes that Bragg is misconstruing the Court's oral order, during the October 24, 2007 hearing,  for Bragg to respond to the Defendants' discovery requests. Based on Bragg's statements at the hearing, the Court suspects that Bragg believes the Court's discovery orders allow the Defendants to hear Bragg's case before it is heard before the Court or before a jury.

The  Court's  orders  for  the  parties  to  comply  with  federal  discovery  rules  in  no  way demonstrates a bias toward, or prejudice against, any of the parties.  All parties that come before the Court in a civil case are required to follow federal discovery rules.  The Court's setting of discovery deadlines and its  issuance of orders requiring parties to follow discovery rules cannot be properly construed to show bias of the Court.

Furthermore, at no time during the hearing did the Court state that Bragg would not be allowed to proceed with trial by jury.  Rather, the Court expressly  mentioned the possibility of a jury trial and the parties picking their jury while explaining the Court's trailing docket schedule to the parties.  See Tr. at 66:1-7 (Court).  The Court did not tell Bragg that he could not proceed with a jury trial.  Moreover, the Court has deferred decision on Bragg's desire for a jury trial until Bragg responds to, and the Court hears and decides the Motion of HME to Determine that a Jury Trial in the Above Cause has Been Waived, filed October 29, 2007, (Doc. 55), which the Court is  treating as a  Motion to Strike Jury Demand.  See Tr. at 11:9-13:6 (Court & Taylor).  Because a judge is absolutely immune from liability for his judicial acts, and because giving a discovery order is a function normally performed by a judge, such action is afforded judicial immunity. Because orders on discovery are not "committed in the clear absence of all jurisdiction," Whitesel v. Sengenberger, 222 F.3d at 867, the Court believes judicial immunity will preclude a suit based on these discovery

orders.

> Finally, Bragg's Intent to Sue alleges:
>
> After several months Judge Browning at the Request of Defendant's coun[s]el still refused to rule on several motions which included a request for reasonable accommodations with Judge Browning stating '[t]here is no need for me to come to court as I could attend court hearings by phone[.]' However Defendants are bringing forth accusations that cast a defamatory impact on my character.   I am Constitutionally entitled to attend court hearings to face my accusers.  Violations of ADA.

Intent to Sue ¶ 3, at 1.  Again, the Court believes that Bragg misconstrued the Court's words at the October 24, 2007 hearing.  There has been a lot of activity in this recently filed case, and it was reasonable for the Court to take up the motions to dismiss first.

Furthermore, Bragg alleges that the Judge stated "[t]here is no need for me to come to court as I could attend court hearings by phone." Intent to Sue ¶ 3, at 1.  This statement is not in the record. The Court did not tell Bragg that there was no need for him to come to Court, but rather offered to him, as it does to all parties in civil cases that come before it in the geographically large district of New Mexico, the convenience of conducting non-evidentiary hearings by telephone.  The Court did not indicate that Bragg should not be present in the Court for any of the hearings.  Such a decision, whether to appear in person at the hearings, is one that can be made only by Bragg himself.  Again, because those decisions did not "occur in the clear absence of all jurisdiction," Whitesel v. Sengenberger, 222 F.3d at 867, the Court believes judicial immunity will block a suit on this basis.[2]

---

[2]In construing Bragg's Notice of Intent liberally, the Court does not believe that he is stating a claim for judicial misconduct under 28 U.S.C. § 351.  To allege a complaint against a judge under this statute, the party must allege "that a judge has engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts." 28 U.S.C. § 351(a).  The Judicial Counsel of the Tenth Circuit defines this type of conduct as, "includ[ing] such things as use of the

The Court does not believe that it is necessary for the Judge to recuse himself in this suit.[3] The Court believes that, at all times during the course of this lawsuit,  it has acted in accordance with all rules and ethical guidelines.  It believes that the Judge has a complete defense of judicial immunity against all the allegations that Bragg presented in his Intent to Sue. The Court has tried very hard to be fair in this case and believes that the record reflects the Court's efforts.

At this time, therefore, the Judge finds no need to recuse himself from this suit and will continue to hear this case.  Through this order, the Court gives notice to Bragg that the Judge will continue to hear this case.

---

judges office to obtain special treatment for friends and relatives, acceptance of bribes, improperly engaging in discussions with lawyers or parties, and other abuses of judicial office." In re Charge of Judicial Misconduct, No. 96-10-372-01, *1417 (quoting Misconduct Rule 1(b)).  Furthermore, in the Preface of the Rules Governing Complaints of Judicial Misconduct and Disability, the Counsel of the Tenth Circuit states:

> The judicial misconduct procedure is not a means for challenging a judge's allegedly wrong decisions -- even very wrong decisions -- in a particular case.  A compliant that a judge has exhibited bias toward a particular case, treated a person or party unfairly, or wrongly decided a case, is not a ground for relief under Section 351 et seq.  An appeal or a petition for writ of mandamus may be an appropriate means for seeking relief for this type of conduct.

Preface of the Rules Governing Complaints of Judicial Misconduct and Disability, United States Courts for the Tenth Circuit.  Furthermore, the Court notes, that to its knowledge, Bragg has not complied with the filing requirements to allege such a complaint.  The Court, therefore, does not believe it is necessary to treat Bragg's Notice of Intent as a Complaint for judicial misconduct under 28 U.S.C. § 351.  The Court, therefore, believes it is proper to follow the guidance of case law as well as the Committee on Codes of Conduct that states a "[j]udge need not recuse from a case involving a party that filed suit against the judge, where judicial immunity will be a complete defense to the action against the judge."  Committee on Codes of Conduct, Compendium of Selected Ethics Opinions § 3.6-7 (2007), http://jnet.ao.dcn/Guide/Volume_2/Chapter_5/Part_One/Canon_3/Sec_36.html.

[3]If, at any time during the course of this litigation, circumstances change and the Judge believes that there is a need for him to recuse himself, he will do so.

_____
UNITED STATES DISTRICT JUDGE

*Parties and counsel:*

Jerry Bragg
Albuquerque, New Mexico

     *Plaintiff Pro Se*

Alexandra Corwin Aguilar
Montgomery & Andrews, PA
Santa Fe, New Mexico

     *Attorney for Defendants Sandra Chavez, Everet*
       *Apodaca, Bill Richardson, and Pamela Hyde*

Ronald T. Taylor
Albuquerque, New Mexico

     *Attorney for Defendants Home Medical Equipment*
       *Specialists, LLC and Kevin Rider*

Paul R. Ritzma
  Special Assistant Attorney General
Santa Fe, New Mexico

     *Attorney for New Mexico Human Service Department*

-14-