IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JERRY BRAGG,

      Plaintiff,

v.                                              CIV 07-0343 JB/WDS

SANDRA CHAVEZ, New Mexico Medicaid Quality
Assurance Bureau Chief, EVERET APODACA, Assistant
to Sandra Chavez, BILL RICHARDSON, Governor of New
Mexico, PAMELA HYDE, New Mexico Department of
Human Services Secretary, KEVIN RIDER, Home Medical
Equipment Specialists Owner, and HOME MEDICAL
EQUIPMENT SPECIALISTS, LLC,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion to Dismiss State of

New Mexico Governor William B. Richardson, filed September 6, 2007 (Doc. 45)("Motion to

Dismiss").  The Court held a hearing on this motion on October 24, 2007.  The primary issue is

whether the Court should dismiss Bragg's Amendment to his Application against Richardson

because Richardson is entitled to legislative immunity.  Because Bragg alleges claims against

Richardson that call into question his legislative actions as well as his actions that are non-

legislative, the Court will grant in part and deny in part the motion to dismiss.  See Memorandum

Opinion and Order, filed August 2, 2007 (Doc. 35)("Memorandum Opinion").

## FACTUAL BACKGROUND

Bragg's Application and Amendment to his Application[1] describe two incidents that Bragg

---

[1]Although Bragg filed an Amendment to his Application, which the Court is exclusively
considering to determine the claims alleged and whether a 12(b)(6) dismissal is appropriate, the
Court will look to Bragg's original Application for the purpose of detailing the case's factual

asserts support his request for judicial relief.  See Plaintiff Jerry Bragg's Application for Writ of Mandamus, filed April 11, 2007 (Doc. 1)("Bragg's Application"); Amendment to Bragg's Application to Sue for Violations of My Rights Under 42 U.S.C. § 1983 and Violations of My Rights Under the Americans with Disabilities Act, filed August 13, 2007 (Doc. 36)("Amendment to Application").  In deciding on the Defendant's motion, the Court has, consistent with rule 12(b)(6) of the Federal Rules of Civil Procedure, carefully considered each of these incidents, accepting as true the facts as Bragg has alleged them.  The Court has also drawn all reasonable inferences in Bragg's favor.

### 1.    Bragg's Condition and Prior Authorizations of Medical Care.

Bragg submits that he is a wheelchair-bound individual with multiple health conditions.  See Bragg's Application at 2.  Bragg received the wheelchair on October 2, 2003, and the price of the chair was $17,250.00.  See id. at 3.

Bragg indicates that he is a category 004 recipient of Medicaid benefits from the State of New Mexico and that he "receive[s] 100% health care coverage" through the Medicaid program. Id., Summary of My Needs at this Time ¶ 4, at 5 ("Summary of Needs").  Medicaid is a healthcare benefits program that receives funding from both the state and federal governments.  See 8.200.400.9 NMAC.  The  Medical Assistance Division of the Department of Human Services ("DHS") administers the Medicaid program in New Mexico.  See id.

Category 004 includes those recipients under the age of sixty-five who are disabled.  See 8.201.400.10 NMAC.  Bragg asserts that he suffers from Post-Traumatic-Stress Disorder ("PTSD")

---

background.  The Court will cite to Bragg's original Application for factual background purposes because Bragg, a pro se litigant, did not clearly represent all of the relevant facts in his Amendment to his Application.

resulting from previous bad experiences with wheelchair repairs, including one repair that took three months to complete.  See id. at 2-3.  Bragg states that other vendors had previously repaired his chair in his apartment.  See Summary of Evidence ¶ 5, at 6.

       **2.**       **Current Repair Needs.**

Bragg asserts that his wheelchair is in need of repair; specifically, he notes that: (i) the cords can be seen on the left-drive tire; (ii) there is noticeable wear on the other five tires; (iii) the battery occasionally runs low prematurely; (iv) the headrest is not properly fitted; (v) the chair is not equipped with a seatbelt; and (vi) the chair is missing a battery cover.  See id. at 2-3.  Bragg contends that the chair has rolled over 10,000 miles, but, because the odometer has never worked properly, as of April 2, 2007, the odometer reading indicated 1,380 miles logged.  See id. at 4.  On February 7, 2007, Bragg's physician wrote a prescription to have his wheelchair repaired.  See Summary of Needs ¶ 2, at 4.

On February 28, 2007, Defendant Everet Apodaca, in his capacity as a case manager in the New Mexico Medicaid Quality Assurance Bureau ("MQAB"), made arrangements for Roadrunner Home Medical Equipment ("Roadrunner") to perform repairs on Bragg's wheelchair.  See Bragg's Application, Summary of Evidence ¶ 4, at 6 ("Summary of Evidence").  Approximately three weeks later, Bragg was informed that Roadrunner could not perform the repairs because they did not service power wheelchairs.  See id.

On March 20, 2007, a representative from Defendant Home Medical Equipment Specialists, LLC ("HMES"), Kevin Rider,[2] visited Bragg's apartment to inspect the wheelchair.  See id. ¶ 5, at

---

       [2]Bragg did not know Rider's full name at the time he filed his Application and thus he did not include it  in his Application.  Bragg included Rider's full name, however, in his Amendment to his Application.

6.  Bragg states that, after the inspection, while getting into bed on March 29, 2007, he lost his balance and possibly broke a toe on his left foot.  See id.  Bragg suggests that, at the time of his injury to his toe, he was frustrated and upset because his chair had not yet been repaired and because his battery was almost depleted.  See id.

The next day, March 30, 2007, Bragg's podiatrist wrote him a prescription for an antibiotic ointment and a pain ointment for his toe.  See id. ¶ 2 at 5.  Bragg indicates that it was his understanding that he needed state authorization before he could fill the prescriptions.  See id. ¶ 2 at 5-6.

