IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JERRY BRAGG,

     Plaintiff,

v.                                  CIV 07-0343 JB/WDS

SANDRA CHAVEZ, New Mexico Medicaid Quality
Assurance Bureau Chief, EVERET APODACA, Assistant
to Sandra Chavez, BILL RICHARDSON, Governor of New
Mexico, PAMELA HYDE, New Mexico Department of
Human Services Secretary, KEVIN RIDER, Home Medical
Equipment Specialists Owner, and HOME MEDICAL
EQUIPMENT SPECIALISTS, LLC,

     Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on (i) Plaintiff Jerry Bragg's Motion to Dismis

[sic] All Claims Against All Defendants Here-in And Entirely Without Prejudice And That All

Defendants Pay All Court Costs And All Court Fees And All Attorney Fees, filed October 30, 2007

(Doc. 61)("Motion to Dismiss"); and (ii) Defendant Governor William Richardson's Motion for

Dismissal or in the Alternative, for Summary Judgment, filed March 17, 2008 (Doc. 71)("Motion

for Summary Judgment"). The Court held a hearing on June 12, 2008. The primary issues are: (i)

whether the Court should grant Plaintiff Jerry Bragg's request to dismiss all pending claims against

all of the Defendants without prejudice and order the Defendants to pay all court costs, all court fees,

and all attorney fees; (ii) whether Bill Richardson is entitled to summary judgment on Bragg's

claims for prospective injunctive relief for alleged violation of the Americans with Disability Act

("ADA") and of the Federal Medicaid Act based on Bragg's claim that Richardson, acting "only

in his official capacity as Governor of New Mexico," Amended Application at 2, filed August 13,

2007 (Doc. 36), wrongfully ordered State employees to delay the repair of Bragg's wheelchair and wrongfully refused to allow Bragg to accompany his wheelchair to be repaired; and (iii) whether Richardson is entitled to legislative immunity on Bragg's demand for prospective injunctive relief regarding decisions to place medications on the state's formulary.  The Court will grant Bragg's motion to dismiss and will dismiss Bragg's claims against Defendants Home Medical Equipment Specialists, LLC ("HMES"), Kevin Rider, Sandra Chavez, Everet Apodaca,  Pamela Hyde and Bill Richardson without prejudice. The parties will each bear his, her, or its own attorney fees and costs. The Court will deny Richardson's motion for summary judgment as moot.

## FACTUAL BACKGROUND

The following facts are undisputed, and have been referenced in the Court's previous Memorandum Opinions and Orders.  See Memorandum Opinion and Order at 2-6, filed November 13, 2007 (Doc. 67)(granting in part and denying in part  Richardson's motion to dismiss Bragg's amended complaint)("November 13, 2007 Order");  Memorandum Opinion and Order at 3-6, filed August 2, 2007 (Doc. 35)(granting the State Defendants'[1] motion to dismiss the original complaint insofar as it attempted to allege any federal claims against the State Defendants)("August 2, 2007 Order").  Bragg is a wheelchair-bound individual who received his $17,000.00 motorized wheelchair on October 2, 2003, through the State's Medicaid program.  The State has authorized repair on Bragg's wheelchair several times in the past.  Bragg's wheelchair again needed repair in February 2007, and Apodaca authorized the repairs.  On March 20, 2007, an employee/representative from Medicaid-contractor HMES, owner Kevin Rider, visited Bragg's apartment to inspect the wheelchair.  He told Bragg that Rider would have to take it to his shop to repair it and would give

---

[1]  The State Defendants include Chavez, Apodaca. Richardson, and Hyde.

Bragg a temporary replacement. Bragg refused to allow Rider to take the wheelchair unless he could accompany the wheelchair to HMES' shop. Apodaca told Bragg that safety concerns precluded that condition, and Bragg refused to allow his wheelchair to be taken for repairs.

## PROCEDURAL BACKGROUND

The Court's two previous Memorandum Opinions and Orders set forth the procedural history and most of the applicable legal standards in this case and there is no need to repeat that effort here except as necessary for analysis of the motions before the Court. See November 13, 2007 Order; August 2, 2007 Order.

Bragg filed his original Application for a Writ of Mandamus, which the Court construed as a complaint, on April 11, 2007. See Doc. 1; August 2, 2007 Order at 6 & n.2. Bragg stated that he was "preparing litigation against the [S]tate of New Mexico and all parties involved in the physical and mental harm inflicted on me as concerns my wheelchair dating back to 1999[;] however[,] at this time[,] I need repairs to my wheelchair . . . ." Application at 3. Bragg's Application requested the Court to: (i) have all wheelchair repairs performed in Bragg's home; (ii) eliminate prior authorization requirements for prescriptions that Bragg's physician prescribes; (iii) order the State of New Mexico to stop retaliating against him; and (iv) order the State of New Mexico to provide him with full and timely access to healthcare as needed. See Bragg's Application at 5.

Richardson sought to have the Court dismiss all claims against him with prejudice. On May 29, 2007, Richardson, with the other State Defendants, moved to dismiss Bragg's Complaint. See Doc. 11. They asserted that the Court should dismiss Bragg's Application because it failed to state a claim for any violation of state or federal law. In their reply brief, the State Defendants argued that nothing in Bragg's Application or his responsive pleadings states a claim for which relief can be

granted, see State Defendants' Reply at 2, filed June 25, 2007 (Doc. 27), but for the first time, the

State Defendants also raised other arguments.  First, the State Defendants raised jurisdictional

arguments.  They contended that, to the extent that Bragg's allegations could be construed to

comprise a cause of action, the allegations sounded in personal injury or emotional distress, and

therefore arose solely under state law.  See id.  The State Defendants also argued that, even if

Bragg's allegations articulate claims that are cognizable in federal court, the Court still lacks

jurisdiction over the matter because the Eleventh Amendment bars those claims.  See id. at 3-4.

Finally, the State Defendants argued that, to the extent that Bragg's Application articulated a

cognizable claim against Richardson, the suit was barred because Richardson is entitled to

legislative immunity.  See id. at 6.

On July 17, 2007, the Court set a hearing on Richardson's motion for July 30, 2007.  See

Doc. 30.  At the July 30, 2007 hearing, the Court indicated that it was inclined to grant the motion

to dismiss Bragg's complaint.  The Court first stated that it did not "see that Mr. Bragg has stated

a cause of action" against any of the State Defendants.  The Court then stated:

> a good portion of his case against Governor Richardson is based on the Governor's
> position, policies, powers and how he's going about acting as Governor from a
> policy standpoint.  So he's not personally involved in the § 1983 action.   It seems
> to me one of omission, rather than commission, so I think a large number of his
> claims against Governor Richardson are going to be barred by legislative immunity.

Transcript of Hearing at 4-5 (taken July 30, 2007)("Tr").[2]   Accordingly, in the Court's written

Order, the Court held that, "to the extent that Bragg's Application can be construed to raise claims

against Richardson based on his role in formulating policy regarding Medicaid law, . . .  Richardson

---

[2]   The Court's citations to the transcripts of the hearings refer to the Court Reporter's
original, unedited versions.  Any final transcripts may contain slightly different page numbers.

is entitled to legislative immunity," and that Bragg's complaint did "not articulate claims that are cognizable in federal court" against any of the State Defendants.  August 2, 2007 Order at 34.