On April 2, 2007, Apodaca telephoned Bragg to advise him that Rider would pick up Bragg's chair at 9:30 a.m. on April 7, 2007 and take it to HMES' place of business to be repaired.  See id. at 2-3.  During the April 2, 2007 telephone call, Bragg requested that he or his caretaker be permitted to go to HMES' place of business during the time that the chair was being repaired.  See id. at 3.  Apodaca informed Bragg that, because of his health condition, it would not be possible for Bragg to be present at HMES' place of business while the chair was repaired.  See Bragg's Application at 3.  Apodaca also advised Bragg that, if he did not permit HMES to repair the wheelchair, the chair would have to be sent to El Paso, Texas to be repaired.  See id.  Bragg refused to allow HMES to repair his wheelchair outside of his home.

On April 5, 2007, Bragg received a call from his pharmacist informing him that the state would not pay for the pain ointment and that, because the antibiotic ointment was on the formulary list, it did not require prior authorization to fill the prescription.  See id. ¶ 2 at 6.

## PROCEDURAL BACKGROUND

Bragg filed his original application on April 11, 2007.[3]  In his application, Bragg named the following Defendants: (i) Sandra Chavez, Chief of the MQAB; (ii) Apodaca, as Chavez' assistant; (iii) Richardson; (iv) Pamela Hyde, Secretary of the DHS; and (v) Rider.  Bragg describes his litigation as "against the [S]tate of New Mexico and all parties involved in the physical and mental harm inflicted on me as concerns my wheelchair dating back to 1999[;] however[,] at this time[,] I need repairs to my wheelchair even if it means going out and begging the public for help."  Bragg's Application at 3.  On the other hand, Bragg indicated that he did "not wish to sue Home Medical Specialists, LLC[, but] only want this company to repair my wheelchair as it is needed and to make all repairs in my apartment as it is possible to do so."  Summary of Needs ¶ 1 at 5.  Bragg's Application requested the Court to: (i) have all wheelchair repairs performed in Bragg's home; (ii) eliminate prior authorization requirements for prescriptions that Bragg's physician prescribes; (iii) order the State of New Mexico to stop retaliating against him; and (iv) order the State of New Mexico to provide him with full and timely access to healthcare as needed.  See Bragg's Application

---

[3]Bragg has styled his action as an "Application for Writ of Mandamus." Bragg's Application at 1.  The writ of mandamus has been abolished in federal district courts, and the relief formerly sought with the writ must now be sought by an ordinary suit filed under the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 81(b).  Because Bragg is proceeding pro se, however, and because the Court's rulings do not turn on how the action is styled, the Court has treated his Application as a complaint, see Fed. R. Civ. P. 7(a), filed under rule 8, and invoking the Court's jurisdiction under 28 U.S.C. § 1331, see Smith v. U.S. Dist. Ct. Officers, 203 F.3d 440, 441 (7th Cir. 2000)(holding that, because "nothing turn[ed] on whether [the plaintiff's] suit is described as a suit for mandamus or a suit to enforce a federal common law right, the district judge should have reclassified the suit rather than (as he did) dismissing it"); Cauthon v. Finney, No. 95-3301, 1996 U.S. App. LEXIS 6084, at *4 (10th Cir. Mar. 29, 1996)(citing rule 81(b) and approving of a district court's characterization of a pro se prisoner's petition for a writ of mandamus as a petition for writ of habeas corpus).  Nevertheless, to remain consistent with Bragg's language, and for ease of reference to the pleadings, the Court will refer to Bragg's Complaint as "Bragg's Application" and his Amended Complaint as "Amendment to Application."

at 5.

The Court held a hearing on six pending motions on July 16, 2007.  On August 2, 2007, the Court issued a Memorandum Opinion and Order dismissing all federal claims against all Defendants. See Memorandum Opinion at 50.  The Court held that Bragg did not state a claim that was actionable against the State Defendants, including Richardson, under the ADA.  See Memorandum Opinion at 46.  Regarding Richardson's defense of legislative immunity, the Court in its August 2, 2007 opinion held: "To the extent that Bragg's Application can be construed to raise claims against Richardson based on his role in formulating policy regarding Medicaid law, the Court believes that Richardson is entitled to legislative immunity with respect to those claims."  Memorandum Opinion at 34.  Because Bragg had indicated in his briefing that he wanted to bring an ADA claim against HMES and or Rider, the Court allowed Bragg to file an amended complaint alleging an ADA claim against HMES and/or Rider, and re-alleging any state claim against the State Defendants.  See Memorandum Opinion at 50. The Court stated that, "to the extent that Bragg may be able to state a claim under the ADA against HMES for which relief may be granted, Bragg may file an amended complaint within ten days of the entry of this memorandum opinion and order articulating the grounds for such a cause of action." Memorandum Opinion at 46-47.  The Court did not say that it would permit Bragg to amend his complaint to bring an ADA action against any of the State Defendants.  After that opinion was issued, Bragg made no indication to the Court that he desired to amend his Application to bring an ADA claim against any of the State Defendants.

Bragg's Amendment to his Application, however, alleges ADA violations against all defendants.  See Amendment to Application at 6.  Bragg alleges: "Therefore all defendants have discriminated against my rights under the Federal Medicaid Act, U.S.C. § 1983, and the Americans

with Disabilities Act by taking to[o] long to repair my wheelchair and having repairs done in my home or allow me to go to Kevin's home medical store for repairs." Amendment to Application at 6-7. Bragg goes on to say that "all defendants violated my rights under the ADA by requiring me to [accept] the accommodations of Kevin Rider to take my wheelchair to his place of business for repairs against my wishes." Amendment to Application at 9.

On August 13, 2007, Bragg filed an Amendment to his Application naming the following defendants: (i) Chavez, in her official capacity; (ii) Apadoca [sic], in his official capacity; (iii) Richardson in his official capacity; (iv) Hyde, in her official capacity; (v) HMES; (v) Rider, in his contractual and official capacity. See Amendment to Application at 2. Bragg's Amendment to his Application brings claims under 8 U.S.C. § 1983 asking the Court for (i) relief for violations of the Federal Medicaid Act; and (ii) relief for violations of the Americans with Disabilities Act.