Liberally interpreting the facts alleged in Bragg's complaint, the Court concluded that Bragg's potential § 1983 claims against Richardson, Chavez, and Hyde should be dismissed because Bragg had not alleged any facts indicating that "Chavez, Richardson, or Hyde were personally involved in the dispute involving his wheelchair or in the distribution of his benefits," id. at 34-36; that Bragg had not stated facts sufficient to state claims for a First-Amendment violation against Apodaca or Rider that would give rise to a § 1983 action, see id. at 36; that he had not stated facts sufficient to state a Fourth- or Fourteenth-Amendment violation against any of the Defendants that would give rise to a § 1983 action, see id. at 37-39; that Bragg had not alleged any facts to indicate that the State Defendants had violated any provision of the Federal Medicaid statutes, see id. at 41-43; and that his allegations could not "sustain a claim under the ADA against the State Defendants," id. at 45.  Reading his Complaint liberally, however, the Court stated: "Bragg's allegations could possibly sustain a claim under the ADA against HMES, [although] Bragg's Application does not contain such a claim.  Indeed, Bragg indicated that he did not wish to sue HMES.  He has subsequently indicated, however, that he has changed his mind and would now like to sue HMES under the ADA." Id. at 46.  The Court allowed Bragg to "file an amended complaint within ten days of the entry of this memorandum opinion and order articulating the grounds for such a cause of action." Id.  The Court's thinking was that, if it ended up dismissing all federal claims it would decline jurisdiction over state-law claims.   The Court dismissed all the federal claims in Bragg's Application against all Defendants.  The Court gave Bragg permission to "file an amended complaint alleging an ADA claim against HMES and/or Kevin [Rider], and re-allege any state

claims against the State Defendants."  August 2, 2007 Order at 49-50.

It is important to understand what the Court decided in its August 2, 2007 Order and how it reached its decision.  First, the court concluded that Bragg did not state a federal claim.  Second, in an attempt to give guidance to the parties and to help Bragg with any amendment to the Application, the Court stated that, to the extent that Bragg's claims implicated Richardson's policy decisions, they would be dismissed.  The Court did not, however, dismiss all of Bragg's claims on the basis of legislative immunity, nor did the Court go through Bragg's initial allegations and decide which ones were barred by legislative immunity and which ones were not.  See August 2, 2007 Order at 34 ("To the extent that Bragg's Application can be construed to raise claims against Richardson based on his role in formulating policy regarding Medicaid law, the Court believes that Richardson is entitled to legislative immunity with respect to those claims.")(emphasis added); id. at 33-34 ("Bragg's allegations against Richardson appear to refer primarily to his political support for and budgetary policies regarding the administration of Medicaid services in New Mexico, actions for which he is entitled to legislative immunity.")(emphasis added).

The Court also stated that it would not, at that time, decide whether to exercise supplemental jurisdiction over state-law claims.  The Court reminded the parties that it was not obligated to exercise jurisdiction over state-law claims if it dismissed all federal claims.  The Court stated that, should Bragg amend his Application to articulate properly a federal cause of action under the ADA against HMES, the Court would at that time make its decision whether to exercise jurisdiction over state-law claims.

On August 13, 2007, Bragg filed a pleading entitled Amendment to Bragg's Application to Sue for Violations of My Rights under 42 U.S.C. § 1983 and Violations of My Rights Under the

Americans With Disabilities Act (ADA), naming Chavez, Apodaca, Richardson, Hyde, and Rider as Defendants.[3]  See Doc. 36 ("Amended Application").  The Court construed this pleading as an Amended Complaint.  Bragg contends that "all defendants have discriminated against my rights under the Federal Medicaid Act, U.S.C. § 1983, and the Americans with Disabilities Act by taking to[o] long to repair my wheelchair and [by refusing to have] repairs done in my home or [to] allow me to go to Kevin's home medical store for repairs."  Amended Application at 6-7.  He further contends that "all defendants violated my rights under the ADA by requiring me to [accept] the accommodations of Kevin Rider to take my wheelchair to his place of business for repairs against my wishes."  Amended Application at 9.

Bragg's specific factual allegations against Richardson in his amended complaint are as follows:  "Governor Bill Richardson is responsible for overseeing and dictating policies and procedures for implementing all Medicaid related services. Therefore Bill Richardson did act under color of state law when he ordered state employee Pamela Hyde to implement his policies and procedures. . ." Id. at 3.  Bragg further alleges:

> Bill Richardson as Governor of the State of New Mexico acting under color of state law did give orders to those under his commands to engage in policies and procedures that through a series of events that caused me and still is causing me to suffer severe mental a[n]guish, depression, physical pains and inhumane desperation as I try to get my wheelchair repaired and hold on to what is left of my dignity as a human being with unmet needs.

Id. at 4.  Bragg repeats his general statements in his "claim for relief," which states:

> Richardson did violate my rights under Medicaid law . . . .  He did give orders to

---

[3]  Although Bragg had neither named HMES nor properly served HMES with the Amended Complaint, at the October 24, 2007, hearing, the attorney for both HMES and Rider, and Bragg stipulated that Bragg was suing Rider individually, that he was suing HMES as a corporation, and that additional service was not necessary.  See Tr. at  58 (October 24, 2007).

carry out specific policies and procedures which caused his employees Pamela Hyde, Sandra Chavez, Everet Apodaca and state contract employee Home Medical Equipment Specialists, LLC and owner Kevin Rider and . . . these defendants . . . are still following Bill Richardson's order of the specific policies and procedures that are causing me to suffer.

Id. at 5.

On August 27, 2007, HMES, Rider, and the State Defendants filed Answers to the Amended Complaint. See Docs. 42, 44. Richardson again filed a motion to dismiss Bragg's complaint against him, contending that Bragg had alleged no new facts in his amended complaint that would call into question the Court's determination that Bragg's claims against Richardson were barred by legislative immunity. See Motion to Dismiss Defendant State of New Mexico Governor William B. Richardson at 2, filed September 6, 2007 (Doc. 45). Bragg did not file a written response to the motion.

On September 17, 2007, the Court set a hearing for October 24, 2007, on Richardson's motion to dismiss. See Doc. 48. At this hearing, Richardson again contended that "there are no allegations . . . that Richardson was involved in any day-to-day operations of the medical assistance division," and that Bragg's "assertions against . . . Richardson in this case are all exclusively as governor . . . in the role of chief executive for New Mexico . . . responsible for overseeing and dictating policies . . ." Tr. at 49 (taken October 24, 2007). In response, Bragg maintained that "the staff wouldn't run, cabinet secretary wouldn't run without his being in command and he was the one that was elected by the citizens. So if he carries the full responsibility with him signing off on his opinions, his stand on the issues, his policies and therefore, it just comes right on down to -- why in the world wouldn't the governor, after finding out about this if he didn't know about it previously, why did his staff continuing fighting me to . . . have all my motions dismissed instead of just going

8

and getting my wheelchair repaired?"   Id. at 50.   Bragg urged the Court to "keep Governor

Richardson -- because he accepted a position of the power in position of the citizens . . . [and is]

responsible for the State's issues, for the state health, state Medicaid along with his cabinet

secretary, and the others in position such as Sandra Chavez and Everett Apodaca."   Id. at 51.   In

rebuttal to Bragg's statements, the attorney for the State Defendants first mentioned an affidavit

from Chavez and remarked that,

> Mr. Bragg  believes that the governor should stay in the case simply because of the
> Governor's role as chief executive of New Mexico and his role in policy even if the
> small part of that role might be Medicaid policy. . . . I'm not hearing any facts that
> would support the finding that Governor Richardson is not entitled to legislative
> immunity as you found in your [prior] order.  And also, just today I  filed an affidavit
> of Ms. Sandra Chavez and I can provide a copy to Mr. Bragg, if I could approach?"