Bragg clarifies that he is suing Richardson only in his official capacity as Governor of New Mexico. See Amendment to Application at 2. Bragg alleges a claim against Richardson for violations of the Federal Medicaid Act, stating: "Governor Bill Richardson is responsible for overseeing and dictating policies and procedures for implementing all Medicaid related services. Therefore Bill Richardson did act under color of state law when he ordered state employee Pamela Hyde to implement his policies and procedures. . ." Id. at 3. Bragg further alleges:

> Bill Richardson as Governor of the State of New Mexico acting under color of state law did give orders to those under his commands to engage in policies and procedures that through a series of events that caused me and still is causing me to suffer severe mental a[n]guish, depression, physical pains and inhumane desperation as I try to get my wheelchair repaired and hold on to what is left of my dignity as a human being with unmet needs.

Id. at 4. Bragg also states that Richardson violated Bragg's rights when he gave orders to his employees and HMES, an alleged holder of a state contract, to carry out specific policies and

procedures that are causing Bragg to suffer.  See id. at 5.

In Bragg's response to State Defendants' Answer to Bragg's Amendment to his Application, Bragg stated that he is suing Richardson based on his participation in deciding on and implementing Medicaid law.  Bragg cites to the Defendants' reply memorandum to support why Richardson should remain in this suit as a defendant:

> "Governor Richardson is supreme executive authority for the State of New Mexico" and it is a fact that Governor Bill Richardson did meet as constitutionally required[,] with New Mexico Senate and House Legislators to decide on medicaid related issues in detail including how services are to be implemented and then signing his agreed decision into law thereby causing implementation of said medicaid law and how services are to be implemented, therefor[e] Governor Bill Richardson should remain as a defendant in this law suit . . .

Plaintiff's Response to State Defendant[s'] Answer[] to Amendment to Bragg's Application to Sue for Violations of Rights Under 42 U.S.C. § 1983 and Violations of Rights Under the Americans with Disabilities Act at 2 ("Plaintiff's Response")(quoting Defendants' Reply Memorandum in Support of Motion to Dismiss Plaintiff's Complaint, filed June 25, 2007 (Doc. 27)).

On August 25, 2007, HMES filed an answer to Bragg's Amendment to his Application.  See Answer to Amendment to Bragg Application by Home Medical Equipment Specialists LLC (Doc. 41)("HMES Amended Answer").  Two days later, on August 27, 2007, HMES filed an amended answer to Bragg's Amendment to his Application.  See Amended Answer to Amendment to Bragg's Application to Sue for Violations Under 42 USC Sec. 1983 and Violations Under the Americans with Disabilities Act on behalf of Home Medical Equipment Specialists LLC and Kevin Rider (Doc. 42).  On that same day, the State Defendants also filed an answer to Bragg's Amendment to his Application.  See State Defendants' Answer to Amended Complaint by Pamela Hyde, Sandra Chavez, Everet Apodaca, Bill Richardson, filed August 27, 2007 (Doc. 44).

Bragg filed a reply to the Defendants' answer to his Amendment to his Application.  See Plaintiff's Response to State Defendant[s'] Answer[] to Amendment to Bragg's Application to Sue for Violations of Rights Under 42 U.S.C. § 1983 and Violations of Rights Under the Americans with Disabilities Act, filed  September 11, 2007 (Doc. 46).   Bragg further indicated that his allegations against Richardson related to Richardson's policy implementing powers:

> [I]t is well-known by his reputation as commander in chief of the state that he is a very hands [on] governor, that he stays in constant telephone contact with his staff which would be various cabinet members and therefore he would know full well what's going on . . . in the daily issues of the activities and in most serious important details.  You know, the staff wouldn't run, cabinet secretary wouldn't run without his being in command and he was the one that was elected by the citizens.  So if he carries the full responsibility with him signing off on his opinions, his stand on . . . the issues, his policies and therefore, it just comes right on . . . down to -- why in the world wouldn't the governor after finding out about this if he didn't know about it previously, why did his staff continuing fighting me to keep to have all my motions dismissed  instead of just going and getting my wheelchair repaired.  This has gone on . . . for several months and they want to drag it on . . . for several months more whether the governor is in it or not.  When it comes to full hearing it could be sometime next year . . . .  Why not set a hearing in the near future and keep governor Richardson -- because he accepted a position of the power in position of the citizens . . . .  So he is a man that is responsible for the states issues, for the state health, state Medicaid along with his cabinet secretary, and the others on in position.

Transcript of Hearing, at 50:9-51:11 (taken Oct. 24, 2007)(Bragg)("Tr.").[4]

On September 6, 2007, the State Defendants filed a motion to dismiss Richardson.  See Motion to Dismiss.  Bragg filed a response to this motion on September 17, 2007.  See Response to Motion to Dismiss Party State of New Mexico Governor William B. Richardson filed by Jerry Bragg (Doc. 49).  Bragg's response states only that he had not received a copy of the motion to dismiss and noted that he did respond to Defendants' answer to Bragg's Amendment to his

---

[4]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Application.  See id. at 2.

After Bragg had argued in opposition to Richardson's motion to dismiss at the hearing held October 24, 2007, the counsel for the State Defendants stated that, as soon as she had received Bragg's correspondence alleging that he had not received a copy of the motion to dismiss, she mailed him another copy.  See Tr. at 49:1-6 (Aguilar). The State Defendants' counsel stated: "When I received that correspondence[,] which I received on September 17, the very next day I sent Mr. Bragg a second copy of the motion to dismiss governor Richardson and I did not receive any response from Mr. Bragg."  Tr. at 49:1-6 (Aguilar). The State Defendants' counsel went on to say that Bragg's failure to respond, under the federal rules of civil procedure, admitted the claims set forth in the motion to dismiss.  See Fed.R.Civ.P. 8(d).[5]

Furthermore, at the hearing on the motion to dismiss, on October 24, 2007, the State Defendants' counsel supplemented their motion to dismiss with an affidavit from Chavez.  See Affidavit of Sandra Chavez, filed October 24, 2007 (Doc. 53)("Chavez Aff.").  Chavez' affidavit stated in relevant part:

> During my tenure with MAD/QAB, I have had extensive direct communication with and

---

[5]Rule 8(d) states: "(d) Effect of Failure to Deny. Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided." The Court believes that the more appropriate rule in this situation is United States District of New Mexico Local Rule 7.1(b), which states, in relevant part:

> The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion. The failure to file and serve a reply in support of a motion within the time prescribed for doing so constitutes consent that briefing on the motion is complete.