Id. at 52.   The attorney described "the crux of this affidavit" in which Chavez swore that there had

been no "type of communication or directive from either Governor Richardson or any one in his

office regarding Mr. Bragg or any of the medical assistant services provided to Mr. Bragg . . .

nothing is controverted as far as Sandra Chavez's affidavit in that regard." Tr. at 52-53.   Bragg did

not respond or make further arguments.

The Court stated that it was "inclined to grant the motion to dismiss based upon the opinion

that [the Court] issued . . . on August 2, 2007," but that it would "go back through the complaint

with some care and make sure that all of [Bragg's claims against Richardson] fall within" the scope

of legislative immunity. Tr. at 53 (October 24, 2007).  The Court ruled that, in the meantime, Bragg

would have to comply with discovery requests, and Bragg expressed his unhappiness with that

decision. See id. at  74, 76-77.  With the agreement of the parties, the Court stated that it would hold

a separate hearing on Bragg's four pending motions for the following Tuesday, October 30, 2007

at 3:00 p.m., and that the parties could appear by telephone if they so desired.  See id. at 80-81.  The

Court filed a written notice of the setting of that hearing on October 29, 2007.  See Doc. 57.

Bragg, however, did not appear in person or by telephone at the October 30, 2007 hearing. See Tr. at 1-2 (taken October 30, 2007).  Instead, he filed a "Notice of Intent to Sue United States District Judge James O. Browning and Alexandra Corwin Aguilar, Attorney for State Defendants and Ronald T. Taylor, Attorney for HMES and Paul R. Ritzma, Attorney for State Defendants." Doc. 60, filed October 30, 2007.[4]  Bragg alleged that the judge and the attorneys were conspiring to violate his constitutional rights for equal protection under the law; that requiring him to respond to discovery resulted in trying his case "outside of court" and showed bias in favor of the Defendants; that the Court had refused to rule on Bragg's request for accommodations, which was one of the motions the Court had set for the October 30, 2007 hearing; and that the Defendants had defamed him.  See Notice of Intent at 1.

Bragg concurrently filed his Motion to Dismiss all Defendants that is now before the Court. Bragg did not seek a stipulation from the Defendants before filing his motion to dismiss.  Bragg states:  "I still intend to sue all defendants as soon as I can get the unlawful barricades removed that are preventing me from clear access to a fair and unbiased hearing of my complaints."  Bragg's Motion to Dismiss at 1 (Doc. 61).

At the October 30, 2007 hearing, the Court informed the Defendants that, if they "are willing to forego any court costs or court fees or attorney's fees or anything of that nature, I probably could enter an order this afternoon dismissing the case and then we don't need to hear the motions that are pending."  Tr. at 7 (Oct. 30, 2007).  When the attorney for HMES indicated that his clients would

---

[4]  The Court has issued an opinion explaining why Judge Browning will not recuse from hearing this case.  See Memorandum Opinion and Order, filed November 9, 2007 (Doc. 63).

not agree to dismissal without prejudice, the Court stated that the Defendants could submit responses as provided by the rules.  See id. at 8.

 After determining that no valid reason existed for recusal, the Court held the hearing on Bragg's pending motions in Bragg's absence.  The Court then orally ruled on three of Bragg's four motions.  See Doc. 62, filed October 30, 2007 (Clerk's Minutes of October 30, 2007 hearing).

On November 12, 2007, HMES and Rider filed a "Response to Bragg [sic] Motion to Dismiss and Stipulation to Dismissal." Doc. 64.  HMES and Rider state that, pursuant to rule 41(a) of the Federal Rules of Civil Procedure, they stipulate to Bragg's motion to dismiss.  They interpret Bragg's motion as dismissing Bragg's claims without prejudice and further stipulate to the provisions that Bragg, HMES, and Rider shall each bear his or its own costs and fees.

On November 13, 2007, the State Defendants submitted a response to Bragg's motion to dismiss.  See Doc. 66.  The State Defendants interpreted Bragg's motion as a request for dismissal under either rule 41(a)(1) or 41(a)(2).  See Doc. 66 at 1.  Chavez, Apodaca, and Hyde do not oppose the motion and stipulate to dismissal against them except to the extent that they would be required to pay Bragg's costs and fees.  See id. at 1-2.  Richardson, however, contended that the Court should dismiss all claims against him with prejudice, because he "has devoted significant resources and costs to defend himself in this case despite having no personal involvement in the specific claims at issue" and because he is entitled to legislative immunity.  Id. at 2.

On November 13, 2007, the Court issued a Memorandum Opinion and Order, granting in part and denying in part Richardson's second motion to dismiss the Complaint against him.  The Court did not dismiss Bragg's vague Federal Medicaid Act claim against Richardson at that time because, reading liberally Bragg's amended complaint and his responses to other motions, the Court

11

determined that

> Bragg [] use[d] language [] that suggests that some of his claims against Richardson
> are beyond mere policy formulation.  Other portions of Bragg's Amendment to his
> Application appear to be alleging claims against Richardson for his executive
> actions. . . . Bragg also indicates that his claims are based on Richardson's orders to
> cause deliberate delay in repairing his wheelchair under Medicaid law.

Order at 24, filed November 13, 2007 (Doc. 67).

The Court explained to the parties that it had not considered Sandra Chavez' affidavit,
because Richardson filed it after the Court's hearing on the matter, Bragg had not been given the
opportunity to respond to it, and the Court decided not to convert the motion to dismiss to one for
summary judgment.  See id. at 20-22.  While acknowledging Richardson's argument that Bragg had
failed to explicitly "demonstrate any personal knowledge or involvement by the Governor," the
Court ruled that "such an argument is insufficient, on a motion to dismiss" to defeat Bragg's implicit
allegations that Richardson was personally involved "in ordering his cabinet to carry out policies
and allegedly carry out actions that violate Bragg's rights." Id. at 24-25.  The Court instructed the
State Defendants that, if they believed they could show "that there is no genuine issue of material
fact on this issue, then they should file a motion for summary judgment stating such and presenting
evidence that supports their stance."  Id. at 25-26.

In the November 13, 2007 Order, the Court also did not dismiss, on the basis of legislative
immunity, Bragg's Medicaid claim for prospective injunctive relief against Richardson in which
Bragg demanded that Richardson "take all pain medications as prescribed by doctors off the state's
formular[y] so that medicaid will pay for the pain relievers." November 13, 2007 Order at 26.