D.N.M.LR-Civ. 7.1(b).

-10-

from Plaintiff Jerry Bragg regarding his wheelchair, its service/repair history, and other MAD services provided to Mr. Bragg. I have personal knowledge and documentation of the Medicaid services authorized by MAD for Mr. Bragg. . . . I am aware that Jerry Bragg has named Governor Richardson, Human Services Department Secretary Pamela Hyde, Mr. Apodaca and I as defendants in this case. It is my understanding that this lawsuit arises from Mr. Bragg's allegations against MAD/QAB with respect to the Invacare power wheelchair authorized by MAD in 2003. . . Throughout my tenure with the Medical Assistance Division, there has been no communication, directive, suggestion or personal involvement of any kind by State of New Mexico Governor Richardson, members of his staff or his office regarding Mr. Bragg's wheelchair or any other MAD service provided to Mr. Bragg. Communication, if any, between MAD and the office of the Governor regarding Mr. Bragg has been exclusively in reference to his threatened lawsuits, notices of intent to sue or actual lawsuits against the Medical Assistance Division or other state agencies.

See id.

## STANDARDS FOR DECIDING A MOTION TO DISMISS

In considering a motion to dismiss a complaint for failure to state a claim under rule 12(b)(6), a court must accept as true all factual allegations in the complaint and must draw all reasonable inferences in the plaintiff's favor. See Hall v. Bellmon, 935 F.2d 1106, 1109 (10th Cir. 1991). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his claim. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982). A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citation omitted).

"[T]he Supreme Court recently . . . prescribed a new inquiry for us to use in reviewing a

dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir.2007)(quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1967, 1969 (2007)). "The Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1974.)(alterations omitted).   "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177.

The sufficiency of a complaint is a question of law, and when considering a motion to dismiss, the court must assume as true all well-pleaded facts, drawing all reasonable inferences in favor of the plaintiff.  See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991). As a general rule, "a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss." Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007).  Indeed, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."  Fed. R. Civ. P. 12(b)(6).  The decision to consider supplemental materials outside of the pleadings is within the district court's discretion.  See Prager v. LaFaver, 180 F.3d 1185, 1189 (10th Cir. 1999).

Finally, in the context of a rule 12(b)(6) motion to dismiss where a plaintiff appears pro se, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent

standard than those drafted by attorneys." Johnson v. Johnson, 466 F.3d 1213, 1214 (10th Cir.

2006).  The United States Court of Appeals for the Tenth Circuit has explained that "dismissal of

a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff

cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to

amend." Oxendine v. Kaplan, 241 F.3d 1272, 1275 (10th Cir. 2001)(citing Perkins v. Kan. Dep't of

Corr., 165 F.3d 803, 806 (10th Cir. 1999)).  While a pro se litigant's pleadings are held to less

stringent standards, they must nevertheless comply with the same procedural rules as other litigants.

See Barnes v. United States, 173 Fed. Appx. 695, 697 (10th Cir. 2006)(citing Ogden v. San Juan

County, 32 F.3d 452, 455 (10th Cir. 1994); Green v. Dorrell, 969 F.2d 915, 917 (10th Cir. 1992)).

It is not the district court's function to assume the role of advocate for the pro se litigant.  See

Bergman v. LaCouture, 218 Fed. Appx. 749, 750 (10th Cir. 2007).

## LAW REGARDING 42 U.S.C. § 1983 ACTIONS

In enacting 42 U.S.C. § 1983, Congress has created a federal cause of action for individuals

who have been deprived of federally protected rights "under color of any statute, ordinance,

regulation, custom, or usage, of any State or Territory or the District of Columbia."  42 U.S.C. §

1983.  Numerous federal courts have noted that a plaintiff may not bring a cause of action against

state officials directly under the Constitution, because 42 U.S.C. § 1983 is the exclusive federal

remedy against persons acting under color of state law.  See Burns-Toole v. Byrne, 11 F.3d 1270,

1273 n.3 (5th Cir. 1994); Azul-Pacifico, Inc. v. City of Los Angeles, 973 F.2d 704, 705 (9th Cir.

1992); May v. Hackett, 863 F.2d 883, 883 (6th Cir. 1988).  To state a claim under 42 U.S.C. § 1983,

a plaintiff must allege facts demonstrating two elements: (i) the plaintiff was deprived of a right that

federal law protects; and (ii) the defendant who deprived him of his right did so under color of state

law.  See Meade v. Grubbs, 841 F.2d 1512, 1526 (10th Cir. 1988)(quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)).  "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of [42 U.S.C.] § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'"  Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)(quoting Blum v. Yaretsky, 457 U.S. 991, 1002 (1982)).

The Tenth Circuit has explained that "the state action inquiry, although a legal determination to be made by the court, requires the 'sifting [of] facts and weighing [of] circumstances.'"  Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1271 (10th Cir. 1989)(quoting Burton v. Wilmington Parking Auth., 365 U.S. 715, 722 (1961)).

> To occur under color of state law, the deprivation of a federal right "must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible" and "the party charged with the deprivation must be a person who may fairly be said to be a state actor . . . because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

How v. City of Baxter Springs, 217 Fed. Appx. 787, 792 (10th Cir. 2007)(quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)).  The Tenth Circuit has acknowledged that, "[w]hile the dichotomy between private conduct and state action 'is well established and easily stated, the question whether particular conduct is 'private,' on the one hand, or 'state action,' on the other, frequently admits of no easy answer.'"  How v. City of Baxter Springs, 217 Fed. Appx. at 791-92 (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 349-50 (1974)).