On March 17, 2008, Richardson filed a third motion to dismiss, or, alternatively, for
summary judgment.  Richardson now attaches the same affidavit he earlier filed, as well as other

documents, to his motion for summary judgment.  See Doc. 72, Exhibit D.  The affidavit is signed

by Sandra Chavez, the Bureau Chief of the Medical Assistance Division ("MAD") of New Mexico's

Department of Human Services ("HSD").   See id.   Chavez has had "extensive direct

communication" with Bragg, and has personal knowledge and documentation concerning his

complaints about his wheelchair and other Medicaid services.  Id. at 1.  Chavez swears that "there

has been no communication, directive, suggestion, or personal involvement of any kind by . . .

Governor Richardson, members of his staff, or office concerning Mr. Bragg's wheelchair or any

other MAD service provided to Mr. Bragg."  Id.  at 2.  She also swears that Richardson "is not

involved in the day-to-day operation or administration of the New Mexico Medicaid program, or

in the formulation of specific policies or procedures concerning the Medicaid program, beyond

proposing, approving, or disapproving a budget that includes appropriations for HSD or the Medical

Assistance Division."  Id.

The Court held a hearing on Bragg's motion to dismiss and Richardson's motion for

summary judgment on June 12, 2008.  Bragg did not appear at the hearing and advised the Court's

courtroom deputy that he would not be attending the hearing.  Richardson urged the court to rule on

his motion for summary judgment before it ruled on Bragg's motion to dismiss, but did not offer a

sufficient basis for ruling on his later-filed motion first.  The other Defendants asked the Court to

grant Bragg's motion as to them.

The Court expressed concern about granting Bragg's motion in part as to most Defendants,

but denying it as to Richardson.  The Court expressed concern whether such a disposition would

distort Bragg's intent with his motion.  The Court took both motions under advisement, indicated

that it would research whether it could partially grant a motion to dismiss under rule 41(a)(2), and

13

invited the parties to also research the issue.  On June 13, 2008, the State Defendants, including

Richardson, filed a Stipulation to Dismissal.  See Doc. 81.  They stipulate to Bragg's motion to

dismiss all of the State Defendants without prejudice.  The State Defendants further stipulate that

each party shall bear his or her own costs and fees.

## LAW GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Failure to file a response in opposition to a motion for summary judgment "constitutes

consent to grant the motion."  D.N.M.LR-Civ. 7.1(b).  But the United States Court of Appeals for

the Tenth Circuit has held that

> a party's failure to file a response to a summary judgment motion is not, by itself, a
> sufficient basis on which to enter judgment against the party.  The district court must
> make the additional determination that judgment for the moving party is
> "appropriate" under Rule 56.  Summary judgment is appropriate only if the moving
> party demonstrates that no genuine issue of material fact exists and that it is entitled
> to judgment as a matter of law.  By failing to file a response within the time specified
> by the local rule, the nonmoving party waives the right to respond or to controvert
> the facts asserted in the summary judgment motion.  The court should accept as true
> all material facts asserted and properly supported in the summary judgment motion.
> But only if those facts entitle the moving party to judgment as a matter of law should
> the court grant summary judgment.

Reed v. Nellcor Puritan Bennett, 312 F.3d 1190, 1195 (10th Cir. 2002).  For dispositive issues on

which the non-moving party will bear the burden of proof at trial, he must "go beyond the pleadings

and designate specific facts so as to make a showing sufficient to establish the existence of an

element essential to [his] case in order to survive summary judgment."  Sealock v. Colorado, 218

F.3d 1205, 1209 (10th Cir. 2000)(quotation marks omitted).  "To defeat a motion for summary

judgment, evidence, including testimony, must be based on more than mere speculation, conjecture,

or surmise.  Unsubstantiated allegations carry no probative weight in summary judgment

proceedings."  Self v. Crum, 439 F.3d 1227, 1230 (10th Cir. 2006)(citation and quotation marks

omitted).

## LAW REGARDING VOLUNTARY DISMISSAL

Although Bragg cites no authority for his summary request for dismissal of his claims against

all of the Defendants, the Defendants construe his motion as arising under rule 41(a) of the Federal

Rules of Civil Procedure, which controls voluntary dismissals.  Rule 41(a) provides:

(1)     *By the Plaintiff.*

(A)     *Without a Court Order.* Subject to Rules 23(e), 23.1(c), 23.2, and 66
and any applicable federal statute, the plaintiff may dismiss an action
without a court order by filing:

(i)     a notice of dismissal before the opposing party serves either an
answer or a motion for summary judgment; or

(ii)    a stipulation of dismissal signed by all parties who have appeared.

(B)     *Effect.* Unless the notice or stipulation states otherwise, the dismissal
is without prejudice.  But if the plaintiff previously dismissed any
federal- or state-court action based on or including the same claim,
a notice of dismissal operates as an adjudication on the merits.

(2)     *By Court Order; Effect.*  Except as provided in Rule 41(a)(1), an action may
be dismissed at the plaintiff's request only by court order, on terms that the
court considers proper.  If a defendant has pleaded a counterclaim before
being served with the plaintiff's motion to dismiss, the action may be
dismissed over the defendant's objection only if the counterclaim can remain
pending for independent adjudication.  Unless the order states otherwise, a
dismissal under this paragraph (2) is without prejudice.

"A voluntary dismissal by stipulation under [rule 41(a)(1)(A)(ii)] is of right, cannot be conditioned

by the court, and does not call for the exercise of any discretion on the part of the court.  Once the

stipulation is filed, the action on the merits is at an end." Smith v. Phillips, 881 F.2d 902, 904 (10th

Cir. 1989).  However, "[t]he language of Rule 41(a)(2) is clear: a plaintiff may voluntarily dismiss

parties under the procedures provided in Rule 41(a)(1), and all other dismissals on the plaintiff's

instance are to be made by the court 'upon such terms and conditions as the court deems proper.'"

Wellborn v. Cobray Firearms, Inc., No. 96-8120, 1998 WL 80236 at *5, 139 F.3d 913 (10th Cir. Feb

25, 1998).  Failure to follow the procedures provided in rule 41(a)(1) subjects a request for voluntary

dismissal "to the discretion of the court."   Id.  See Morris v. City of Hobart, 39 F.3d 1105, 1109

(10th Cir. 1994)(holding that a document that plaintiff filed entitled "Dismissal with Prejudice" was

not a Rule 41(a)(1)(A)(ii) stipulation because it was signed only by the plaintiff and, therefore, the

suit was not dismissed in accordance with the requirements of rule 41(a)(1)(A)(ii), but that by later

entering an administrative order closing the case, the court had implicitly approved of the plaintiff's

request and had dismissed the case under rule 41(a)(2)).