## LAW REGARDING ELEVENTH AMENDMENT IMMUNITY

The Eleventh Amendment prohibits federal courts from exercising jurisdiction over any suit in law or equity against a state.  See U.S. Const. amend XI ("The Judicial power of the United States

shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."). The Supreme Court of the United States has interpreted the Eleventh Amendment to provide immunity against suits brought without the State's consent by both citizens of another state and citizens of the state being sued.  See Tennessee v. Lane, 541 U.S. 509, 517 (2004).  In sum, "[t]he Eleventh Amendment confirms the sovereign status of the States by shielding them from suits by individuals absent their consent." Frew v. Hawkins, 540 U.S. 431, 437 (2004)(citing Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996)).

When a claim is asserted against an individual state official in her official capacity, the official "may also assert Eleventh Amendment immunity as an 'arm' of the state . . . [and] is generally entitled to assert the same immunities as the governmental entity for which he or she works." Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002)(citing Hafer v. Melo, 502 U.S. 21, 25 (1991)).  "To ensure the enforcement of federal law, however, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." Frew v. Hawkins, 540 U.S. at 437.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 n.10 (1989)(noting that "official-capacity actions for prospective relief are not treated as actions against the State")(quoting Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985)); Ex Parte Young, 209 U.S. 123, 155-56 (1908).  To fall within this exception, the "state officials [sued] must have a particular duty to 'enforce' the statute in question and a demonstrated willingness to exercise that duty." Prairie Band Potawatomi Nation v. Wagnon, 476 F.3d 818, 828 (10th Cir. 2007)(quoting Ex Parte Young, 209 U.S. at 157).  On the other hand, "suits seeking damages from state officials in their individual capacities are not barred by the Eleventh Amendment." Cornforth v. Univ. of Okla.

-15-

Bd. of Regents, 263 F.3d 1129, 1132 (10th Cir. 2001).

## LAW REGARDING LEGISLATIVE IMMUNITY

The Supreme Court has recognized that "[a]bsolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998)(quoting Tenney v. Brandhove, 341 U.S. 367, 376 (1951)).  Legislative immunity applies to actions seeking damages and declaratory or injunctive relief.  See Sup. Ct. of Va. v. Consumers Union of U.S., 446 U.S. 719, 732 (1980).  Although originally afforded to members of Congress, the Supreme Court has extended the doctrine's protections to state officials acting in a legislative capacity.  See Kamplain v. Curry County Bd. of Comm'rs, 159 F.3d 1248, 1250-51 (10th Cir. 1998)(citing Bogan v. Scott-Harris, 532 U.S. at 52).  The Supreme Court and the Tenth Circuit have both cautioned, however, that the scope of legislative immunity is narrowly construed "and the government official seeking immunity bears the burden of showing that an exemption from personal liability is justified."  Id. at 1251(citing Forrester v. White, 484 U.S. 219, 224 (1988)).  The essentials of the legislative function are the determination of the legislative policy and its formulation and promulgation as a defined and binding rule of conduct.  "Further, legislative actions must be done in relation to the business before the legislative body. . . . Whether actions are, in law and fact, an exercise of legislative power depends not on their form but upon whether they contain matter which is properly to be regarded as legislative in its character and effect."  Hinsdale v. City of Liberal, Kan.,19 Fed.Appx. 749, 761-62 (10th Cir. 2001)(citing Kamplain v. Curry County Bd. of Comm'rs, 159 F.3d at 1251-52).

"[O]fficials outside the legislative branch are entitled to legislative immunity when they perform legislative functions."  Bogan v. Scott-Harris, 523 U.S. at 55.  To determine whether

legislative immunity applies to an official's actions, the court looks to the function the official was performing and not his title.  See Forrester v. White, 484 U.S. at 227 ("[I]mmunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches.")(emphasis in original).  "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it."  Bogan v. Scott-Harris, 523 U.S. at 54.  The Tenth Circuit has explained that, "at its core, the legislative function involves determining, formulating, and making policy."  Kamplain v. Curry County Bd. of Comm'rs, 159 F.3d at 1251.

The Supreme Court has acknowledged that executive branch officials are entitled to legislative immunity when they perform legislative functions such as making discretionary policy decisions that implicate budgetary priorities and the provision of public services.  See Bogan v. Scott Harris, 523 U.S. at 55-56 (holding that mayor was immune from a plaintiff's claim that municipal officials violated her civil rights when the mayor introduced a budget and signed into law an ordinance that eliminated the plaintiff's position as administrator of the city's Department of Health and Human Services).  Moreover, a number of United States Courts of Appeals have specifically applied the doctrine of legislative immunity to state governors.  See Baraka v. McGreevey, 481 F.3d 187, 200-02 (3d Cir. 2007)(holding that Governor of New Jersey was entitled to legislative immunity when he recommended that the state legislature repeal the position of State Poet Laureate and signed the repeal into law); Torres-Rivera v. Calderon-Serra, 412 F.3d 205, 213 (1st Cir. 2005)("[A] governor who signs into law or vetoes legislation passed by the legislature is also entitled to absolute immunity for that act."); Women's Emergency Network v. Bush, 323 F.3d 937, 950 (11th Cir. 2003)("Under the doctrine of absolute legislative immunity, a governor cannot be sued for signing a bill into law.").  But see England v. Rockefeller, 739 F.2d 140, 142-43 (4th Cir.

-17-

1984)(holding that Governor of West Virginia's constitutionally mandated participation in the state's budget process was not entitled to legislative immunity because it did not equate to "an exercise of the state's entire legislative power to appropriate monies").