Rule 41(a)(2) "is designed primarily to prevent voluntary dismissals which unfairly affect

the other side, and to permit the imposition of curative conditions."  Clark v. Tansy, 13 F.3d 1407,

1411 (10th Cir. 1993)(quotation marks omitted).  In deciding what form of dismissal is proper, a

court should consider several factors to assess "legal prejudice" to a defendant who opposes a

motion:  (i) the defendant's "effort and expense of preparation for trial;" (ii) the plaintiff's

"excessive delay and lack of diligence . . . in prosecuting the action;" and (iii) the plaintiff's

"insufficient explanation for the need to take a dismissal."  Id.  The Tenth Circuit later added another

express factor to consider, holding that it and the Clark v. Tansy factors are "guides" for the district

court:

> A district court may also consider the present stage of litigation.  See [United States
> v. Outboard Marine Corp.,] 789 F.2d [497] at 502 [(7th Cir. 1986)] (considering "the
> fact that a motion for summary judgment has been filed by the defendant"); see also
> Zagano v. Fordham University, 900 F.2d 12, 14 (2d Cir. [1990]) (considering the
> expenses that will be duplicated by a second trial) . . . .  These factors need not all be
> resolved in favor of the moving party for dismissal to be appropriate; likewise, they
> need not all be resolved in favor of the party opposing the motion to dismiss.  See
> Outboard Marine Corp., 789 F.2d at 502.  Further, they are not exclusive; rather,

they are guides for the district court.

Phillips USA, Inc. v. Allflex USA, Inc., 77 F.3d 354, 358 (10th Cir. 1996)(considering the defendant's motion for summary judgment).

## ANALYSIS

The Court will grant Bragg's motion to dismiss all pending claims against all Defendants without prejudice. The parties will each bear his, her, or its own attorney fees and costs. The Court will deny Richardson's motion for summary judgment as moot.

**I.      BRAGG'S PENDING CLAIMS AGAINST DEFENDANTS SHOULD BE DISMISSED WITHOUT PREJUDICE.**

HMES, Rider, Chavez, Apodaca, and Hyde have stipulated to dismissal without prejudice of Bragg's claims against them. Richardson, however, first objected to dismissal without prejudice of Bragg's claims against him, contending that he was entitled to summary judgment on those claims or to dismissal with prejudice. The Court, therefore, will first address whether Bragg may dismiss his claims against Richardson before the Court rules on Richardson's motion for summary judgment.

**A.      THE COURT DOES NOT READ BRAGG'S MOTION AS REQUESTING THAT THE DEFENDANTS PAY HIS COSTS AND FEES.**

Bragg's motion can be read as requesting that the Defendants pay his costs and fees. The Court does not, however, believe that is a reasonable reading of his motion. First, Bragg does not cite, nor has the Court independently found, authority in law for granting such a request unless the Defendants stipulate to such an order. Second, a more reasonable reading is that Bragg, who appears pro se, is trying to avoid paying the Defendants for their costs rather than shifting his fees and costs to the Defendants. Third, HMES and Rider do not believe that Bragg's motion could reasonably be read as requesting them to pay Bragg's fees and costs. Further, when the State Defendants raised

17

the possibility in their response that Bragg might be requesting them to pay his costs and fees, Bragg did not file a reply clarifying that he was seeking such a shift of expenses. Accordingly, the Court will interpret Bragg's motion as requesting that each party bear his, her, or its own costs and fees, and not as requesting the Defendants to pay his fees and costs.

**B.    THE COURT WILL DISMISS THE CLAIMS AGAINST HMES, RIDER, CHAVEZ, APODACA, AND HYDE WITHOUT PREJUDICE**

Bragg failed to follow the requirements of either rule 41(a)(1)(A)(i) or (ii), because he did not file a notice of dismissal before the Defendants served their answers and he failed to file a stipulation of dismissal signed by all parties who had appeared. He therefore is not entitled to dismissal of his claims against these Defendants as a matter of right. See Smith v. Phillips, 881 F.2d at 904; Wellborn v. Cobray Firearms, Inc., 1998 WL 80236 at *5. In resolving Bragg's motion under rule 41(a)(1)(A)(ii), the Court should therefore consider the following factors to assess "legal prejudice" to the Defendants who oppose his motion: (i) the Defendants' "effort and expense of preparation for trial;" (ii) Bragg's "excessive delay and lack of diligence . . . in prosecuting the action;" and (iii) Bragg's "insufficient explanation for the need to take a dismissal." Clark v. Tansy, 13 F.3d at 1411. HMES, Rider, Chavez, Apodaca, and Hyde have stipulated to dismissal without prejudice of Bragg's claims against them after receiving Bragg's motion to dismiss all Defendants. See Doc. 64, filed November 12, 2007, Doc. 66 at 1. Further, HMES and Rider have recently moved for the Court to confirm Bragg's voluntary dismissal of his claims against them. See Doc. 78, filed May 19, 2008. The Court concludes that, because HMES, Rider, Chavez, Apodaca, and Hyde have stipulated to the voluntary dismissal of Bragg's claims against them, there is no concern that they may be legally prejudiced by dismissal and the claims against them should be dismissed without prejudice under rule 41(a)(2). See Morris v. City of Hobart, 39 F.3d at 1109.

18

**C.    THE   COURT   WILL   ALSO   DISMISS   THE   CLAIMS   AGAINST RICHARDSON WITHOUT PREJUDICE.**

Richardson originally objected to dismissal without prejudice, so the Court considered the factors set forth in Clark v. Tansy closely.  It also considered Richardson's pending motion for summary judgment.  After carefully considering these factors, the Court concludes that it should dismiss the claims against Richardson without prejudice.

**1.    Richardson's Effort and Expense of Preparation for Trial.**

Richardson contends that he has expended significant time and resources in defending himself and attempting to obtain dismissal with prejudice through the use of three motions to dismiss and for summary judgment.  Bragg did not reply to Richardson's original contentions that dismissal of Bragg's claims against Richardson should be with prejudice.  There is no dispute that Richardson has gone to considerable effort and expense to secure his dismissal.

The problem is that these motions have in large part argued and reargued the same contentions, and one of the motions was, at least in part, unsuccessful.  It is true that Richardson's first motion to dismiss was successful:  the Court dismissed all federal claims against him and the rest of the State Defendants.  The Court was clear, however, that it did not think that legislative immunity barred all claims against Richardson.  It is also true that, although the Court granted permission to amend the Complaint only as to HMES and Rider, Bragg improperly added ADA claims against the State Defendants, which was not fair to them.  Richardson did not object to Bragg's addition of the ADA claim against him, however.

Moreover, Richardson filed his current pending motion after Bragg filed his motion to dismiss, effort and expense he could have avoided if he had waited until the Court ruled on Bragg's prior motion.  It is true that the scheduling order in this case set a deadline of March 24, 2008 for

19

filing pretrial motions and that, if Richardson had waited for the Court to rule on Bragg's motion to dismiss, on which the Court still had not ruled on at that point, he would have missed the deadline.  He waited almost five months, and until a week before the pre-trial motion deadline, before filing.  While the Court cannot fault him for filing this third motion, the Court is not persuaded it should credit the third motion in its consideration of the amount of effort Richardson has made.

Moreover, there has apparently been minimal discovery to date.  The discovery deadline was February 28, 2008; the Court has issued an order compelling Bragg to comply with discovery requests at the Defendants' request, <u>see</u> Doc. 65, and Richardson had obtained discovery that he attached to his motion for summary judgment.  There is no indication there has been other discovery.  There has been little or no preparation for trial other than rule 26 disclosures and an exchange of witness lists.