In <u>Lewis v. N.M. Dep't of Health</u>, 275 F. Supp.2d 1319 (D.N.M. 2003)(Vazquez, J.), the Honorable Martha Vazquez, United States District Judge,[6] considered whether former New Mexico Governor Gary Johnson was entitled to legislative immunity in a case in which the plaintiffs alleged violations of Medicaid law and the ADA, and where the plaintiffs asserted that "they were entitled to less restrictive home and community-based services with 'reasonable promptness' instead of the institutional care they were receiving." <u>Id.</u> at 1323.  In finding that Johnson was entitled to legislative immunity, Judge Vazquez noted that the "[p]laintiffs' allegations regarding Defendant Governor Johnson's actions, either directly or indirectly, concern what they perceive to be inadequate funding and support" for the services they desired.  <u>Id.</u> at 1326.  Judge Vazquez explained that "funding for any state program is a budgetary and policy decision for the state to make," and asserted that "Johnson's actions in preparing a budget are an integral part of the legislative process." <u>Id.</u> at 1327 (internal quotations omitted).  Moreover, Judge Vazquez concluded that Johnson's pronouncement of policy objectives and advice to state officials that the growth of particular programs be limited was also "legislative in nature."  <u>Id.</u> at 1327-28.

## LAW REGARDING THE AMERICANS WITH DISABILITIES ACT

The Americans with Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the

---

[6]Judge Vazquez is now Chief Judge of the United States District Court for the District of New Mexico.

benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Federal courts have described the ADA as "a general prohibition against discrimination by public entities, regardless of activity." New Directions Treatment Servs. v. City of Reading, No. 05-4353, 2007 U.S. App. LEXIS 14025, at *12 (3d Cir. June 15, 2007). See PGA Tour, Inc. v. Martin, 532 U.S. 661, 674 (2001)("Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals."). "To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." PGA Tour, Inc. v. Martin, 532 U.S. at 675 (internal footnotes omitted). To prove a violation of the ADA, a plaintiff must establish: "[i] that he is a 'qualified individual' with a disability; [ii] that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and [iii] that such exclusion or discrimination was due to his disability." Hargrave v. Vermont, 340 F.3d 27, 34-35 (2d Cir. 2003).

Private entities that operate a "public accommodation" may also be liable under the ADA for discrimination against disabled individuals "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). For the purposes of applying the Act to providers of public accommodations, "discrimination" includes

> failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

42 U.S.C. § 12182(b)(2)(A)(ii).  Accordingly, the statute implicates three inquiries: (i) "whether the requested modification is 'reasonable;'" (ii) "whether it is 'necessary' for the disabled individual;" and (iii) "whether it would 'fundamentally alter the nature of' the [service being provided]."  PGA Tour, Inc. v. Martin, 532 U.S. at 683 n.38 (quoting 42 U.S.C. § 12182(b)(2)(A)(ii)).

## ANALYSIS

Because Bragg is proceeding pro se, the Court is reluctant to consider Chavez' affidavit and convert this motion to one for summary judgment.  The Court believes that the better procedure is to decline to consider the affidavit at this time, leave the motion as a motion to dismiss, and decide whether legislative immunity bars all of Bragg's claims against Richardson.  When the Court reviews Bragg's allegations in his Amended Application, it concludes that legislative immunity bars some -- but not all -- of Bragg's claims.

## I.    THE COURT COULD DEEM THE MOTION UNOPPOSED UNDER ITS LOCAL RULES.

Because Bragg did not file a written response in opposition to Richardson's motion, the Court could, under its local rules, deem the motion unopposed and determine that Bragg consents to the motion.  See D.N.M.LR-Civ. 7.1(b).  Nevertheless, Bragg did file something indicating that he did not get the motion to dismiss and showed up at the October 24, 2007 hearing to argue in opposition to the motion.  It is reasonable to assume that the motion is opposed and that Bragg does not consent to the motion.  Consequently, because Bragg is proceeding pro se, and because the Court strongly prefers to deal with the merits of the motion rather than default Bragg, the Court will deal with the merits of Richardson's motion.

-20-

**II.    THE COURT WILL NOT CONVERT THIS MOTION INTO A MOTION FOR SUMMARY JUDGMENT.**

The Court acknowledges that, as a general rule, "a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss."  Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210,1215 (10th Cir. 2007).  Indeed, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."  Fed. R. Civ. P. 12(b)(6).  The decision to consider supplemental materials outside of the pleadings is within the district court's discretion.  See Prager v. LaFaver, 180 F.3d 1185, 1189 (10th Cir. 1999).

Counsel for the State Defendants chose to introduce an affidavit after Bragg had made his oral argument in opposition to the motion at the October 24, 2007 hearing.  Richardson did not attach the affidavit to his motion.  Bragg was unable to anticipate the affidavit.  Moreover, by waiting to introduce the affidavit until after Bragg argued at the hearing, Bragg did not have a realistic opportunity to respond to its contents.  This procedure is particularly problematic for a pro se party.

The Court realizes that it could give Bragg notice that it is converting this motion to dismiss into a motion for summary judgment, and then consider the affidavit.  The Court will decline, however, to convert this motion.  First, Richardson does not ask the Court to convert his motion into a motion for summary judgment, but instead asks the Court to dismiss the complaint against him.  Second, it is not clear that the affidavit addresses the legislative immunity issue; rather, it goes to the issue whether Richardson had any involvement in Bragg's case.  Third, Bragg is proceeding pro se.  The Court is concerned that Bragg will not fully understand what a conversion means.  The Court believes that it is fairest, at this stage of the proceedings, to not consider the affidavit.

-21-

The Court will thus exercise its discretion not to consider the affidavit in making its decision whether to dismiss Richardson as a party to this case.  Rather, the Court will consider only the Amended Application in making its decision on this matter.