In sum, without diminishing the efforts that Richardson has made to get out of this case, the Court does not believe that those expenses and efforts are so great as to justify a dismissal with prejudice.  At most, this factor is a neutral one.  Accordingly, the Court will not dismiss Bragg's claims against Richardson with prejudice based on this factor.

## 2.    <u>Bragg's Excessive Delay and Lack of Diligence in Prosecuting the Action.</u>

There is no evidence that Bragg has engaged in excessive delay in prosecuting the action. It also appears that Bragg has, as a pro se plaintiff, been reasonably diligent in prosecuting the action. While he failed to comply with discovery that resulted in the Court having to order him to comply, and while he failed to respond to the second motion to dismiss, to reply to the responses to motion to dismiss, and to respond to Richardson's motion for summary judgment, it is not clear that

these failures have materially delayed the prosecution of this case.   It is also true that Bragg's failure to sufficiently or clearly set forth facts in his Complaint and Amended Complaint regarding Richardson's personal involvement in the alleged violations has caused unnecessary confusion and delay.   While having to deal with unnecessary confusion and delay does not carry less weight because it is caused by a pro se plaintiff, the Court does not believe that these problems are so severe that they justify dismissal with prejudice.

In sum, the lack of excessive delay in prosecution suggests that the Court should dismiss Bragg's claims against Richardson without prejudice.   Moreover, his diligence in prosecuting the case, while not always professionally eloquent, has been reasonable.   While Bragg's decision to quit prosecuting the case in October and threaten to sue the judge and the attorneys for the Defendants because he did not like the Court's rulings is not reasonable, these incidents do not outweigh the other diligent efforts before October 30, 2007.

### 3.   Bragg's Insufficient Explanation for the Need to Take a Dismissal.

Bragg has given no reason in his motion to dismiss to explain why he desires to dismiss the action at this stage of the litigation.   Moreover, the Court surmises that the reason is that Bragg does not like the Judge to whom his case is assigned and wants to continue the same litigation in front of another Judge.   Accordingly, this factor weighs heavily in support of dismissing the claims with prejudice.   Nevertheless, the factor does not outweigh the other two Clark v. Tansy factors, which support dismissal without prejudice.

### 4.   It is Fair To Consider the Arguments made in Richardson's Motion for Summary Judgment in Deciding Whether to Dismiss the Claims Against Him With Prejudice.

"[A] party should not be permitted to avoid an adverse decision on a dispositive motion by

dismissing a claim without prejudice." Phillips USA, Inc. v. Allflex USA, Inc., 77 F.3d at 358 (affirming denial of motion for voluntary dismissal without prejudice because the defendant had filed a motion for summary judgment). While the Tenth Circuit in Phillips USA, Inc. v. Allflex USA, Inc. did not state that the strength of a dispositive motion is a factor, it stated that it is the stage of litigation and whether, by filing the motion to dismiss, the plaintiff is trying to avoid a dismissal on the merits, that is important. The Tenth Circuit in Clark v. Tansy indicated that the list of factors is not exclusive. Accordingly, the Court concludes that it may consider the strength of Richardson's motion for summary judgment in determining whether dismissal of the complaint against Richardson should be with or without prejudice.

In analyzing this factor, the Court will first look at when the motion to dismiss and motion for summary judgment were filed. Here, Richardson filed his motion for summary judgment after Bragg filed his motion to dismiss, so that factor would weigh in favor of dismissal without prejudice. On the other hand, it should have been clear in the October 24 hearing, before Bragg filed his motion to dismiss and while Richardson's second motion to dismiss was pending, that Richardson was seeking to use Chavez' affidavit to prove that Richardson had no personal involvement in any of the decisions Bragg complained of, and Richardson's attorney focused on that fact and that Richardson should be dismissed as a Defendant. Bragg may have been attempting to avoid dismissal by filing his motion to dismiss after Richardson filed his second motion to dismiss and introduced evidence that Bragg could not rebut.

More likely, however, Bragg decided to dismiss his case because he did not like participating in discovery and did not like the adverse rulings that he was receiving. In any case, after carefully reviewing Richardson's pending motion, the Court concludes that this factor does not support

dismissal with prejudice or override the Clark v. Tansy factors that support dismissal without prejudice.   While the Tenth Circuit has held that all "factors need not all be resolved in favor of the moving party for dismissal to be appropriate; likewise, they need not all be resolved in favor of the party opposing the motion to dismiss" and are only guides,  Phillips USA, Inc. v. Allflex USA, Inc., 77 F.3d at 358, the Court is not convinced that it should effectively grant Richardson's motion for summary judgment -- on a rule 41 motion -- thereby effectively avoiding rule 56's regular standards for granting summary judgment.

> **a.    Richardson Makes a Strong Argument That He is Entitled to Summary Judgment on Bragg's Remaining Nebulous Claims Regarding Wheelchair Repair**

Bragg did not file a response to Richardson's motion for summary judgment.  The Court has reviewed the evidence that Bragg has previously filed in the record and Richardson's submissions to determine whether there are genuine issues of material fact and whether Richardson has satisfied his burden under rule 56.  Because Bragg is representing himself, the Court liberally construes his filings, but the Court should not act as his advocate.  See Cardoso v. Calbone, 490 F.3d 1194, 1197 (10th Cir. 2007); Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

Although Bragg has not filed a response to the motion or a rebuttal affidavit, Bragg had filed two documents regarding Richardson that the Court will consider in determining the strength of Richardson's summary-judgment motion.  The first is an "Entry of Evidence" filed on July 25, 2007 (Doc. 32), to which Bragg attached a January 4, 2004, newspaper article entitled "Richardson pushes for Medicaid cuts."  Doc. 32, Exhibit A.  The article states that Richardson proposed cutting benefits to Medicaid recipients in his 2004 state-budget proposal by implementing "necessary cost controls." Id.  Hyde, the Secretary of the Human Services Division, explained that, because the overall

medicaid costs to New Mexico had continued to rise, if the State did not make some changes, it would "break the bank for the budget." Id. She explained that part of the cost-cutting would include reduced "payment for eyeglasses, wheelchairs, and other health equipment," and that MAD would "only pay for basic wheelchairs" in the future. Id.

Bragg contends that Hyde's statements and Richardson's budget proposals "prove that they are retaliating against me for complaining and exposing . . . Richardson for the horrible way he abuses disabled Medicaid Recipients." Bragg's Motion to Dismiss Reply Memorandum in Support of Motion to Dismiss at 2, filed July 25, 2007 (Doc. 33). The Court disagrees. What the article demonstrates is that Richardson revealed his plan for proposed Medicaid cuts in 2004, long before Bragg's wheelchair needed repair in 2007. The article is, therefore, irrelevant to the issue whether Richardson gave any orders to delay in repairing Bragg's wheelchair or in refusing to allow Bragg to accompany the wheelchair for repair.

The second document that Bragg has submitted with the contention that it supports his claims against Richardson is a "delivery ticket" from Del Norte Pharmacy for batteries for his wheelchair, dated November 12, 2004. Bragg's Entry of Evidence Against Governor Bill Richardson at 2, filed November 29, 2007 (Doc. 69). Bragg states that the batteries were too large for his wheelchair. See id. at 1. Bragg wrote on the ticket as follows: "Del Norte - Gov. Bill Richardson, Pam Hyde, Sandy Cole and others will be sued for the harm you have made [me] suffer." Id. at 2.