Because the Court will not consider the affidavit that the State Defendants' counsel presented, the Court will not treat the motion as one for summary judgment under rule 56, but rather as a motion to dismiss under rule 12(b)(6).  If Richardson desires that the Court consider counsel's affidavit, he should move for a summary judgment and attach the affidavit to the motion giving Bragg, and the Court, clear notice that Richardson is asking the Court to go beyond the pleadings and that Bragg will need to respond with affidavits, or admissible evidence, rather than rely on the pleadings.  Accordingly, the Court will not -- at this time -- consider the affidavit that the Defendants' counsel presented to the Court and thus will not convert this motion into one for summary judgment.

## III.   THE COURT WILL CONSIDER ONLY THOSE ISSUES THAT THE STATE DEFENDANTS HAVE RAISED.

In its August 2, 2007 Memorandum Opinion and Order, the Court dismissed all federal claims against Richardson, and, on the basis of legislative immunity, all claims arising out of Richardson's actions that constituted the formulation of policy.  See Memorandum Opinion at 31-34. Specifically, the Court held that Bragg's original Application suggested that he was suing Richardson for Richardson's lack of political support for Medicaid programs, and for his proposals and recommendations that certain Medicaid services be eliminated or reduced.  See id. at 33. Furthermore, the Court noted that Bragg did not assert that Richardson was personally involved in the dispute.

The Court, in its August 2, 2007 Memorandum Opinion and Order,  found that at least some

of Bragg's original allegations against Richardson referred primarily to his political support for, and budgetary policies regarding, the administration of Medicaid services in New Mexico. See id. at 33-34. The Court held that at least some of Bragg's initial claims against Richardson, based on his role in formulating policy regarding Medicaid law, were dismissed on the basis of Richardson's entitlement to legislative immunity for such actions. See id. at 34. Because, however, the Court dismissed all of Bragg's federal claims against Richardson on other grounds, and because the Court did not know if it would be entertaining the state law claims if it did not have jurisdiction over some federal claim, it was unnecessary for the Court to sift through Bragg's claims and determine what claims were barred by legislative immunity and which were not. Instead, the Court stated:

> On the record before the Court, Bragg's allegations against Richardson appear to refer primarily to his political support for and budgetary policies regarding the administration of Medicaid services in New Mexico, actions for which he is entitled to legislative immunity. To the extent that Bragg's Application can be construed to raise claims against Richardson based on his role in formulating policy regarding Medicaid law, the Court believes that Richardson is entitled to legislative immunity with respect to those claims.

Memorandum Opinion at 34. The Court now must parse the allegations and decides whether legislative immunity bars all or which, if any, of the allegations.

The State Defendants in their motion to dismiss, however, do not argue that the Court should dismiss the claims that Bragg brought against Richardson in Bragg's Amendment to his Application because Bragg was not given permission to amend his complaint to allege federal claims against Richardson. Nor did Richardson raise this issue at the hearing. Thus, the Court will not raise this issue sua sponte, but rather will consider only the issue raised in the State Defendants' motion to dismiss: whether Richardson should be dismissed based on legislative immunity.

IV.    **RICHARDSON IS ENTITLED TO LEGISLATIVE IMMUNITY IN REGARDS**
       **ONLY TO HIS LEGISLATIVE ACTIONS.**

Bragg's Medicaid and ADA claims complain about policy decisions that Richardson has made and executive actions he has taken. The Court will, under legislative immunity, dismiss the claims based on Richardson's role in making policy. The Court will, however, allow the claims based on what Richardson did in making orders and executing policy to proceed.

A.    **Medicaid Claim.**

The Court finds that portions of Bragg's claims in his Amendment to his Application against Richardson regarding his violation of the Federal Medicaid Act pertain to Richardson's legislative actions. Thus, Richardson has absolute legislative immunity against those claims. Bragg also uses language, however, that suggests that some of his claims against Richardson are beyond mere policy formulation. Other portions of Bragg's Amendment to his Application appear to be alleging claims against Richardson for his executive actions. At several places in his Amendment, Bragg indicates that his allegations are based on Richardson's orders to his staff to carry out his policies and procedures. See e.g. Amendment to Application at 4 ("Bill Richardson as Governor of the State of New Mexico acting under color of state law did give orders to those under his commands to engage in policies and procedures that through a series of events that caused me and still is causing me to suffer severe mental a[n]guish, depression, physical pains and inhumane desperation . . ."); id. at 3 ("Governor Bill Richardson is responsible for overseeing and dictating policies and procedures for implementing all Medicaid related services. Therefore Bill Richardson did act under color of state law when he ordered state employee Pamela Hyde to implement his policies and procedures. . ."). Bragg also indicates that his claims are based on Richardson's orders to cause deliberate delay in repairing his wheelchair under Medicaid law.

The Supreme Court and the Tenth Circuit have both cautioned that the scope of legislative immunity is narrowly construed "and the government official seeking immunity bears the burden of showing that an exemption from personal liability is justified." Kamplain v. Curry County Bd. of Comm'rs, 159 F.3d at 1251(citing Forrester v. White, 484 U.S. 219, 224 (1988)). The Court acknowledges that "[w]hether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." Bogan v. Scott-Harris, 523 U.S. at 54. The Tenth Circuit has explained that, "at its core, the legislative function involves determining, formulating, and making policy." Kamplain v. Curry County Bd. of Comm'rs, 159 F.3d at 1251.

The Court is not convinced that Richardson's alleged actions of ordering his cabinet to implement policies and to cause delays in violation of those policies are actions that fall under the limited definition of legislative action for legislative immunity purposes. Bragg states:

> Bill Richardson as Governor of the state of New Mexico, . . . did give orders to those under his commends to engage in policies and procedures that through a series of event that caused me and still is causing me to suffer severe mental a[n]guish, depression, physical pains and inhumane desperation as I try to get my wheel chair repaired and hold on to what is left of my dignity as a human being with unmet needs.

Amendment to Application at 4. When an executive's actions slip from policy making to execution of policy, the executive is acting as a executor rather than a legislator. Bragg's specific claims stating that he is suing Richardson for his act of ordering his cabinet to do things is not within Richardson's legislative immunity defense. Those claims, therefore, are not dismissed against Richardson, but may remain and Bragg may seek prospective injunctive relief under such claims.