Bragg states that the ticket "proves that Governor Bill Richardson has known of my complaints concerning me . . . wheelchair for the past three years instead of helping me he chose to attack me by allowing his staff to abuse me." Id. at 1. Bragg also stated: "At this time I am not aware of any other documents or evidence of which [sic] could be introduced if this proceeds to

24

trial." Id.  The Court concludes that the 2004 delivery ticket  is not relevant to Bragg's 2007 claims

and that it does not raise a genuine issue of material fact regarding whether Richardson gave specific

orders to MAD employees regarding Bragg's 2007 request for wheelchair repair.

The Court concludes that Richardson has made a strong showing that there is no genuine

issue of material fact whether he ordered MAD employees to take or not to take any particular action

on Bragg's request for wheelchair repair.  Richardson may well be entitled to summary judgment on

all claims for prospective injunctive relief associated with the alleged failure of the State to repair

Bragg's wheelchair in the manner Bragg desired.

> **b.** **Richardson Has  Not Made a Strong Showing That He is Entitled to Legislative Immunity on Claims for Prospective Injunctive Relief Regarding Demand to Remove Medications From the State's Medicaid Formulary.**

The Supreme Court and the Tenth Circuit have both cautioned that the scope of legislative

immunity is narrowly construed "and the government official seeking immunity bears the burden

of showing that an exemption from personal liability is justified."  Kamplain v. Curry County Bd.

of Comm'rs, 159 F.3d 1248, 1251 (10th Cir. 1998)(citing Forrester v. White, 484 U.S. 219, 224

(1988)).  See England v. Rockefeller, 739 F.2d 140, 142-43 (4th Cir. 1984)(holding that Governor

of West Virginia's constitutionally mandated participation in the state's budget process was not

entitled to legislative immunity because it did not equate to "an exercise of the state's entire

legislative power to appropriate monies").  Here, the only claims left against Richardson are the new

Medicaid Act and ADA claims.  The Court will not construe Bragg's Amended Application as

raising state-law claims or as resurrecting the dismissed § 1983 claims against Richardson.

The Court did not dismiss Bragg's Medicaid Act claims to the extent he was requesting

prospective injunctive relief.  See November 13, 2007 Order at 26.  Richardson contends that even

claims for prospective relief are barred when the acts complained of are legislative in nature and that he has legislative immunity against suit on Bragg's claim. See Doc. 72 at 20. The Court agrees with that basic legal principle, but the Court is still not convinced that all the acts about which Bragg complains are legislative in nature. Richardson's motion is, in effect, his second attempt to have the Court dismiss all claims in the Amended Application on legislative-immunity grounds, and yet his new motion presents no new arguments or evidence to support a summary judgment on that basis.

Bragg's first Application requested only an order that would "[e]liminate authorizations for Dr. prescribed prescriptions," Doc 1 at 1, and Bragg never mentioned Richardson in the Application. The Court held that this statement and additional allegations that Bragg made in his briefs did not state a cognizable claim for violation of any Medicaid law. See August 2, 2007 Order at 43.

In the Amended Complaint, there is again only a single line regarding medication and it again is only a request for relief: "take all pain medications as prescribed by doctors off the state's formular[y] so that medicaid will pay for the pain relievers." Amended Complaint at 10. Even though this is Bragg's only statement in his Amended Application regarding medication, and placing medication on a formulary is a legislative act, which the Court agrees that it is, Bragg has complained of more acts that may not be legislative in nature. While the Court concluded that Bragg cannot sue Richardson for eliminating authorizations for prescriptions -- a past action -- Bragg's request for future relief -- while itself not stating a cognizable claim -- is not precluded by legislative immunity. As the Court stated in the November 13, 2007 Order,

> [t]he Supreme Court has recognized that "[a]bsolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" Bogan v. Scott-Harris, 523 U.S. 44,54 (1998)(quoting Tenney v. Brandhove, 341 U.S. 367, 376 (1951)). Legislative immunity applies to actions seeking damages and declaratory or  injunctive relief. See Sup. Ct. of Va. v. Consumers Union of U.S., 446 U.S. 719, 732 (1980).  Although originally afforded to members of Congress, the Supreme

> Court has extended the doctrine's protections to state officials acting in a legislative
> capacity.  See Kamplain v. Curry County Bd. of Comm'rs, 159 F.3d 1248, 1250-51
> (10th Cir. 1998)(citing Bogan v. Scott-Harris, 532 U.S. at 52).

November 13, 2007 Order at 16.[5]  The decision whether to place specific medications on a formulary

is one involving the determination and formulation of public policy and, therefore, is legislative in

nature.  But Bragg is not complaining about the decision to place specific medications on a

formulary, Rather, Bragg's suit is an attempt to force Richardson to change the state's policy

regarding which medications to place on the state's formulary.  The Court does not believe a judicial

attempt to force a change that is a legislative act based on policy decisions is covered by immunity.

Bragg implies that failure to do so violates some unspecified provision of the Federal Medicaid Act.

As the Court stated in its November 13, 2007 Memorandum Opinion and Order,

> Additionally, under Bragg's Medicaid claim against Richardson, he also states that
> Richardson needs to "take all pain medications as prescribed by doctors off the
> state's formular[y] so that medicaid will pay for the pain relievers." Amendment to
> Application at 10. The Court finds that, when liberally construed, this statement by
> Bragg can be read as a claim for prospective injunctive relief against Richardson
> from which Richardson is not protected by legislative immunity.

Memorandum Opinion and Order at 26, filed November 13, 2007 (Doc. 67).  Richardson is

essentially arguing that the Court erred when it made this ruling.

While other doctrines may preclude Bragg's claim for relief, the Court has not found any

case law that states the doctrine of legislative immunity precludes a federal court from granting

---

[5] If Bragg were suing Richardson for placing medications on a formulary, such a decision
might be barred by the doctrine of legislative immunity, notwithstanding that Bragg requests
prospective injunctive relief.  But the Court does not read Bragg's Amended Application as
complaining about Richardson's actions in placing items on the formulary.  Rather, he is seeking
prospective relief. To the extent that Bragg is suing to take medications off of the formulary, it is
a future action and relief, and the Court is not convinced such relief is covered by legislative
immunity.

prospective injunctive relief that might, if the state official had taken it without a court order, be protected by legislative immunity.  It is true that Supreme Court case law  holds that "legislative immunity applies to actions seeking damages and declaratory or  injunctive relief.  Sup. Ct. of Va. v. Consumers Union of U.S., 446 U.S. 719, 732 (1980)."  Here, however, Bragg is demanding that Richardson remove medications from the state's medicaid formulary.  Bragg has implied that the Medicaid Act provides the basis for relief.  While Bragg did not respond to Richardson's arguments and did not expressly claim any substantive basis for his one-line claim for relief, the burden is on Richardson, not Bragg, to explain why legislative immunity precludes a claim for prospective injunctive relief.

       c.      **Subject-Matter Jurisdiction Over Bragg's ADA Claims.**

Subject matter jurisdiction may be raised at any time, and the Court should raise it sua sponte if the parties do not.  See Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006)(stating that, "courts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party").  The Supreme Court has held that Congress abrogated a state's sovereign immunity in the ADA only for certain kinds of ADA claims.  Under the Supreme Court's decisions in Tennessee v. Lane, 541 U.S. 509 (2004), and United States v. Georgia, 546 U.S. 151 (2006), Title II abrogates sovereign immunity as to (i) actual violations of the Constitution and (ii) at least some classes of conduct that do not facially violate the Constitution but are prohibited to "prevent and deter unconstitutional conduct." Tennessee v. Lane, 541 U.S. at 518.