The Court acknowledges that the State Defendants, in their motion to dismiss, state that Bragg "fails to demonstrate any personal knowledge or involvement by the Governor." Motion to Dismiss at 4. The Court believes that such an argument is insufficient, on a motion to dismiss, to

defeat Bragg's allegation of Richardson's personal involvement in ordering his cabinet to carry out policies and allegedly carry out actions that violate Bragg's rights. If the State Defendants believe they can show that there is no genuine issue of material fact on this issue, then they should file a motion for summary judgment stating such and presenting evidence that supports their stance. The Court believes that a motion for summary judgment is a more appropriate vehicle in which to assert the State Defendants' argument regarding a lack of personal involvement by Richardson.

In their motion to dismiss, the State Defendants also rely on the Court's prior Memorandum Opinion and Order to support that Richardson is entitled to legislative immunity. See Motion to Dismiss at 3-4. As the Court stated in its prior opinion, Richardson has legislative immunity against any of Bragg's claims involving his formulation of policy for Medicaid law, or any law. It appears, however, that Bragg's claims in his Amendment to his Application extend beyond Richardson's legislative functions. The State Defendants' reliance on the Court's prior opinion may reasonably extend only to immunity for Richardson's legislative functions. The actual execution and implementation of the laws, whether proper or improper, appear to be beyond the realm of legislative immunity. To the extent, therefore, that Bragg is asserting claims against Richardson for prospective injunctive relief beyond his legislative actions, Bragg's claims are permitted.

Additionally, under Bragg's Medicaid claim against Richardson, he also states that Richardson needs to "take all pain medications as prescribed by doctors off the state's formular[y] so that medicaid will pay for the pain relievers." Amendment to Application at 10. The Court finds that, when liberally construed, this statement by Bragg can be read as a claim for prospective injunctive relief against Richardson from which Richardson is not protected by legislative immunity. This claim, therefore, is not dismissed.

2.      ADA Claim

Bragg also asserts a claim against Richardson for violating the American Disabilities Act. Bragg alleges that Richardson violated the American Disabilities Act as follows: "All Defendants also stereotyped me as an individual with a disability that they are afraid of, also all defendants violated my rights under the ADA by requiring me to [ac]cept the accommodation of Kevin Rider to take my wheelchair to his place of business for repairs against my wishes." Amendment to Application at 9.  He further states that "all defendants have violated my rights under the ADA by refusing to allow me to go to HMES' place of business for wheelchair repairs because they presumed and stereotyped  me as an individual with a disability and refused to allow me to enjoy full participation in the services offered to the public by HMES." Id.   In their motion to dismiss, the State Defendants did not allege that Bragg was unable to state a claim against Richardson under the ADA.  The Court, therefore, will not address whether a valid claim exists against Richardson under the ADA, but only finds that Bragg's allegations under the ADA seeking prospective injunctive relief may continue.

In construing Bragg's allegations against Richardson under the ADA liberally, the Court acknowledges that such allegations can be construed as seeking prospective injunctive relief against Richardson.  "[T]he Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law.'" Frew v. Hawkins, 540 U.S. at 437.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 n.10 (1989)(noting that "'official-capacity actions for prospective relief are not treated as actions against the State'")(quoting Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985)); Ex Parte Young, 209 U.S. 123, 155-56 (1908).  To fall within this exception, the "state officials [sued] must have a particular duty to 'enforce' the statute in question

and a demonstrated willingness to exercise that duty." <u>Prairie Band Potawatomi Nation v. Wagnon</u>, 476 F.3d 818, 828 (10th Cir. 2007)(quoting <u>Ex Parte Young</u>, 209 U.S. at 157).  Under this doctrine, Bragg is able to ask the Court to prevent Richardson from committing future violations of his rights under the ADA.  While the Court has some difficulty determining exactly what Bragg is alleging against Richardson under the ADA, to the extent that any of this claims are against Richardson for his legislative actions, Richardson is protected by legislative immunity.  The specific claims aforementioned, however, for prospective injunctive relief may continue.

The Court wants to again emphasize that Bragg cannot seek damages against Richardson. Bragg's filings with the Court, stating what appear to be settlement amounts he seeks from the Governor, seem to suggest that Bragg believes that he may seek money damages from Richardson. <u>See</u> Plaintiff's Response at 8 (stating that, "I will make an offer to mitigate damages as follows: . . . . Governor Bill Richardson $60,000 time treble =$180,000 . . . Plus all Defendants pay all court costs and court fees and all attorney fees and to immediately do all repairs to my wheelchair and do such repairs in my apartment and for all Defendants to give me a letter of apology for mistreating [me] and a promise they will never mistreat me against in the future . . .").  The Court, therefore, will dismiss any claims regarding an ADA violation that seeks damages from Richardson but will allow all claims -- not involving Richardson's formulation of policy but requesting prospective injunctive relief -- to continue.

**IT IS ORDERED** that Defendants' Motion to Dismiss State of New Mexico Governor William B. Richardson is granted in part and denied in part.  All claims based on Richardson's role in formulating policy are dismissed.  The Court will not dismiss the claims based on Richardson's orders or execution of policy or procedures.

-28-

_____
UNITED STATES DISTRICT JUDGE

*Parties and counsel:*

Jerry Bragg
Albuquerque, New Mexico

      *Plaintiff Pro Se*

Alexandra Corwin Aguilar
Montgomery & Andrews, PA
Santa Fe, New Mexico

      *Attorney for Defendants Sandra Chavez, Everet Apodaca,*
      *Bill Richardson, and Pamela Hyde*

Ronald T. Taylor
Albuquerque, New Mexico

      *Attorney for Defendants Home Medical Equipment*
      *Specialists, LLC and Kevin Rider*

Paul R. Ritzma
  Special Assistant Attorney General
Santa Fe, New Mexico

      *Attorney for New Mexico Human Service Department*