> In Lane, 541 U.S. 509, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004), the Supreme Court held that, as applied to a case alleging discriminatory access to the courts, Title II abrogated sovereign immunity because it was a valid use of the powers granted to Congress under § 5 of the Fourteenth Amendment. Id. at 533-34, 124 S. Ct. 1978.

The Court held that, although the conduct that was the basis for the suit was not a direct violation of the Constitution, Title II, in the context of the suit, was valid prophylactic legislation that prevents and deters unconstitutional conduct. *Id.* at 518, 124 S. Ct. 1978. The Court, however, declined to address whether Title II abrogated sovereign immunity in other contexts where parties allege violations of the law that are not independent constitutional violations.

In *Georgia*, 126 S.Ct. at 877, the Court explained the procedure by which courts should address Title II cases brought against states. The plaintiff in *Georgia*, a state prisoner, alleged that prison officials violated both Title II and the Eighth Amendment. *Id.* at 880-81. It is well-settled that Congress can abrogate sovereign immunity as to actual violations of constitutional rights. However, it was not clear from the pleadings whether the plaintiffs alleged that prison officials engaged in conduct that violated Title II but that was not also a violation of the Eighth Amendment. *Id.* As such, the Court remanded the case to allow amended pleadings to permit the plaintiffs to make clear whether they allege ADA violations beyond the direct violations of the Eighth Amendment. In doing so, the Court laid out a procedural roadmap explaining how Title II claims against a state should proceed:

> Once Goodman's complaint is amended, the lower courts will be best situated to determine in the first instance, on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

> *Id.*

Guttman v. Khalsa, 446 F.3d 1027, 1034-35 (10th Cir. 2006)(footnote omitted). In Guttman v.

Khalsa, the Tenth Circuit applied the two Supreme Court cases and remanded the case to the New

Mexico district court:

> If the district court decides that [the plaintiff] did state a valid claim under Title II, it must then determine whether Congress abrogated sovereign immunity as applied to the class of conduct at issue in this case. *Georgia*, 126 S.Ct. at 880-81. If his Title II claims against New Mexico also constitute an independent constitutional violation, [the plaintiff] may proceed with those claims against the state. *Id.* If [the plaintiff] has stated a valid Title II claim that is not also an independent constitutional violation, the district court must conduct the *Lane* analysis to determine whether Title II abrogated sovereign immunity for an as applied challenge.

> The procedural rule laid out in *Georgia* is wise. Before a court can determine whether Title II abrogated sovereign immunity as applied to a specific suit, it must know the specifics of the claim at issue. Otherwise, the court would be engaged in a guessing game about what class of conduct is implicated by the complaint. Further, a court that tried to determine whether Title II abrogated sovereign immunity before it determined that a plaintiff actually alleged a Title II violation would risk issuing an advisory opinion.

446 F.3d at 1036.

As the Court stated in its August 2, 2007, Memorandum Opinion and Order, the Court had general jurisdiction over Bragg's Application. Because the Amended Application is now the operative pleading, the Court must analyze its subject-matter jurisdiction by reviewing the Amended Application. The Court has general jurisdiction over Bragg's Amended Application because he alleges violation of § 1983, the federal Medicaid Act, and the ADA.

Applying United States v. Georgia, the Court reviews the Amended Application to see exactly what acts Bragg contends the State Defendants did that violate the ADA. They are as follows: "All defendants have discriminated against my rights under the . . . Americans with Disabilities Act by taking to [sic] long to repair my wheelchair and [not] having repairs done in my home or allowing me to go to Kevin's Home Medical Store for repairs." Amended Application at 6-7. Bragg quoted several provisions of 28 C.F.R. § 35.130 and discussed his interpretation of what those provisions meant. Id. at 7. Bragg next contends that the Defendants all violated the ADA

> by giving a generalized reason for refusing to allow me to go to Kevin Rider's Home Medical Store for wheelchair repairs; all defendants also stereotyped me as an individual with a disability that they are afraid of, also all defendants violated my rights under the ADA by requiring me to except [sic] the accommodation of Kevin Rider to take my wheelchair to his place of business for repairs against my wishes. . . . Again, all defendants have violated my rights under the ADA by refusing to allow me to go to HMES' place of business for wheelchair repairs because they presumed and stereotyped me as an individual with a disability and refused to allow me to enjoy full participation in the services offered to the public by HMES.

30

Amended Application at 9.  "All defendants must abide by the rules set forth by the Americans with Disabilities Act and start by providing wheelchair repairs for me in my apartment as that is my choice under ADA regulations."  Id. at 10.

It may be that, as in the original Application, these allegations still do not state a claim for relief under the ADA and the Court would thus dismiss any ADA claim.  At that point, the Court's Guttman v. Khalsa subject-matter jurisdiction analysis would end.  Or, the Court might conduct the jurisdictional analysis first.  In any case, the Court need not make a holding on this issue.  It is sufficient for the Court to decide that the possibility of lack of jurisdiction counsels that the Court dismiss the claims against Richardson without prejudice.

Accordingly, the Court cannot conclude on the record before it that Richardson is entitled to judgment on all of Bragg's claims against him, nor on what grounds.  This uncertainty suggests that the Court should not dismiss Bragg's claims against Richardson with prejudice.  Now that Richardson has agreed to dismissal without prejudice, the Court will dismiss the case according to the parties' stipulation.

**IT IS ORDERED** that Bragg's Motion to Dismis [sic] All Claims Against All Defendants Here-in And Entirely Without Prejudice And That All Defendants Pay All Court Costs And All Court Fees And All Attorney Fees (Doc. 61) is  granted.  All pending claims against Defendants Home Medical Equipment Specialists, LLC, Kevin Rider, Sandra Chavez, Everet Apodaca, Pamela Hyde and Bill Richardson are dismissed without prejudice, with the parties each bearing his, her, or its own attorney fees and costs.  Defendant Governor William Richardson's Motion for Dismissal, or in the Alternative, for Summary Judgment (Doc. 71) is denied as moot.

_____
UNITED STATES DISTRICT JUDGE

*Parties and counsel*:

Jerry Bragg
Albuquerque, New Mexico

    *Plaintiff Pro Se*

Alexandra Corwin Aguilar
Montgomery & Andrews, PA
Santa Fe, New Mexico

    *Attorney for Defendants Sandra Chavez, Everet Apodaca,*
    *Bill Richardson, and Pamela Hyde*

Ronald T. Taylor
Albuquerque, New Mexico

    *Attorney for Defendants Home Medical Equipment*
    *Specialists, LLC and Kevin Rider*

Paul R. Ritzma
Special Assistant Attorney General
Santa Fe, New Mexico

    *Attorney for New Mexico Human Service Department*